# EXHIBIT A

# MCKOON, WILLIAMS, ATCHLEY & STULCE

A Professional Limited Liability Company
Attorneys and Counselors at Law

**633 CHESTNUT STREET**
**SUITE 1500, REPUBLIC CENTRE**
**CHATTANOOGA, TN 37450**

**TELEPHONE: 423-756-6400**
**FACSIMILE: 423-756-8600**
**WWW.MWALAWFIRM.COM**

FIELDING H. ATCHLEY, JR.
TREVOR F. ATCHLEY
ANDREA D. HAYDUKε
KYLE S. MCGUIRE
JAMES R. MCKOON*
NATHAN P. SLAYMAKER^
ARNOLD A. STULCE, JR.
ZACHARY L. ATCHLEY

*Also Admitted in Georgia
^Also Admitted in Florida
ᵹAlso Admitted in Maryland & DC

ATLANTA ADDRESS:
12600 DEERFIELD PKWY, STE. 100
ALPHARETTA, GA 30004
TELEPHONE: 770-777-6842

JOHN WILLIAM DIETZEN (1931 - 2015)
WALTER F. WILLIAMS (RETIRED)
WILLIAM R. WAYLAND, JR. (RETIRED)

April 27, 2023

Stacie L. Price, Staff Attorney
Disability Rights Tennessee
2 International Plaza, Suite 825
Nashville, TN 37217

Facsimile to: 615-298-2046

    *Re:*    *Linda Norwood – Conservator of Danny Denton*

Dear Ms. Price:

      On behalf Linda Norwood, in her capacity as Conservator, enclosed please find a copy of a *Summons and Complaint* in the action *Linda J. Norwood, Conservator, v. Disability Right Tennessee and The Orange Grove Center, Inc.*, filed today, and the issued *Order Setting Show Cause Hearing* for 9:00 a.m., May 11ᵗʰ, 2023, in the Chancery Court of Hamilton County, Tennessee.

                   Very truly yours,

                   Fielding H. Atchley, Jr.
                   For the Firm

/zla

Enclosures

ORIGINAL
4-27-2023
DATE
TO BE RETURNED TO CLERK
WHEN SERVICE IS PERFECTED!

## State of Tennessee
### IN THE CHANCERY COURT FOR HAMILTON COUNTY

LINDA J. NORWOOD, CONSERVATOR,
    **Plaintiff,**

**VS**                                    DOCKET NO. 23-0254

DISABILITY RIGHTS TENNESSEE and          PART ___I___
THE ORANGE GROVE CENTER, INC.,
    **Defendants,**

## SUMMONS

TO DEFENDANT:   DISABILITY RIGHTS TENNESSEE, Via Private Process
                THE ORANGE GROVE CENTER, INC., Via Private Process

You are summoned and required to Answer and make defense to a Complaint herewith served upon you. Your Answer to the Complaint must be filed and served upon plaintiff's attorney on or before thirty (30) days after service of this Summons and Complaint upon you, exclusive of the day of service. Your Answer must be filed in the OFFICE OF THE CLERK & MASTER, 625 Georgia Avenue, Room 300 Courthouse, Chattanooga, Tennessee 37402. You are also required to serve a copy of your Answer upon the plaintiff's attorney, or the *pro se* plaintiff as set out below. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

**ISSUED & TESTED** this 27 day of April , 2023.

                     **ROBIN MILLER, CLERK & MASTER**

                     By: _____

McKoon, Williams, Atchley & Stulce, PLLC          **DEPUTY CLERK & MASTER**

| | |
|---|---|
| **FIELDING H. ATCHLEY** | **001310** |
| Plaintiff' Attorney | BPR# |

633 Chestnut Street, Suite 1500, Chattanooga, TN 37450
Address

| | |
|---|---|
| 423-756-6400 | 423-756-8600 |
| Tel. No. | Fax No. |

**NOTICE TO DEFENDANT(S)**

Tennessee Code Annotated § 26-2-103 provides a $10,000.00 personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk & Master. The list may be filed at any time and may be changed by you thereafter as necessary; however unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you, would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

## SUMMONS RETURN

I received this summons on _____. I certify and return that on _____, I
(Date)                                               (Date)

☐ served this summons and a complaint on defendant, _____
                                                           (Printed Name of Defendant)

in the following manner:

_____

_____

_____

☐ failed to serve this summons within thirty (30) days after its issuance because:

_____

_____

_____


_____    _____
Process Server Name (Printed)            Process Server Signature


_____
Address
_____

_____

Original
RECEIVED
4-27-23
Clerk & Master

IN THE CHANCERY COURT FOR HAMILTON COUNTY, TENNESSEE

LINDA J. NORWOOD, CONSERVATOR,        )
    Plaintiff,                                      )
                             )
v.                                                  )    Case No. 23-0254
                             )
DISABILITY RIGHTS TENNESSEE, and      )    Part ___1___
THE ORANGE GROVE CENTER, INC.,        )
    Defendants.                                  )

## ORDER SETTING SHOW CAUSE HEARING

Upon the filing of a Verified Complaint by Linda J. Norwood, in her capacity as the

Conservator for John Doe, and for good cause shown, it is Ordered, pursuant to Rule 65 of the

Tennessee Rules of Civil Procedure that Disability Rights of Tennessee and The Orange Grove

Center, Inc., by and through each's appropriate Officer, shall appear before the Court on the 11th

day of May , 2023, at 9:00 a.m. to show cause why a Restraining Order and

Temporary Injunction should not be issued prohibiting (1) Defendant DRT from receiving any

records of John Doe without his Conservator's consent; and (2) Defendant Orange Grove Center

from releasing any records of John Doe to DRT.

    ENTER:

                                     Pamela A Fleenor
                                     CHANCELLOR

APPROVED FOR ENTRY:

McKOON, WILLIAMS, ATCHLEY &
STULCE, PLLC                                Issued: April 27 , 20 23
                                  ROBIN L. MILLER, Clerk & Master
By: _____             By: Wendi Oaks _____ DC&M
FIELDING H. ATCHLEY, JR., BPR #001310    Executed by _____
ZACHARY L. ATCHLEY, BPR #040892          _____
Attorneys for Plaintiff Linda J. Norwood  This _____ day of _____, 20 ___.
633 Chestnut Street, Suite 1500              Sheriff of Hamilton County
Chattanooga, TN 37450                    By: _____ D.S.
(423) 756-6400/fax: (423) 756-8400
Email: fatchley@mwalawfirm.com
Email: zatchley@mwalawfirm.com

                        2023 APR 27 PM 1: 42
                            FILED
                   HAMILTON CO CLERK & MASTER

# State of Tennessee
## IN THE CHANCERY COURT FOR HAMILTON COUNTY

**LINDA J. NORWOOD, CONSERVATOR,**
    **Plaintiff,**

**VS**                             **DOCKET NO.** 23-0254

**DISABILITY RIGHTS TENNESSEE and**      **PART** _____
**THE ORANGE GROVE CENTER, INC.,**
    **Defendants,**

## SUMMONS

TO DEFENDANT:    DISABILITY RIGHTS TENNESSEE, Via Private Process
                     THE ORANGE GROVE CENTER, INC., Via Private Process

You are summoned and required to Answer and make defense to a Complaint herewith served upon you. Your Answer to the Complaint must be filed and served upon plaintiff's attorney on or before thirty (30) days after service of this Summons and Complaint upon you, exclusive of the day of service. Your Answer must be filed in the OFFICE OF THE CLERK & MASTER, 625 Georgia Avenue, Room 300 Courthouse, Chattanooga, Tennessee 37402. You are also required to serve a copy of your Answer upon the plaintiff's attorney, or the *pro se* plaintiff as set out below. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

**ISSUED & TESTED** this 27 day of April _____, 2023.

                             **ROBIN MILLER, CLERK & MASTER**

                             By: _Wendy Sav_

McKoon, Williams, Atchley & Stulce, PLLC      **DEPUTY CLERK & MASTER**

**FIELDING H. ATCHLEY**        **001310**
Plaintiff' Attorney           BPR#

633 Chestnut Street, Suite 1500, Chattanooga, TN 37450
Address

423-756-6400            423-756-8600
Tel. No.                Fax No.

---

**NOTICE TO DEFENDANT(S)**

Tennessee Code Annotated § 26-2-103 provides a $10,000.00 personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk & Master. The list may be filed at any time and may be changed by you thereafter as necessary; however unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you, would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

## SUMMONS RETURN

I received this summons on _____. I certify and return that on _____, I
                   (Date)                                    (Date)

☐ served this summons and a complaint on defendant, _____
                                                      (Printed Name of Defendant)

in the following manner:

_____

_____

_____

☐ failed to serve this summons within thirty (30) days after its issuance because:

_____

_____

_____


_____     _____
   Process Server Name (Printed)           Process Server Signature


_____
               Address

_____

_____

[Form 114, Rev 2008.01.22]

04/27/2023 16:11   #096 P.007/063

From:

RECEIVED

4-27-23

IN THE CHANCERY COURT FOR HAMILTON COUNTY, TENN

LINDA J. NORWOOD, CONSERVATOR,       )
    Plaintiff,                                )
                                              )
                                              )   Case No. 23-0254
v.                                           )
                                              )   Part ___1___
DISABILITY RIGHTS TENNESSEE, and             )
THE ORANGE GROVE CENTER, INC.,               )
    Defendants.                              )

## ORDER SETTING SHOW CAUSE HEARING

Upon the filing of a Verified Complaint by Linda J. Norwood, in her capacity as the

Conservator for John Doe, and for good cause shown, it is Ordered, pursuant to Rule 65 of the

Tennessee Rules of Civil Procedure that Disability Rights of Tennessee and The Orange Grove

Center, Inc., by and through each's appropriate Officer, shall appear before the Court on the 11th

day of May , 2023, at 9:00 a.m. to show cause why a Restraining Order and

Temporary Injunction should not be issued prohibiting (1) Defendant DRT from receiving any

records of John Doe without his Conservator's consent; and (2) Defendant Orange Grove Center

from releasing any records of John Doe to DRT.

