UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| LINDA J. NORWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | 1:23-CV-00111-DCLC-CHS |
| | ) | |
| v. | ) | |
| | ) | |
| DISABILITY RIGHTS TENNESSEE and | ) | |
| THE ORANGE GROVE CENTER, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Orange Grove Center, Inc.'s ("Orange Grove") Motion to Remand [Doc. 19] and Defendant Disability Rights Tennessee's ("DRT") Motion to Realign the Parties [Doc. 23]. Both motions are fully briefed and ripe for review. For the reasons stated herein, Orange Grove's Motion to Remand [Doc. 19] is **DENIED**, and DRT's Motion to Realign the Parties [Doc. 23] is **GRANTED**.

I.     **BACKGROUND**

Plaintiff Linda J. Norwood was appointed as conservator for John Doe, an adult with intellectual and developmental disabilities ("IDD"), on July 17, 2017 [Doc. 1-1, ¶ 1]. John Doe resides at Orange Grove Center, a supported living home in Hamilton County, Tennessee [*Id*. at ¶¶ 3, 6]. In February 2023, the State of Tennessee Department of Intellectual and Developmental Disabilities ("DIDD") Investigation Office received reports that John Doe was hit with a broom by a staff person at Orange Grove [*Id*. at ¶ 11]. Following an investigation, however, DIDD determined that the reported allegation of abuse was unsubstantiated and closed the investigation [*Id*. at ¶¶ 14, 15].

On March 6, 2023, Plaintiff received a letter from DRT, a federally funded protection and advocacy agency which provides legal advocacy services to people with IDD in Tennessee pursuant to the Developmental Disabilities Assistance and Bill of Rights Act ("DDBRA"), 42 U.S.C. § 15001 *et seq*. [*Id*. at ¶¶ 4, 18]. In the letter, DRT expressed various concerns relating to John Doe's activities and care at Orange Grove [*Id*. at pg. 24]. Based on those concerns, DRT informed Plaintiff that it would investigate alleged instances of abuse and neglect and asked Plaintiff to sign information release forms to allow access to John Doe's Orange Grove records, pursuant to 45 C.F.R. § 1326.25, and allow Orange Grove employees to speak with DRT about John Doe's information, pursuant to 45 C.F.R. § 1326.27 [*Id*. at pg. 25]. On March 8, 2023, prior to receiving a response from Plaintiff, DRT investigators visited John Doe at Orange Grove unannounced and without Plaintiff's consent [Doc. 32-1, ¶ 13]. Two days later, Plaintiff responded to DRT's letter, informing that several of the alleged concerns stated in the letter had been investigated and addressed or found to be unsubstantiated by DIDD [Doc. 1-1, pg. 31]. Plaintiff further informed that she would not consent to the release of John Doe's Orange Grove records [*Id*.].

Following Plaintiff's denial of consent, DRT began requesting John Doe's records directly from Orange Grove [Doc. 34, pgs. 16–23]. Although Orange Grove repeatedly refused to release John Doe's records to DRT, the Chief Executive Officer ("CEO") for Orange Grove, Tera Roberts, offered to schedule a time for DRT staff to review John Doe's records visually [Doc. 34, pg. 17]. At first, DRT informed that Orange Grove's offer of a visual inspection was not acceptable, but later expressed a willingness to send an investigator to Orange Grove to review and copy/scan the records [*Id*. at pg. 16]. However, Ms. Roberts was unavailable to meet on the proposed date and continued to decline production of the requested records [Doc. 34, pg. 24].

2

On April 21, 2023, DRT informed Ms. Roberts by letter that it considered both Orange Grove and her, as the CEO of Orange Grove, "to be in violation of [the DDBRA] and its corresponding regulations" [*Id*. at pg. 25]. As a result, DRT attached a draft federal complaint against Ms. Roberts and Orange Grove and requested access to John Doe's records by the end of business day on April 27, 2023 [*Id*.].

On April 27, 2023, Orange Grove did not comply with DRT's request. Instead, Plaintiff initiated this action against Orange Grove and DRT in the Chancery Court for Hamilton County, Tennessee, requesting a declaratory judgment as to whether DRT's requests for John Doe's records "are 'reasonable' as required pursuant to 45 C.F.R. §§ 1326.21 and 1326.27" [Doc. 1-1, ¶¶ 25, 26] and seeking injunctive relief prohibiting DRT from receiving and Orange Grove from releasing John Doe's records without her consent [*Id*. at ¶ 28]. DRT subsequently removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1331 [Doc. 1]. Orange Grove now moves to remand the action because it did not consent to removal [Doc. 19]. DRT, however, asserts that Orange Grove's interests are aligned with Plaintiff's and moves to realign the parties [Doc. 23].