ENTER:

_____
CHANCELLOR

**APPROVED FOR ENTRY:**

McKOON, WILLIAMS, ATCHLEY &
STULCE, PLLC

By: _____
FIELDING H. ATCHLEY, JR., BPR #001310
ZACHARY L. ATCHLEY, BPR #040892
*Attorneys for Plaintiff Linda J. Norwood*
633 Chestnut Street, Suite 1500
Chattanooga, TN 37450
(423) 756-6400/fax: (423) 756-8400
Email: fatchley@mwalawfirm.com
Email: zatchley@mwalawfirm.com

2023 APR 27 PM 1:42

FILED
HAMILTON CO. CLERK & MASTER

**IN THE CHANCERY COURT FOR HAMILTON COUNTY, TENNESSEE**

| | |
|---|---|
| **LINDA J. NORWOOD, CONSERVATOR,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | Case No. 23-0254 |
| ) | |
| **DISABILITY RIGHTS TENNESSEE, and** ) | **PART** _____ |
| **THE ORANGE GROVE CENTER, INC.,** ) | |
|     **Defendants.** ) | |

### VERIFIED COMPLAINT AND REQUEST FOR RESTRAINING ORDER AND TEMPORARY INJUNCTION

Plaintiff, Linda J. Norwood, Conservator for John Doe ("Conservator"), by and through her counsel, states her claim for declaratory relief against Defendants, Disability Rights Tennessee ("DRT") and the Orange Grove Center, Inc. ("Orange Grove Center"), pursuant to Rules 57 and 65 of the *Tennessee Rules of Civil Procedure* and Tenn. Code Ann. § 29-14-101, *et seq.* and § 34-1-101, *et seq.* In support of her Complaint, Plaintiff would show the following:

### PARTIES

1.    Conservator is the duly appointed conservator for John Doe,[1] an adult with intellectual and developmental disabilities ("IDD"), and has served in this capacity since her appointment on July 17, 2017.

2.    A true and accurate copy of the *Order Allowing Co-Conservators to Retire and Appoint Successor Conservator for [John Doe]* and *Letters of Conservatorship* issued by this Court are attached hereto as **Exhibit A** and **Exhibit B**.[2]

3.    Orange Grove Center is a nonprofit Tennessee corporation that serves adults and children with IDD.

---

[1] Conservator's conservatee is denominated as John Doe to protect his privacy.
[2] Protected personal information has been redacted for privacy purposes and will be provided to Defendants in unredacted form.

4. DRT is a nonprofit Tennessee corporation that provides legal advocacy services to people with IDD throughout Tennessee.

## JURISDICTION AND VENUE

5. Conservator is a Tennessee-licensed attorney and a resident of Hamilton County, Tennessee.

6. John Doe is a resident at Orange Grove Center in Hamilton County, Tennessee.

7. Orange Grove Center's principal place of business is in Hamilton County, Tennessee.

8. DRT's principal place of business is in Davidson County, Tennessee and it may be served through its registered agent, Ann Anderson, at 2 International Plaza, Suite 825, Nashville, TN 37217.

9. All parties having a claim or interest which would be affected by this proceeding have been joined as parties.

10. Jurisdiction and venue are proper in this Court.

## BACKGROUND INFORMATION

11. On or about February 1, 2023, it was reported to the State of Tennessee Department of Intellectual and Developmental Disabilities ("DIDD") Investigation Office that John Doe was hit with a broom by an unknown staff person at Orange Grove Center.

12. On or about February 3, 2023, Conservator received a call on her cell phone after work hours from someone identifying themselves as associated with DRT with an offer to assist her with the investigation of reports of neglect or abuse of John Doe at Orange Grove Center.

13. Conservator declined to discuss the matter with DRT directly and understood that all incidents were being addressed by DIDD, Orange Grove Center, and others. DRT's services were not wanted and/or needed.

14.    Throughout February 2023, DIDD investigated the alleged incident specifically, as well as John Doe's care at Orange Grove Center generally. Orange Grove Center staff, John Doe, and any witnesses to the alleged incident were interviewed.

15.    Ultimately, DIDD determined that the reported allegation of abuse to John Doe was unsubstantiated, and it closed its investigation on or about February 23, 2023.

16.    A true and accurate copy of DIDD's report to Orange Grove Center summarizing its findings is attached as **Exhibit C**.

17.    Conservator was informed of the findings and conclusion of the investigation.

18.    On or about March 6, 2023, Conservator received a letter from DRT, a copy of which is attached hereto as **Exhibit D**, again alleging various concerns related to John Doe, including the report that he had been hit by a staff member at Orange Grove Center. This letter requested that Conservator sign a release allowing DRT to obtain "all records" at Orange Grove Center for John Doe and giving any employee at DRT permission to talk with, and share any of John Doe's information with, any employee of Orange Grove Center.

19.    Conservator, satisfied that John Doe was being appropriately supervised and cared for at Orange Grove Center as determined by DIDD, did not sign the information release form as requested by DRT and responded by correspondence dated March 10, 2023 **Exhibit E**.

20.    Upon information and belief, Orange Grove Center then received a letter and draft complaint from DRT, threatening that if it did not release and/or authorize the release of the confidential and private information of John Doe, the draft complaint would be filed. A true and accurate copy of this correspondence and enclosed draft lawsuit is attached as **Exhibit F**.

21.    Conservator instructed Orange Grove Center that she did not consent to release any such information.

3

22.     Upon information and belief, after Conservator's refusal to authorize release of John Doe's records, DRT repeatedly requested them directly from Orange Grove Center throughout March 2023.

23.     Upon information and belief, Orange Grove Center refused to provide John Doe's records to DRT without the authorization of Conservator.

## CAUSES OF ACTION

### COUNT I – DECLARATORY JUDGMENT

24.     There is a genuine case and controversy existing between the parties, as evidenced by the letters from DRT to Conservator dated March 6, 2023, and to Orange Grove Center dated April 21, 2023.[3]

25.     DRT's position is that pursuant to 45 C.F.R. §§ 1326.21-1326.27 it is entitled to all records related to John Doe's care at Orange Grove Center for the purposes of investigating alleged abuse, despite DIDD's investigation and conclusion that such reported abuse at Orange Grove Center was unsubstantiated.

26.     Plaintiffs request that the Court determine whether DRT's requests are "reasonable" as required pursuant to 45 C.F.R. §§ 1326.21 and 1326.27.

### COUNT II – INJUNCTIVE RELIEF

27.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs preceding this one.

28.     Pursuant to Rule 65 of the Tennessee Rules of Civil Procedure and Tennessee law, Conservator also requests that the Court issue a restraining order and a preliminary injunction

---

[3] Protected personal information of John Doe has been redacted for privacy purposes and will be provided to Defendants in unredacted form.

4

04/27/2023 16:12      #096 P.013/063

restraining all Defendants from releasing or acquiring the records of John Doe without Conservator's consent, as John Doe would suffer immediate and irreparable injury, loss or damage if such restraining order and a preliminary injunction is not so ordered.

29.    If the private and personal records of John Doe are released, his individual privacy rights would be violated and he will suffer immediate and irreparable injury.

30.    Notice of this request for restraining order and temporary injunction will be provided orally and by writing to all Defendants and their counsel prior to a hearing on this request for relief.

WHEREFORE, premises considered, Plaintiff Conservator Linda J. Norwood respectfully prays that this Court grant the following relief and declare the rights of the parties as follows:

A.    That the Court issue process for service upon each of the Defendants requiring the Defendants to answer the allegations contained herein;

B.    That upon the filing of this Complaint, the Court issue a Show Cause Order requiring the Defendants, DRT and The Orange Grove Center, to appear through each's appropriate Officer before this Court on a date and time certain to show cause why a Restraining Order and Temporary Injunction should not be issued prohibiting (1) Defendant DRT from receiving any records of John Doe without his Conservator's consent; and (2) Defendant Orange Grove Center from releasing any records of John Doe to DRT.

C.    That the Court declare that DRT is limited to "reasonable" access to conduct any investigation and that its request is unreasonable in light of the DIDD's investigation and conclusion;

D.    That the Court declare that DRT is not entitled to receive John Doe's information and records without the consent of Conservator where an investigation has been conducted and

5

concluded by DIDD;

        E.    That Orange Grove Center is not required to release and/or should not release John

Doe's information without either the consent of his Conservator or an Order of this Court;

        F.    That Defendants appear before this Court and show cause, if any, why John Doe's

records should be released to DRT against his conservator's determination and in violation of his

privacy rights.

        G.    That Conservator have such other and further relief as the Court may deem just and

proper.

**THIS IS THE FIRST APPLICATION FOR EXTRAORDINARY PROCESS IN THIS**
**CAUSE, AND NO COURT HAS PREVIOUSLY REFUSED THE RELIEF SOUGHT.**

**RESPECTFULLY SUBMITTED:**

**McKOON, WILLIAMS, ATCHLEY & STULCE, PLLC**

By: _____
    **FIELDING H. ATCHLEY, JR., BPR # 001310**
    **ZACHARY L. ATCHLEY, BPR #040892**
    *Attorneys for Plaintiff Linda J Norwood*
    633 Chestnut Street, Suite 1500
    Chattanooga, TN 37450
    (423) 756-6400/fax: (423) 756-8400
    Email: fatchley@mwalawfirm.com
    Email: zatchley@mwalawfirm.com

          *Verified signature on next page*

6

STATE OF TENNESSEE     )
                               )
COUNTY OF HAMILTON    )

      My name is Linda J. Norwood, I am over the age of eighteen (18) years, and I have personal knowledge of the facts set forth herein unless otherwise indicated, and I am competent to testify thereto, and, pursuant to Rule 72 of the Tennessee Rules of Civil Procedure, I declare, certify and state under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Linda J. Norwood

Sworn to and subscribed before me this
26 Th day of April 2023.

NOTARY PUBLIC

My commission expires: 09/10/2023

RECEIVED

7/17/17 TR
Clerk & Master

IN THE CHANCERY COURT FOR THE ELEVENTH JUDICIAL DISTRICT OF
TENNESSEE

IN THE MATTER OF THE
CONSERVATORSHIP OF:

**NO. 01-G-120**

████████████████
**Respondent.**

**PART I**

## ORDER ALLOWING CO- CONSERVATORS TO RETIRE AND APPOINT
## SUCCESSOR CONSERVATOR FOR ████████████████

This cause came to be heard on the 17th day of July 2017 upon the motion of

Linda J. Norwood, as Trustee of the Irrevocable Special Needs Trust for the benefit of

████████████████ ("Respondent"), seeking an Order allowing the Co-Conservators

to retire and appoint Linda J. Norwood, an attorney in good standing and licensed in the

state of Tennessee to serve as successor conservator for Respondent. Based upon the

record as a whole and the sworn testimony received, the Court finds as follows:

A.    The Co-Conservators were appointed on November 15, 2001 and have served

faithfully, tirelessly, and without compensation.

B.    Due to changes in their own lives and changes in Respondent's medical needs,

the Co-Conservators should be relieved of their duties.

C.    Linda J. Norwood is an attorney in good standing and licensed in the state of

Tennessee and will make the best medical and financial decisions for

Respondent as his Successor Conservator.

D.    Linda J. Norwood is willing to serve as Successor Conservator for

Respondent.

E.    The appointment of a Successor Conservator is in the best interest of

Respondent and is the least restrictive alternative. It is therefore,

2017 JUL 20 PM 12: 57

FILED
HAMILTON CO CLERK & MASTER

TR   TR


EXHIBIT
A

04/27/2023 16:12   #096 P.017/063

**ORDERED, ADJUDGED, and DECREED** that:

1.  The Court appreciates Co-Conservators service and relieves them of any further duty or liability;

2.  Linda J. Norwood is appointed Successor Conservator of the person and property of Respondent;

3.  The rights of Respondent to be transferred to, the Conservator of the property of Respondent, are as follows: The right to receive from or disburse to any source any monies through checking or savings or other accounts or otherwise, endorse, sign and issue checks, withdrawal receipts or any other instrument, and open or close any accounts in Respondent's name alone or jointly with any other person. The right to collect all monies due and owing Respondent. The right to apply for and receive public benefits, Social Security Benefits, Veteran Benefits, Pension and Survivor Benefits. The right to submit Medicare, TennCare, and private supplemental health insurance claims, and seek benefits there under, including the right to litigate such claims if necessary. The right to prepare and sign federal and state income tax returns. The right to contract for or employ agents, accountants, advisors, attorneys and others for services in connection with the performance by the Conservator of any powers herein. The right to sue, defend or compromise, settle suits and legal actions and employ counsel in connection with legal actions, including but not limited to (a) the right to collect, receive all monies, real and personal property due and owing the Respondent from benefits,

2

pensions, awards, stocks, mutual funds, certificates of deposits, bonds,

court settlements, court judgments, and awards of any type whatever

source, payable to or for the benefit of Respondent, and (b) the right to

marshal all assets and to have access to any and all bank records and

insurance policies which are now or in the past have the Respondent as

owner or beneficiary, and (c) any other right which may be transferred to

the Conservator by subsequent Order;

4.    The following rights of Respondent to be transferred to the Conservator of

the person are as follows:  the right to contract for the Respondent's

medical care and treatment.  The right to make all health care decisions on

behalf of Respondent.  The right to make decisions relating to

Respondent's personal care and medical treatment including the right to

give consent to emergency and non-emergency medical or mental health

treatment, including, if needed, the administration of psychotropic

medication. The right to request, receive, and review any information,

verbal or written, regarding Respondent's personal affairs, physical or

mental health, including legal, medical, and hospital records, to execute

any releases or other documents that may be required in order to obtain

such information, and to disclose such information to such person,

organization, firms or corporation as the Conservator shall deem

appropriate.  The right to determine where the Respondent shall reside,

including the right to contract for Respondent's entry into and

maintenance in, or discharge from, any hospital, mental health facility,

3

#096 P.019/063          04/27/2023 16:13

convalescent center, group home, assisted living facility or other type of health care center or living arrangement, including the right to have the Respondent transported by ambulance to the placement choice of the Conservator, the right to make final disposition of Respondent's remains, and any other rights transferred to the Conservator by subsequent Order;

5.  The Respondent shall have the following rights removed: (a) the right to make contracts, (b) the right to make health care decisions, (c) the right to hold a driver's license, (d) the right to enter into a marriage contract, and (e) all rights herein transferred to his Conservator;

6.  Letters of Successor Conservatorship shall be issued to Linda J. Norwood; and

7.  The cost of these proceedings shall be paid from the assets of the Respondent for which execution shall issue, if necessary.

ENTER:

_____

**HONORABLE PAMELA A. FLEENOR,
CHANCELLOR, PART 1**

APPROVED FOR ENTRY:

_____
Linda J. Norwood BPR#011015
Attorney for Petitioner
P.O. Box 11572
Chattanooga, Tennessee 37401
(423) 304-1727; (423) 886-9870 (fax)
lindanorwood@epbfi.com

4

01-G-120

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Order has been placed in the United States Mail addressed to:

Martha Salter
82 Ridgeway Drive
Chattanooga, TN 37415

Kathy Hollaway
Orange Grove Center
615 Derby Street
Chattanooga, TN 37404

Sandra Stuermer
201 Wendy Trail
Lookout Mountain, GA 30750

Mr. and Ms. Dale Oxendine
1907 Anderson Avenue
Chattanooga, TN 37404

Flegal Insurance
P.O. Box 39
Rossville, GA 30741

James "Don" Weaver
(Address Unknown)

Faye Roberts
(Address Unknown)

**Linda J. Norwood, Esq.**
**P.O. Box 11572**
**Chattanooga, TN 37401**

This the 20th day of July, 2017.

ROBIN L. MILLER, CLERK & MASTER

BY: ~~Clura F. Roh~~
D. C. & M.

04/27/2023 16:13   #096 P.021/063

# In The Chancery Court for The Eleventh Judicial District Of Tennessee

IN RE: ██████████████          **Docket No.: 01-G-120**

S.S.# ████████                    **PART 1**

## Letters of Conservatorship
### Pursuant to T.C.A.§ 34-1-129
069G 2013 06 25

**To: LINDA J. NORWOOD, CONSERVATOR**

**Whereas,** it appearing to this Court that ██████████████ (hereinafter referred to as THE WARD) has been declared to be a person with a disability and the Court being satisfied to your rights to the Conservatorship of the Person and Estate of THE WARD, and you having given bond and qualified according to law, and the Court having ordered that LETTERS OF CONSERVATORSHIP be issued to you pursuant to T.C.A. § 34-1-104; it is therefore

**Ordered,** the following rights of THE WARD are removed: (a) the right to make contracts including marriage, (b) the right to make health care decisions, (c) the right to hold a driver's license, and (d) the right to vote. The following rights of THE WARD are transferred to the CONSERVATOR to exercise:•to consent or not to any training, medical and mental examinations and treatment and all end of life decisions such as entry of a "do not resuscitate" order, administration of psychotropic medication and other medications, or the application of any heroic measures or medical procedures intended solely to sustain life and withdrawal of artificially provided food, water, or other nourishment or fluids•to consent to admission to or discharge from hospitalization, transfer to or discharge from any residential setting, group home, or other housing placements•to authorize or not disclosures of medical, personal and financial information•to enter into authorized, contractual relationships•to receive or collect from or disburse to any source all monies through financial accounts, pensions, court judgments, insurance, real and personal property•to open or close accounts in THE WARD's name alone or jointly held•to have access to and control of, any safety deposit box in the Ward's name, wherever located•to apply for and receive public benefits, Social Security, Veterans, Pension and Survivor benefits•to prepare and sign income tax returns•to dispose of personal property subject to judicial consent•to sue, defend, compromise or settle civil actions•to pay THE WARD's bills and protect and invest THE WARD's income and assets•to execute, on behalf of THE WARD documents to carry out the authority vested above•to do any other act of legal significance for the benefit of THE WARD. HEREIN FAIL NOT.

**In witness whereof,** I have issued these LETTERS on

this 24th day of July, 2017.

                                            **ROBIN L. MILLER, CLERK & MASTER**

                                            By _____
                                                **DEPUTY GUARDIAN CLERK**

STATE OF TENNESSEE, COUNTY OF HAMILTON

I solemnly swear or affirm I will honestly and faithfully discharge the duties imposed on me by the Court as Conservator, including the timely filing of each inventory, accounting, annual report, and any other statements as required by law for the benefit of THE WARD and to spend and manage the assets of THE WARD only as approved by the Court.

_____       _____
      AFFIANT                           AFFIANT

Sworn to and subscribed before me this 24th day of July, 2017.

                                              **ROBIN L. MILLER, CLERK & MASTER**

                                            By _____
                                                  **DEPUTY GUARDIAN CLERK**



**>>> Certificate <<<**

I, CLERK & MASTER of this court, certify: i) this is a Court of Record; ii) the above is a true, full, and correct copy of the LETTERS OF CONSERVATORSHIP issued by this Court in this matter; and iii) these letters are still in full force and effect as of this date. Witness my hand and seal this 24th day of July, 20 17.

                                  **ROBIN L. MILLER, CLERK & MASTER**

                                    By _____
                                        **DEPUTY GUARDIAN CLERK**
                                        CHATTANOOGA, TN 37402

**EXHIBIT**
B

**CERTIFIED COPY OF LETTERS MUST HAVE RAISED COURT SEAL**



February 23, 2023

Tera Roberts, Executive Director
The Orange Grove Center, Inc.
615 Derby Street
Chattanooga, TN 37404

Re: **Case #: E2302006-T2,** ▓▓▓ ▓ **(Statewide Waiver)**

Dear Ms. Roberts:

The Regional Office is in receipt of the February 16, 2023 final investigation report regarding the findings of the above-cited case. The preponderance of the evidence does not support that an unknown staff person hit ▓▓▓ with a broom at an unknown location on an unknown date and time. The allegation of abuse was unsubstantiated.

The conclusions are based on the authority of the 9/1/21 Operational Protocol for One Reportable Event Management (REM) System.

Agency Management and the Provider Reportable Event Review Team (PRERT) should review the final investigation report and address the following issue(s) as applicable:

- Procedures that have been implemented to mitigate future risks to the person, including steps to prevent similar occurrences in the future;
- A review of current policies, rules, guidance or other system processes and procedures that may have contributed to the event, and what preventive actions have been taken;
- Verification that the perpetrator(s) was notified of the outcome of the investigation;
- A statement of what, if any, disciplinary action, training, reassignment, or any other remediation occurred as a result of the findings of the investigation;
- Review of provider policies related to the event or Informational Findings;
- Results of a systemic review of the event and Informational Findings contained in the report;
- Late reporting was not an issue in this case;
- Informational findings contained in the investigation report:
  - No Informational findings were noted.

No further action is warranted at this time, and I consider this case closed. The Regional Office reserves the right to reopen this investigation pending the outcome of any future on-site visits.



EXHIBIT

C

E2302006-T2
February 23, 2023
Page 2

Sincerely,

**Janet Neihoff**

Digitally signed
by Janet Neihoff
Date: 2023.02.23
10:29:13 -06'00'

Signed by Janet Neihoff on behalf of
Terry Jordan-Henley
Regional Director, East

C:      DIDD Central Office
       Gary Napolitan, Provider Board Chair
       United Healthcare, MCO
       Shannon Wallin, DIDD Licensure
       Janet Neihoff, West REM Program Director
       Russell Beaty, DIDD Investigator
       File



**DISABILITY RIGHTS TN**

800-342-1660 | www.DisabilityRightsTN.org | GetHelp@DisabilityRightsTN.org

March 6, 2023

Ms. Linda Norwood, Esquire
P.O. Box 11572
Chattanooga, TN 37401
LindaNorwood@epbfi.com
Fax: (423) 886-9870

RE: ▓▓▓▓▓ Investigation

Dear Ms. Norwood,

I am writing today to discuss Disability Rights Tennessee's grave concerns about your ward, ▓▓▓▓▓▓, who resides at a DIDD-licensed supported living home run by Orange Grove in Chattanooga, Tennessee. Disability Rights Tennessee (DRT) is the Congressionally mandated, federally funded protection and advocacy (P&A) agency for the State of Tennessee. As the federally mandated P&A, DRT has broad federal authority to investigate allegations of abuse and neglect when such incidents are reported to us or when we determine that there is probable cause to suspect that abuse or neglect may have occurred. *See* 42 U.S.C. § 15043; 45 C.F.R. § 1326.25(a)(2). This delegated Federal authority to investigate alleged instances of abuse and neglect exists separate and apart from any state or provider led investigation.

DRT recently received a credible complaint[1] that Mr. ▓▓▓▓ often wanders around Chattanooga unsupervised and nearly got hit by a bus. The reporter also was concerned that Mr. ▓▓▓▓ also had excess money on his person of unexplained origin. Thirdly, the reporter believed that Mr. ▓▓▓▓ who is deaf, is not receiving effective communication at his supported living home. Finally, DRT learned that Mr. ▓▓▓▓ had allegedly been assaulted with a broom by a staff member of Orange Grove.

Based on this, DRT has reason to believe that Mr. ▓▓▓▓ has been subjected and/or is being subjected to abuse and neglect by Orange Grove. We are investigating these incidents and ask for your cooperation. I understand that DRT investigator William Moore called you on February 3, 2023, to relay to you this information. It is my understanding that you did not want to talk with Mr. Moore about the abuse and neglect allegations and the assistance DRT could offer. I am reaching out to you today to ask, as Mr. ▓▓▓▓ conservator, that you cooperate with this investigation and sign forms so that we may get Mr.

---

[1] DRT is mandated by federal law to keep the identities of individuals who report incidents of abuse and neglect confidential. 45 C.F.R. § 1326.28(b)(iii).

**Middle Tennessee Regional Office**
2 International Plaza, Suite B25
Nashville, TN 37217
615-298-1080 phone
615-298-2046 fax

**East Tennessee Regional Office**
9050 Executive Park Drive, Suite 101B
Knoxville, TN 37923
865-670-2944 phone
865-470-7028 fax

**West Tennessee Regional Office**
1407 Union Avenue, Suite 1015
Memphis, TN 38104
901-458-6013 phone
901-249-2933 fax



**EXHIBIT**
**D**

The Protection & Advocacy System of Tennessee.
Member of NDRN.

**DISABILITY RIGHTS**



▓▓▓▓▓ records. Please consider this an additional example of DRT's good faith effort to contact you, as Mr.▓▓▓▓▓ conservator, and secure your cooperation pursuant to 45 C.F.R. § 1326.25(a)(3).

As noted, DRT will investigate these alleged instances of abuse and neglect. We will gather records and interview appropriate parties to see if the allegations are founded. If the allegations are substantiated, DRT can issue an investigative report to both Orange Grove and the appropriate state agencies with appropriate recommendations to ensure that this does not happen to Mr.▓▓▓▓ or anyone else again. We ask that you sign the attached Release of Information (ROI) to allow us to access Mr.▓▓▓▓ Orange Grove records. We know that you care about the safety and well-being of Mr.▓▓▓▓ as much as we do. Please return the signed ROI to us no later than **EOB day March 8, 2023**. Please be advised that if you decide not to do so, DRT has the authority to proceed with the investigation and get Mr.▓▓▓▓ records without your assistance.

I am enclosing some information about DRT's access authority for your review. You may also visit our website to learn more at https://www.disabilityrightstn.org/ . I look forward to hearing from you.

Sincerely,

*Stacie L. Price*

Stacie L. Price, Staff Attorney
Disability Rights Tennessee
2 International Plaza, Suite 825
Nashville, TN 37217
staciep@disabilityrightstn.org
(615) 732-6982

Enclosures: ROI, Access Authority Handout

 **DISABILITY RIGHTS TN**

**PERMISSION TO RELEASE INFORMATION**

---

I, <u>Linda Norwood/Conservator of</u> ▮▮▮▮▮, give permission for <u>Orange Grove</u> to release the following information to **Disability Rights Tennessee (DRT)** upon request. I also authorize any employee of <u>Orange Grove</u> to talk with any employee of **Disability Rights Tennessee** about my information. I also authorize any employee of **Disability Rights Tennessee** to talk about my information with any employee of <u>Orange Grove</u>.

| | |
|---|---|
| **Name:** | ▮▮▮▮▮ |
| **SS#:** | |
| **DOB:** | ▮▮▮▮ |

**INFORMATION AUTHORIZED FOR RELEASE:**

☐ All Records
☐ Observation (example, classroom observation)
☐ Complaints or grievances filed, with responses or dispositions

☒ Other (specify): All records, including but not limited to, ISPs, daily notes, reportable incident forms, grievances, and invoices related to sign language interpreting from July 2022-present.

Extent or nature of records to be released:
(Limitations)

**This release is valid as long as my related case is open with DRT.**

I understand that I can cancel this authorization at any time by writing to the person/organization above or Disability Rights Tennessee, but that canceling this authorization does not affect any information released before the revocation is received.

| **I ALSO UNDERSTAND THAT:** | |
|---|---|
| • **I am not required to sign this authorization but I will only be provided with advocacy assistance if I do so.** | Individual or Representative          Date |
| | <u>Linda Norwood</u> |
| | Name of Individual or Representative (print) |
| • I have the right to receive a copy of this authorization. | |
| | **Relationship of Representative to Individual:** |
| • A copy of this authorization may be used in all of the same ways as an original. | ☐ Parent or Guardian |
| | ☒ Conservator (attach court order) |
| | ☐ Attorney-in-Fact (attach notarized Power of Attorney) |
| | ☐ Estate Administrator (attach court document) |
| | ☐ Other (specify): |

04/27/2023 16:14   #096 P.027/063   From:



# SUMMARY OF DISABILTY RIGHTS TENNESSEE'S AUTHORITY TO INVESTIGATE ABUSE AND NEGLECT UNDER FEDERAL LAW

## WHAT IS DISABILITY RIGHTS TENNESSEE?

Disability Rights Tennessee (DRT) is an independent, private, nonprofit agency established in 1978 pursuant to the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15001 *et seq.* (DD Act). Congress mandated that each state receiving funds under the DD Act establish such a protection and advocacy (P&A) system to protect the rights and interests of persons with developmental disabilities. DRT is the advocacy system for the State of Tennessee.

Congress subsequently expanded the responsibilities of the existing P&As to advocate for all persons with mental illness, under the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act, 42 U.S.C. § 10801 *et seq.* Most recently, Congress authorized P&As to advocate on behalf of persons with physical and other disabilities not covered under either the DD or PAIMI Acts; this authority is provided under the Protection and Advocacy of Individual Rights (PAIR) Program of the Rehabilitation Act, 29 U.S.C. § 794e.[1]

## WHAT ACTIVITIES DOES DRT ENGAGE IN?

In protecting and advocating for the rights of persons with disabilities, DRT may engage in the following activities:

- **Investigate incidents of abuse and neglect** if the incident is reported to DRT or if DRT determines that there is probable cause to believe the incident occurred.

---

[1] Congress intended that the authorities under the DD, PAIMI and PAIR laws be applied in a consistent manner. Indeed, the PAIR Program expressly incorporates by reference (at 42 U.S.C. § 794(e)(f)) the authority regarding access to facilities and records for the purpose of investigating abuse and neglect (which is discussed below) set forth in the DD Act. Given that authority under the PAIR Program is substantially identical to that under the DD Act, statutory and regulatory citations regarding DRT's federal investigative authority are provided below only with respect to the DD and PAIMI Acts.

## B. Information and Records

DRT has authority to access records of programs serving people with disabilities and the confidential records of people with disabilities.[6] The records available to DRT include, but are not limited to:

- Information and records prepared or received in the course of providing intake, assessment, evaluation, education, training, or other supportive services, including medical records, financial records, monitoring reports, or other reports, prepared by facility, program or service staff.[7]

- Reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, injury, or death occurring at a facility, where the individual with a disability is receiving services for care.[8] In an abuse or neglect investigation, this includes personnel records prepared by or maintained by the facility or program in connection with reports of incidents of abuse, neglect, injury or death.[9]

- Discharge planning records.[10]

- Pursuant to an investigation into abuse or neglect allegations, information in possession of a facility including:

  - reports prepared by individuals and entities performing certification or licensure reviews, or by professional accreditation organizations, and related assessments prepared for a facility by its staff, contractors, or related entities;[11] and

  - information in professional, performance, building, or other safety standards, demographic or statistical information relating to a facility.[12]

---

[6] 42 U.S.C. §§ 15043(a)(2)(I), (B) and (J); 42 U.S.C. § 10805(a)(4); 45 C.F.R. § 1326.25(a)-(d); 42 C.F.R. § 51.41(a)-(c).
[7] 42 U.S.C. § 15043(c)(1); 42 U.S.C. § 10806(b)(3)(A); 45 C.F.R. 1326.25(b)(1); 42 U.S.C. 51.41(c)(1).
[8] 42 U.S.C. § 15043(c)(2); 42 U.S.C. § 10806(b)(3)(A); 45 C.F.R. § 1326.25(b)(2); 42 C.F.R. § 51.41(c)(2).
[9] 45 C.F.R. § 1326.25(b)(2)(iii); 42 C.F.R. § 51.41(c)(2)(iii).
[10] 45 C.F.R. § 1326.25(b)(3); 42 C.F.R § 51.41(c)(3).
[11] 45 C.F.R. § 1326.25(b)(2); 42 C.F.R. § 51.41(c)(4); *Pennsylvania Protection and Advocacy, Inc. v. Houstoun*, 228 F.3d (3d Cir. 2000) (P&As are entitled to access "peer review" records despite state law restrictions on their disclosure); *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003) (same holding).
[12] 45 C.F.R. § 1326.25(b)(4); 42 C.F.R. § 51.41(c)(5).

04/27/2023 16:16    #096 P.029/053
From:

Case 1:23-cv-00111-DCLC-CHS   Document 1-1   Filed 05/09/23   Page 28 of 51   PageID #: 33

- Any person who is deceased, and for whom DRT has received a complaint that the individual has been subject to abuse or neglect, or has determined that probable cause exists to suspect abuse or neglect.[18] DRT is entitled to access such records without consent from another party.[19]

- Any person who has a legal guardian, conservator, or other legal representative with respect to whom a complaint has been received by DRT, or with respect to whom DRT has determined that probable cause exists to believe that the person has been subjected to abuse or neglect, whenever all of the following conditions exist:

  - DRT has contacted the representative upon receipt of the representative's name and address.

  - DRT has offered assistance to the representative to resolve the situation; and

  - The representative has failed or refused to act on behalf of the person.[20]

Under federal law, DRT is the final arbiter for purposes of determining if there is probable cause to believe that an individual has been subject to abuse or neglect, or is at significant risk of being subjected to abuse or neglect.[21] The probable cause determination is based upon reasonable inferences drawn from individual experience or training regarding similar incidents, conditions, or problems that are usually associated with abuse or neglect.[22] Information supporting a probable cause determination may arise from monitoring or other activities, including but not limited to, media reports such as newspaper articles.[23]

---

[18] 42 U.S.C. § 15043(a)(2)(J); 42 U.S.C. § 10805(a)(4)(B).

[19] 42 U.S.C. § 15043(a)(2)(J); 42 U.S.C. § 10805(a)(4)(B); *Alabama Disabilities Advocacy Program v. J.S. Tawater Development Center*, 97 F.3d 492 (11ᵗʰ Cir. 1996) (consent for release of records from guardian of deceased person need not be obtained as the guardianship terminated at death).

[20] 42 U.S.C. §15043(a)(2)(I)(iii). In the case of a person with a mental illness (and no other disability), access is provided under these circumstances if there is a complaint or the P&A has probable cause to suspect that the health or safety of the individual is in serious and immediate jeopardy. 42 U.S.C. § 10805(a)(4)(C).

[21] *Arizona Center for Disability Law v. Allen*, 197 F.R.D. 689, 692 (D. Ariz.2000); *Office of Protection and Advocacy Programs for Persons with Disabilities v. Armstrong*, 266 F. Supp. 2d 303 (D. Conn. 2003).

[22] 45 C.F.R. § 1326.19; 42 C.F.R. § 51.2.

[23] *Alabama Disabilities Advocacy Program v. J.S. Tawater Development Center*, 97 F.3d 492, 498 (11ᵗʰ Cir. 1996); *Georgia Advocacy Office v. Borison*, 520 S.E. 2d 701 (Ga. Ct. Apps. 1999).

5

- **Share the information with the individual client** who is the subject of the record or report or other document, or with his or her legally authorized representative, subject to any limitation on disclosure to recipients of mental health services.[29]

- **Issue a public report of the results of an investigation** that maintains the confidentiality of individual clients.[30]

- **Report the results of an investigation to responsible investigative or enforcement agencies** including, but not limited to, agencies that are responsible for facility licensing or accreditation, employee discipline, employee licensing or certification suspension or revocation, or criminal prosecution.[31]

- **Pursue alternative remedies,** including the initiation of legal action.[32]

- **Report suspected abuse** concerning children and adults pursuant to Tennessee law.

---

[29] 42 C.F.R. § 51.46(a).
[30] 42 C.F.R. § 51.45(b)(1).
[31] 42 C.F.R. 51.45(b)(2).
[32] 42 U.S.C. § 15043(a)(2)(A); 42 U.S.C. § 10805(a)(1)(B)

7

04/27/2023 16:16   #095 P.031/053

From:

**Linda J. Norwood**
Attorney At Law

P.O. BOX 11572                                    (423) 304-1727
Chattanooga, TN  37401                            (423) 266-2300
lindanorwood@epbfi.com                            (423) 886-9870 fax

March 10, 2023

Ms. Stacie L. Price, Esq.
Disability Rights TN
2 International Plaza
Suite 825
Nashville, TN  37217-2601

       Re:  Conservatorship of ▒▒▒▒▒▒▒

Dear Ms. Price:

       I am responding to your letter dated March 6, 2023.  The complaints in your letter appear to be from a source that is not relying on first-hand knowledge.  Several months ago, the first three complaints in your letter were investigated and addressed.  Additionally, the last complaint was also investigated and found to be unsubstantiated.

       Consequently, I will not consent to the release of Mr ▒▒▒▒▒▒ records.  While I appreciate your willingness to get involved, your investigation is not necessary at this time.

Best regards,

Linda J. Norwood

Cc:  Orange Grove Center

EXHIBIT
E



**DISABILITY RIGHTS TN**

800.342.1660 | www.disabilityrightstn.org | gethelp@disabilityrightstn.org

Middle Tennessee Regional Office
Administration & Legal Department
2 International Plaza, Suite 825
Nashville, TN 37217
615.298.1080 phone
615.298.2046 fax

April 21, 2023

Ms. Tera Roberts, Chief Executive Officer
The Orange Grove, Inc.
615 Derby Street
Chattanooga, TN 37404

RE: Records of ▮▮

Dear Ms. Roberts,

I am writing in respondence to your email of March 27, 2023, in which you indicate Orange Grove will not provide Disability Rights Tennessee (DRT) the records of ▮▮, a person supported by Orange Grove under its contract with DIDD. DRT has made repeated multiple attempts to explain to you and Orange Grove DRT's legal right to 1) obtain these records, and 2) have access to these records, which DRT is authorized by federal law to do. DRT even offered to come to Orange Grove's office and copy the records at its own expense. Orange Grove has refused that offer as well. As I stated in prior correspondence, and, as set out more fully in the attached draft Complaint, DRT considers yourself, as chief executive officer acting on behalf of Orange Grove, and Orange Grove to be in violation of federal law, namely the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act") 42 U.S.C. § 15041 *et seq.*, and its corresponding regulations.

Attached you will find a complaint naming both yourself in your official capacity and The Orange Grove Center, Inc. as defendants in a federal lawsuit. We are also attaching the case of *DLC v. Riel, 130 F.Supp.2d (D. Mass. 2001)*, which has facts and issues essentially identical to the facts in this case. We ask that you review these documents and provide DRT access to ▮▮▮ records by the end of business day Thursday, April 27, 2023. Should you have any questions, please feel free to contact me at the below email address or phone number. I remain hopeful this matter can be resolved without litigation.

1



EXHIBIT
F



**DISABILITY RIGHTS TN**

800.342.1660 | www.disabilityrightstn.org | gethelp@disabilityrightstn.org

Middle Tennessee Regional Office
Administration & Legal Department
2 International Plaza, Suite 825
Nashville, TN 37217
615.298.1080 phone
615.298.2046 fax

Sincerely,

*Stacie L. Price*

Stacie L. Price, Staff Attorney
Disability Rights Tennessee
2 International Plaza, Suite 825
Nashville, TN 37217
(615) 732-6982
staciep@disabilityrightstn.org

2

IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
TENNESSEE

DISABILITY RIGHTS TENNESSEE,    )
    )
    Plaintiff,    )
    )
vs.    )    CIVIL ACTION NO.
    )
TERA ROBERTS, in her official organizational )
capacity as Chief Executive    )
Officer of THE ORANGE GROVE    )
CENTER, INC., and THE ORANGE GROVE    )
CENTER, INC.,    )
    )
    )
    Defendants.    )

## COMPLAINT

Plaintiff Disability Rights Tennessee brings this suit for injunctive and declaratory relief against Defendants Tera Roberts, in her official organizational capacity as the Chief Executive Officer of The Orange Grove Center, Inc., and The Orange Grove Center, Inc.

### I.    INTRODUCTION

1. Plaintiff, Disability Rights Tennessee ("DRT"), brings this action for declaratory and injunctive relief pursuant to the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act") 42 U.S.C. § 15041 *et seq.* By this action, DRT challenges the refusal of the defendant, Tera Roberts, in her official organizational capacity as Chief Executive Officer (CEO) of The Orange Grove Center, Inc., and The Orange Grove Center, Inc. ("Orange Grove") to provide DRT with records of John Doe[1] to which DRT is legally

---

[1] The person with disabilities for whom DRT seek records will be referred to by the pseudonym "John Doe" pursuant to the confidentiality requirements of the DD Act. *See* 45 C.F.R. § 1326.28.

1

authorized to receive, because of the refusal of the Conservator to sign a consent.

<u>Protection & Advocacy System</u>

2. Individuals with disabilities have historically been vulnerable to abuse, neglect, and violations of their rights, due in part to a lack of transparency and visibility on the part of those charged with providing them with services and care. Also, persons with disabilities living in private and public facilities who suffer from abuse and neglect are often unlikely to or cannot report abuses committed by the people who have daily control over their lives.

3. Over the past few decades, the United States government and individual states have taken important steps to protect the rights of individuals with disabilities. Congress mandated that each state have a "Protection and Advocacy System" (P&A). Congress enacted the first P&A Act[2], the Developmental Disabilities and Bill of Rights Act ("DD Act"), in 1975 "to protect the legal and human rights of individuals with developmental disabilities." 42 U.S.C. § 15041.

4. In enacting the DD Act, Congress found that "individuals with developmental disabilities are at greater risk than the general population of abuse, neglect, financial and sexual exploitation, and the violation of their legal and human rights."[3]

5. The P&A system is designed to ensure every state has an independent oversight agency to protect the rights and well-being of people with disabilities, including having broad authority to investigate allegations of abuse and neglect in locations where people with disabilities receive care and services.

6. Under the DD Act, each P&A "shall have the authority to pursue administrative, legal, and other appropriate remedies to ensure the protection of, and advocacy for, the rights of such

---

[2] Other P&A Acts include, but are not limited to, the Protection & Advocacy of Individuals with Mental Illness Act (PAIMI), 42 U.S.C. § 10801 *et. Seq.*, the Protection & Advocacy for Individual Rights Act (PAIR), the Protection & Advocacy for Individuals with Traumatic Brain Injury Act (PATBI), and the Protection and Advocacy Act for Assistive Technology Act (PAAT). *See* 29 U.S.C. § 794e(f) (PAIR), 42 U.S.C. § 300d-53(k) (PATBI), and 29 U.S.C.A. § 3004(a)(2) (PAAT). *See* also 52 U.S.C.A. § 21061(a) Protection and Advocacy for Voting Access. Collectively, these are referred to as the "P&A Acts."
[3] 42 U.S.C.A. § 15001(a)(5).

2

individuals with" developmental disabilities. 42 U.S.C. § 15043(a)(2)(A)(i). This includes having independent access to facilities and institutions to monitor, detect, prevent, and investigate abuse and neglect of individuals with disabilities.

7. Although a P&A may exercise its authority under state law where state authority exceeds the authority required by the DD Act, "[s]tate law must not diminish the required authority of the Protection and Advocacy System as set by the Act."[4] Thus, state and P&A systems are designed by Congress to be independent of state regulatory, licensing, and investigative agencies.

8. On September 19, 1983, then State of Tennessee Governor Lamar Alexander designated DRT[5] as the "agency responsible for the protection and advocacy system for Tennessee effective October 1, 1983. Governor Alexander noted that even before that date DRT[6] "has been a part of the protection and advocacy system in Tennessee since its inception and will help achieve" goals he described as "a commitment to seeing that the needs of Tennessee's citizens who are developmentally disabled are met and that their rights are protected and enhanced." Governor Alexander further noted that DRT is "*independent* of any agency which provides services" and "has the authority to pursue legal, administrative and other remedies."[7] (emphasis added).

**<u>Disability Rights Tennessee & Access to Facilities and Records</u>**

9. DRT is the designated and federally authorized Protection and Advocacy System ("P&A") for the State of Tennessee ("the State") for individuals with disabilities.

10. DRT is entrusted, empowered, and obligated to protect the civil rights of individuals

---

[4] 45 C.F.R. § 1326.21(f) "A Protection and Advocacy System may exercise its authority under State law where the State authority exceeds the authority required by the Developmental Disabilities Assistance and Bill of Rights Act of 2000. However, State law must not diminish the required authority of the Protection and Advocacy System as set by the Act."
[5] DRT was then incorporated and known as Effective Advocacy for Citizens with Handicaps, Inc. (EACH). In 1991, EACH changed its name to Tennessee Protection and Advocacy (TN P&A). In 2005 TN P&A changed its name to Disability Law and Advocacy Center of Tennessee (DLAC). In 2014 DLAC changed its name to Disability Rights Tennessee (DRT) as it is still known today.
[6] Then known as "E.A.C.H."
[7] See attached, as it is not easily found in Westlaw, Governor Lamar Alexanders September 19, 1983, letter to the US Office of Health and Human Services designating the protection and advocacy system in Tennessee.

3

04/27/2023 16:17 #096 P.037/053

with disabilities in the State, including, but not limited to, monitoring facilities where
people with disabilities receive services, and conducting investigations into the
alleged abuse and neglect of individuals with disabilities, including but not limited
to, individuals with disabilities who reside in private facilities licensed by the State's
Department of Intellectual and Developmental Disabilities (DIDD). *See* 45 C.F.R.
§ 1326.27(b)-(d).

11. The DD Act requires facilities providing services to individuals with developmental and
intellectual disabilities to allow DRT to have reasonable unaccompanied access to facilities
to: (1) monitor compliance with respect to the rights and safety of residents; (2) provide
information and training to residents; and (3) investigate allegations of abuse and neglect of
residents, which includes interviewing residents and staff. [8]

12. For investigations, reasonable unaccompanied access means that DRT shall have access to
individuals with developmental disabilities at all times necessary to conduct a full
investigation of an incident of abuse or neglect, including to access to all areas of the service
provider's premises that are used by individuals with developmental disabilities or are
accessible to them. Such access shall be provided without advance notice and made
available immediately upon request. 45 C.F.R. § 1326.27(b).

13. Most pertinent to the issue before this Court, the P&A Acts allow DRT to *access records of
programs serving people with disabilities*, including the confidential records of people with
disabilities during the course of investigation into complaints of abuse and neglect of an
individual with a disability. 42 U.S.C.§ 15043(a)(2)(I)-(J),(c); 45 C.F.R. §1326.25(b)
(emphasis added).

14. Per the DD Act, DRT shall have access to the following records of individuals with
disabilities during the course of an investigation into allegations of abuse and neglect of an
individual with a disability:

---

[8] 42 U.S.C. §15043(a)(2)(H); 45 C.F.R. § 1326.27(a).

4

(b) Individual records to which P&A systems must have access under section 143(a)(2), (A)(i), (B), (I), and (J) of the Act (whether written or in another medium, draft, preliminary or final, including handwritten notes, electronic files, photographs or video or audiotape records) shall include, but shall not be limited to:

(1) Individual records prepared or received in the course of providing intake, assessment, evaluation, education, training and other services; supports or assistance, including medical records, financial records, and monitoring and other reports prepared or received by a service provider. This includes records stored or maintained at sites other than that of the service provider, as well as records that were not prepared by the service provider, but received by the service provider from other service providers.

(2) Reports prepared by a Federal, State or local governmental agency, or a private organization charged with investigating incidents of abuse or neglect, injury or death. The organizations whose reports are subject to this requirement include, but are not limited to, agencies in the foster care systems, developmental disabilities systems, prison and jail systems, public and private educational systems, emergency shelters, criminal and civil law enforcement agencies such as police departments, agencies overseeing juvenile justice facilities, juvenile detention facilities, all pre– and post–adjudication juvenile facilities, State and Federal licensing and certification agencies, and private accreditation organizations such as the Joint Commission on the Accreditation of Health Care Organizations or by medical care evaluation or peer review committees, regardless of whether they are protected by federal or state law. The reports subject to this requirement describe any or all of the following:

(i) The incidents of abuse, neglect, injury, and/or death;

(ii) The steps taken to investigate the incidents;

(iii) Reports and records, including personnel records, prepared or maintained by the service provider in connection with such reports of incidents; or,

(iv) Supporting information that was relied upon in creating a report including all information and records that describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings;

(3) Discharge planning records; and

(4) Information in professional, performance, building or other safety standards, and demographic and statistical information relating to a service provider.

45 C.F.R. §1326.25(b).

15. As Tennessee's P&A, DRT has the responsibility and authority to access records in the course of investigating allegations of abuse or neglect of individuals with disabilities.[9]

---

[9] 42 U.S.C. 15043(I) have access to all records of--

04/27/2023 16:17    #096 P.039/053

16. DRT may obtain records during the course of an investigation in one of three ways: 1) by obtaining

authorization of the individual with a disability or their legal guardian, conservator, or other legal

representative; 2) by statutory authorization when an individual with a disability lacks mental or

physical capacity to consent, does not have a legal guardian, conservator, or other legal representative,

and an individual with a disability has been the subject of a complaint to DRT, or DRT has probable

cause to believe that such individual has been subject to abuse and neglect; and, 3) by statutory

authorization in the case of an individual with a disability who has a legal guardian, conservator,

or other legal representative, about whom a complaint has been received by DRT **or**, as a result of

monitoring or other activities, DRT has determined that there is probable cause to believe that the

individual with developmental disability has been subject to abuse or neglect, and DRT has made

a good faith effort to contact the legal guardian, conservator, or other legal representative and offer

DRT's assistance, and the legal guardian, conservator, or other legal representative has failed or

refused to provide consent on behalf of the individual. 45 C.F.R. § 1326.25(a)(1)-(3) (emphasis

added).[10] The latter two different possibilities are generally known as a P&A's records access

authority.

17. DRT's records access authority exists separate and in addition to any other investigations

by state agencies, including, but not limited to, DIDD investigations, Department of Health

---

(i) any individual with a developmental disability who is a client of the system if such individual, or the legal guardian,
conservator, or other legal representative of such individual, has authorized the system to have such access;
(ii) any individual with a developmental disability, in a situation in which--
(I) the individual, by reason of such individual's mental or physical condition, is unable to authorize the system to have such
access;
(II) the individual does not have a legal guardian, conservator, or other legal representative, or the legal guardian of the
individual is the State; and
(III) a complaint has been received by the system about the individual with regard to the status or treatment of the individual or,
as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or
neglect; and"
42 U.S.C.A. § 15043(I) (West)
[10] The records of individuals with developmental disabilities shall be provided to the P&A system within three business days
after the receipt of such a written request from the P&A system. 45 C.F.R. § 1326.25 (c)(2).

6

investigations, TennCare investigations, and Adult Protective Service (APS) investigations. DRT is required by the DD Act to (G) "be independent of any agency that provides treatment, services, or habilitation to individuals with developmental disabilities.[11]"

### DRT's Authorized Access to John Doe's Records

18. In the matter before this court, the records to which DRT is authorized access under the DD Act include the records of John Doe, who has intellectual and developmental disabilities and deafness, and who resides at a DIDD-licensed residential home operated by Defendant Orange Grove in Chattanooga, Tennessee.

19. DRT has received multiple complaints that John Doe has been and/or is being abused and/or neglected at his DIDD-licensed residential home operated by Orange Grove, including but not limited to, complaints of physical abuse, financial exploitation, neglect, and concerns for his safety.

20. DRT has made repeated requests to Defendants to obtain all records concerning John Doe that Orange Grove has in its custody in accordance with DRT's federal mandates, as discussed in Section IV below. The Defendants have denied and continue to deny DRT access to the requested records in violation of the DD Act.

21. Defendants, in clear violation of federal law, have refused to produce John Doe's Orange Grove records and are preventing DRT from fulfilling its statutory mandates of investigating allegations of abuse and neglect and providing protection and advocacy services for individuals with disabilities, namely John Doe.

22. By this action, DRT seeks an order from this Court requiring Defendants to provide the requested records of John Doe so that DRT may discharge its statutory duties and investigate

---

[11] 42 USCA § 15043(a)(2)(G).

7

the alleged abuse and/or neglect of any individual with disabilities, and specifically to

discharge its statutory duties to investigate the complaints of abuse and neglect related to

John Doe. See Fed. R. Civ. P. 57 & 65, 28 U.S.C. § 2201, and 42 U.S.C. § 15001.

## II.    JURISDICTION

23. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 to redress

Defendant's violations of the DD Act, 42 U.S.C. §§ 15001. This Court has authority to

grant Plaintiff's claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§

2201-02, and Fed. R. Civ. P. 57 & 65.

24. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events or

omissions complained of herein occurred in this district, the parties are located in this

district, and have availed themselves of this State and district.

## III.    PARTIES

25. Plaintiff DRT is a nonprofit Tennessee corporation mandated by Congress to protect and

advocate for the civil rights of individuals with disabilities and investigate allegations of

abuse and neglect concerning individuals with disabilities. DRT is designated by the State

to perform this Congressional mandate pursuant to the P&A Acts.

26. DRT is empowered by Congress to investigate complaints of abuse and neglect

concerning individuals with disabilities, including but not limited to, complaints of abuse

and neglect concerning people with intellectual disabilities and deafness who receive

services through state-licensed residential home and community providers ("residential

providers").

28. Defendant Orange Grove is a non-profit company operating in the State and, specifically,

in Hamilton County, Chattanooga, Tennessee. It is licensed by DIDD to provide

8

residential services, among other things, to individuals with intellectual disabilities. Its business address is 615 Derby Street, Chattanooga, TN 37404.

29. Defendant Tera Roberts is the CEO of Orange Grove and has held this position at all times during the actions described by this suit. She is being sued in her official capacity. Defendant Roberts, by law and contract, is responsible for the implementation of the policies, procedures, practices, and customs at Orange Grove, as well as ensuring that Orange Grove complies with federal and state laws. Defendant Roberts is also responsible for the acts and omissions challenged by this suit. Finally, Defendant Roberts is the registered agent for service of process for Defendant Orange Grove at 615 Derby Street, Chattanooga, Tennessee 37404.

30. John Doe is a person with disabilities and a constituent of DRT. John Doe has intellectual disability and is deaf. John Doe lives in a residence operated by Orange Grove located in Chattanooga, Tennessee. Upon information and belief, John Doe communicates primarily in sign language. Upon information and belief, no staff at John Doe's Orange Grove home know or communicate in sign language with Mr. Doe. John Doe often gets frustrated when he cannot communicate with his staff and peers. Upon information and belief, John Doe travels around Chattanooga unsupervised nearly every day. Upon information and belief, due to John Doe being deaf and non-verbal, he is unable to report incidents of abuse and neglect at his Orange Grove residence. DRT has received two separate complaints that John Doe has been subjected to abuse and neglect at this Orange Grove residential home.

31. John Doe has a conservator, Linda Norwood, Esquire, whose business address is P.O. Box 11572, Chattanooga, TN 37401. Linda Norwood is a licensed attorney in Tennessee. Ms. Norwood has failed and specifically refused to cooperate with DRT's

9

#095 P.043/053      04/27/2023 16:18

investigation of the alleged abuse and neglect of her ward, John Doe.

### IV.  FACTS

32. On or about January 6, 2023, DRT received a complaint regarding allegations of Orange
    Grove's abuse and/or neglect of John Doe, including, but not limited to lack of
    supervision, leading John Doe to wander around Chattanooga and nearly step out in front
    of a bus, financial exploitation by unknown persons, and communication neglect.[12]

33. On or about January 27, 2023, DRT received a second complaint regarding allegations that
    an Orange Grove staff member at John Doe's residence had beaten him with a broom.

34. On or about February 3, 2023, DRT investigator, William Moore, contacted John Doe's
    conservator, Linda Norwood, via phone to inform her of the abuse and neglect complaints
    concerning her ward, John Doe, explain DRT's investigative powers, and offer DRT's
    assistance in investigating these allegations of abuse and neglect.  Ms. Norwood did not
    wish to discuss the allegations of abuse and neglect concerning John Doe, refused DRT's
    assistance, refused to sign a Release of Information (ROI) for DRT to obtain John Doe's
    Orange Grove Records, and refused any cooperation into DRT's investigation into the
    alleged abuse and neglect of her ward, John Doe.

35. On or about February 3, 2023, DRT determined it could use its Congressional records access
    authority to obtain John Doe's Orange Grove records.  DRT made its decision pursuant to
    45 C.F.R. § 1326.25(a)(3) which states:

    > (a) Pursuant to sections 143(a)(2), (A)(i), (B), (I), and (J) of the Act, and subject
    > to the provisions of this section, a Protection and Advocacy (P&A) System, and all
    > of its authorized agents, **shall have access to the records of individuals with
    > developmental disabilities under the following circumstances:**

---

[12] DRT is required to keep confidential the names and identifying information of individuals who make complaints of abuse and
neglect concerning people with disabilities. 45 C.F.R. § 1326.28(b)(1)(i-iv). *See also* 45 C.F.R. § 1326.28(a) which requires
that, "A P&A shall, at a minimum, comply with the confidentiality provisions of all applicable Federal and State laws."

10

...

   (3) In the case of an individual, who has a legal guardian, conservator, or other legal representative, about whom **a complaint**[13] has been received by the system **or**, as a result of monitoring or other activities, the system has determined that there is probable cause to believe that the individual with developmental disability has been subject to abuse or neglect, whenever the following conditions exist:

(i) The P&A system has made a good faith effort to contact the legal guardian, conservator, or other legal representative upon prompt receipt (within the timelines set forth in paragraph (c) of this section) of the contact information (which is required to include but not limited to name, address, telephone numbers, and email address) of the legal guardian, conservator, or other legal representative;

(ii) The system has offered assistance to the legal guardian, conservator, or other legal representative to resolve the situation; and

(iii) The legal guardian, conservator, or other legal representative has failed or refused to provide consent on behalf of the individual.

(emphasis added).

36. DRT has met the criteria set forth in 45 C.F.R. § 1326.25(a)(3) to use records access authority to obtain John Doe's Orange Grove records because John Doe is a person with disabilities who has a conservator, Linda Norwood. DRT received multiple complaints that John Doe was being subjected to abuse and/or neglect by Orange Grove.[14] DRT Investigator William Moore contacted Linda Norwood by phone on February 3, 2023, and offered her DRT's services, and attempted to explain the abuse and neglect allegations, and requested that she sign an ROI to obtain John Doe's Orange Grove records. Ms. Norwood refused all offers of DRT's assistance and refused to sign an ROI. So, DRT made a good faith attempt

---

[13] The DD Act defines "complaint" as "The term "complaint" includes, but is not limited to, any report or communication, whether formal or informal, written or oral, received by the P&A system, including media accounts, newspaper articles, electronic communications, telephone calls (including anonymous calls) from any source alleging abuse or neglect of an individual with a developmental disability.

[14] Because DRT has received multiple complaints of abuse and neglect regarding John Doe, it is not required to make a determination of probable cause pursuant to 45 C.F.R. § 1326.25(a)(3) to obtain John Doe's Orange Grove records. As the District of Massachusetts pointed out in *Disability Law Center, Inc. v. Riel*, "'It is evident from the structure of § 6042(a)(2)(I)(iii) [now 45 C.F.R. § 1326.25(a)(3)] that this section is designed to give P & A access to records where they have received a complaint **and/or** have probable cause regarding an individual, and the guardian has been contacted by the P & A and does not grant permission or refuses to act. The language of this section of the Act is clear, and it contemplates access to records when the [P & A] either receives a complaint regarding an individual resident, or has probable cause to believe that the health or safety of an individual is in serious and immediate jeopardy.'" 130 F.Supp.2d 294 at 298 (D. Mass. 2001) (quoting *Pennsylvania Protection & Advocacy, Inc. v. Royer–Greaves School for Blind*, 1999 WL 179797, at *8, *10 (E.D.Pa.1999)).

11

04/27/2023 16:18   #096 P.045/053

to contact the conservator and make her aware of the alleged abuse and neglect of her ward and offer DRT's services. Since Ms. Norwood refused to provide consent, DRT may proceed with records access authority to obtain John Doe's records from Orange Grove to investigate the complaints of abuse and neglect concerning Mr. Doe.

37. On February 17, 2023, DRT Investigator Moore sent a letter via email to Orange Grove Director of Compliance, Regina Selby, with a records request. DRT requested that Orange Grove provide the following records of John Doe: The most recent Independent Support Plan (ISP) and any Interdisciplinary Team Meeting (IDT) notes that have occurred or addendums since the ISP, including all assessments used for the purposes of the ISP, such as speech language (SLP), physical therapy (PT), occupational therapy (OT), and behavioral therapy (BA), etc.; all daily notes by direct support staff for 2022 and 2023; all incident reports for 2022 and 2023; all medical records for 2022 and 2023, including nurse's notes, provider notes, hospital discharges, medication administration record sheets (MARS), mental health services, etc. In this letter, Investigator Moore explained DRT's access authority and why it was authorized to receive the requested records. He requested that Orange Grove provide the requested records by February 27, 2023.

38. Orange Grove did not provide DRT the requested records by February 27, 2023.

39. On February 28, 2023, Investigator Moore sent a follow-up email to Ms. Selby stating Orange Grove had failed to produce the requested records by the deadline and requesting Orange Grove produce the requested records by March 1, 2023.

40. On February 28, 2023, Ms. Selby replied to Investigator Moore via email stating "[w]e will follow the direction of the State agency regarding the release of the records." Ms. Selby did not disclose who she talked to at the referenced State agency nor what the person's direction to her was. Since Orange Grove contracts with DIDD to provide services, it is presumed

12

Ms. Selby is referring to DIDD.

41. Orange Grove failed to provide DRT with the requested records by March 1, 2023.

42. On March 2, 2023, Investigator Moore emailed Ms. Selby informing her that the deadline to provide the records had passed, asking for the name and contact information of the person at the state agency with whom they were communicating, and asking her to provide a written statement of the reasons for the denial/delay of DRT's access authority by the end of business day on March 3, 2023, pursuant to 45 C.F.R. § 1326.26

43. On March 3, 2023, Ms. Selby sent an email to Investigator Moore refusing to provide DRT with the requested records of John Doe. According to her "Written statement for the denial or delay" of providing John Doe's Orange Grove records to DRT, Ms. Selby stated "[w]e have read 45 C.F.R. § 1326.26 and do not believe we are required to send you the documents you have requested. The Department of Intellectual and Developmental Disabilities (DIDD) provides funding for the referenced gentleman [John Doe] and has a comprehensive reporting and investigation system to address any suspicion of abuse, neglect, or mistreatment. If you have any suspicion of such activities, please make your report to that agency."

44. On March 6, 2023, DRT attempted to gain the consent of Conservator Linda Norwood for a second time. DRT sent a letter via email, fax, and mail to Ms. Norwood once again explaining the complaints of abuse and neglect concerning her ward, John Doe, offering DIDD's assistance, and requesting that she sign an ROI for DRT to obtain John Doe's Orange Grove records. DRT asked Ms. Norwood to respond no later than the end of business day on March 8, 2023.

45. Ms. Norwood failed to respond by March 8, 2023. She finally responded by letter sent via email on March 10, 2023. Once again, she refused all cooperation with DRT's investigation

13

04/27/2023 16:18   #096 P.047/053

From:

into the abuse and neglect of her ward, John Doe.

46. On March 15, 2023, Investigator Moore sent a third records request to Orange Grove to obtain the records of John Doe. Investigator Moore requested that Orange Grove provide the records no later than March 17, 2023.

47. On March 17, 2023, Ms. Selby sent Investigator Moore an email whereby Orange Grove again refused to provide DRT the requested records.

48. On March 22, 2023, DRT attorney, Stacie Price, sent Ms. Selby a letter again explaining DRT's access authority, Ms. Norwood's refusal of cooperation, and requesting Orange Grove provide the records by March 26, 2023.

49. On March 22, 2023, Orange Grove CEO, Tera Roberts, sent Stacie Price an email in which she agreed to allow DRT to read John Doe's records at an Orange Grove office. She informed DRT that all correspondence on this matter, moving forward, should be directed to her.

50. On March 22, 2023, DRT attorney Stacie Price declined Orange Grove's offer of solely a visual inspection of DD's records. On March 27, 2023, attorney Price further explained via email to Ms. Robert that per the DD Act, DRT's access to records included both reviewing and copying records.[15] DRT offered to go to Orange Grove's office on March 28, 2023, and copy the requested records.

51. On March 27, 2023, Ms. Roberts responded to DRT's offer via email and refused DRT all access to John Doe's Orange Grove records. According to the letter, "[p]ursuant to the court appointed conservator's letter on March 10th, we decline to produce the requested records."

---

[15] A P&A shall be permitted to inspect and copy information and records, subject to a reasonable charge to offset duplicating costs. 45 C.F.R. § 1326.25(d).

14

52. Despite Plaintiff DRT's statutory right to obtain John Doe's Orange Grove records, Defendants are barring DRT from obtaining a copy of the requested records. Without such access, DRT is not able to perform its P&A and statutory role of investigating the multiple complaints that Orange Grove and its employees and agents are abusing and neglecting John Doe, leaving this vulnerable person in potential serious and immediate jeopardy.

53. Under the above-described circumstances, Defendants are impeding the Congressionally mandated functions and duties of DRT. While Plaintiff DRT has no obligation to exhaust administrative or other remedies in this case, it has spent considerable time giving Defendants reasonable opportunity to learn of DRT's role and authority and to allow DRT access to John Doe's Orange Grove records that it is afforded by federal law. Unfortunately, Defendants have continued to deny DRT the access to which it is authorized.

### V. CAUSE OF ACTION – VIOLATION OF THE DD ACT

54. DRT restates and incorporates by reference each of the allegations contained in Paragraphs 1 through 53 above.

55. DRT, as Tennessee's designated P&A System, has the authority to access records of programs serving people with disabilities and the confidential records of people with disabilities. *See* 42 U.S.C. § 15043(a)(2)(I)-(J), (c); 45 C.F.R. § 1326.25(b).

56. Defendants' failure to permit DRT access to John Doe's Orange Grove records violates the DD Act.

57. DRT has no adequate remedy at law and will be irreparably harmed if the Defendants are permitted to continue to deny it access to John Doe's Orange Grove records. Defendants' actions impede DRT's investigation into the allegations and concerns that Orange Grove and its agents are or have abused and neglected John Doe and, thus, John Doe may be in

serious and immediate jeopardy.

## VI.    INJUNCTIVE & DECLARATORY RELIEF

58. DRT restates and incorporates by reference each of the allegations contained in
    Paragraphs 1 through 57 above.

59. The policies, procedures, regulations, practices, and customs of Defendants violated and
    continue to violate the rights of DRT under the DD Act to full, complete, meaningful,
    and timely access to John Doe's Orange Grove records. These policies, procedures,
    regulations, and practices will continue to violate DRT's right to access John Doe's
    Orange Grove records presently and, in the future, unless Defendants are permanently
    enjoined.

60. Plaintiff DRT requests this Court enter a declaratory judgment that Defendant Orange
    Grove's policies, procedures, regulations, and practices of continuing to deny DRT full,
    complete, meaningful, and timely access to requested records of John Doe, violated and
    continues to violate DD Act.

61. Plaintiff DRT requests that the Court enter a permanent injunction enjoining Defendants
    from continuing to deny full, complete, meaningful, and timely access by Plaintiff DRT
    to John Doe's Orange Grove records.

## PRAYER

WHEREFORE, Plaintiff Disability Rights Tennessee respectfully prays that this
Court:

1. Enter a declaratory judgment that Defendants have violated Plaintiff's rights under the
   DD Act by:

16

  a. Denying DRT access to John Doe's records for whom release of records is

    authorized by federal law;

  b. Interfering with DRT's duty to investigate allegations of abuse and neglect of

    persons with disabilities, namely John Doe; and

  c. That Defendant Orange Grove's policies, procedures, regulations, and practices

    of denying DRT access to John Doe's Orange Grove records violate the DD Act

    42 U.S.C. §§ 15001;

2. Grant preliminary and permanent injunctive relief that enjoins Defendants, their agents, and

  employees from denying DRT access to John Doe's Orange Grove records and other records

  of individuals with disabilities served by Orange Grove;

3. Maintain jurisdiction over this action until Defendants comply with the DD Act as demanded;

4. Award such other and further relief, at law or equity, to which Plaintiff DRT is

  justly entitled.

  Respectfully submitted,      DATE


  _____
  Stacie L. Price (BPR #030625)
  Disability Rights Tennessee
  2 International Plaza, Suite 825
  Nashville, TN 37217
  staciep@disabilityrightstn.org
  (615) 298-1080


  _____
  Jack W. Derryberry, Jr. pro hac vice,
  Motion to be filed shortly
  Disability Rights Tennessee
  2 International Plaza, Suite 825
  Nashville, TN 37217

04/27/2023 16:19 #096 P.051/053

jackw@disabilityrightstn.org
(615) 298-1080

_____
Sherry A. Wilds
Disability Rights Tennessee
2 International Plaza, Suite 825
Nashville, TN 37217
sherryw@disabilityrightstn.org
(615) 298-1080

_____
Jeremiah Jones, pro hac vice,
Motion to be filed shortly
Disability Rights Tennessee
9050 Executive Park Drive, Suite B-101
Knoxville, TN 37923 (865) 670-2944
jeremiahj@disabilityrightstn.org

18