## II.   ANALYSIS

A defendant may remove any civil action over which the federal courts have original jurisdiction. 28 U.S.C. § 1441(a). The procedure for removal is governed by 28 U.S.C. § 1446. When, as here, removal is based solely on the general removal statute, 28 U.S.C. § 1441(a), "a defendant cannot remove unilaterally." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). Rather, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Within 30 days following removal, a party may move "to remand the case on the basis of any defect other than lack of subject matter jurisdiction[,]" including noncompliance with the foregoing rule of unanimity. 28 U.S.C. § 1447(c).

Orange Grove asserts that DRT neither requested nor obtained its consent prior to removal of the action, and, without unanimous consent, remand is necessary [Doc. 20, pg. 4]. It is undisputed that DRT's removal did not comply with the rule of unanimity, because Orange Grove neither joined in nor consented to removal. Nonetheless, DRT asserts that realignment of the parties to reflect their actual interests would cure such defect [Doc. 25, pg. 3]. In particular, DRT contends that Plaintiff and Orange Grove are "'adversaries' in name only" because their interests are completely aligned and, as a result, moves to realign Orange Grove as a party plaintiff [Doc. 24, pg. 6].

"[I]t is well established that . . . '[t]he courts, not the parties, are responsible for aligning the parties according to their interests in the litigation.'" *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992) (quoting *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987)). The Court has a "duty . . . to look beyond the pleadings and arrange the parties according to their sides in the dispute." *City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 69 (1941) (citations omitted). Because "[l]itigation is the pursuit of practical ends" and "not a game of chess[,]" the Court must determine "[w]hether the necessary collision of interest exists" by looking to "the principal purpose of the suit" and "the primary and controlling matter in dispute." *Id*. (citations omitted).

DRT asserts that "the threshold and controlling issue in dispute" in this action is its authorization to obtain John Doe's records [Doc. 24, pg. 11]. Because neither Plaintiff nor Orange Grove are willing to release such records, DRT asserts their interests are aligned. Plaintiff and Orange Grove, however, assert that the primary and controlling matter in dispute is the reasonableness of DRT's investigative actions altogether pursuant to 45 C.F.R. §§ 1326.21–1326.27, rather than simply its records access authority under 45 C.F.R. § 1326.25 [Doc. 30, pg. 7; Doc. 32, pg. 7]. Plaintiff and Orange Grove further contend that their interests concerning DRT's access

4

to John Doe's record are not completely aligned, as evinced by Orange Grove's offer to allow DRT access to visually review the records without Plaintiff's consent [Doc. 30, pg. 2; Doc. 32, 7].

Despite the disagreement among the parties, the record shows that the principal purpose of the instant action is to prevent DRT from obtaining John Doe's records from Orange Grove. Plaintiff and Orange Grove attempt to reframe the primary issue as one of general reasonableness under the DDBRA and corresponding regulations, but all roads lead back to DRT's records requests. In fact, Plaintiff's claim for declaratory judgment seeks only a determination of reasonableness as to those requests [Doc. 1-1, ¶¶ 24–26].[1] Likewise, Plaintiff's claim for injunctive relief supplements her claim for declaratory judgment, in that she seeks "a restraining order and a preliminary injunction restraining [DRT and Orange Grove] from releasing or acquiring the records of John Doe without [her] consent" [Doc. 1-1, ¶ 28].

Based on the foregoing, the primary and controlling matter in dispute is whether DRT is authorized to obtain such records without Plaintiff's consent. And, considering the allegations contained in Plaintiff's Complaint, it is apparent that Orange Grove's interests on the issue are aligned with Plaintiff's. Orange Grove, like Plaintiff, does not want to release John Doe's records without Plaintiff's consent. Although Ms. Roberts, on one occasion, offered DRT a visual review of the records without prior consent from Plaintiff, that issue is secondary and not controlling. *See U.S. Fid. & Guar. Co.*, 955 F.2d at 1089 ("despite the fact that there may be actual and substantial ancillary or secondary issues to the primary issue, the parties should be aligned in accordance with the primary issue in an action."). Moreover, there is no evidence that DRT actually reviewed John Doe's records with the permission of Orange Grove.

---

[1] Plaintiff alleges that "DRT's position is that . . . it is entitled to all records related to John Doe's care at Orange Grove Center for the purposes of investigating alleged abuse," and requests "that the Court determine whether DRT's requests are 'reasonable' as required pursuant to 45 C.F.R. §§ 1326.21 and 1326.27" [Doc. 1-1, ¶¶ 25, 26].

In sum, the primary issue in this action is whether DRT is entitled, under federal law, to access John Doe's records. Because neither Orange Grove nor Plaintiff want to release such records, there exists no collision of interests between the two. Plaintiff's success or failure on this controlling issue is Orange Grove's success or failure, and, as a result, Orange Grove is more properly aligned as a plaintiff in this action.

### III. CONCLUSION

Accordingly, Orange Grove's Motion to Remand [Doc. 19] is **DENIED**, and DRT's Motion to Realign the Parties [Doc. 23] is **GRANTED**. The Clerk is directed to designate Orange Grove as a party plaintiff in the above-captioned action.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge