IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TENNESSEE

CHATTANOOGA DIVISION


| | | |
|---|---|---|
| **Linda J. Norwood,** | ) | |
| **The Orange Grove Center, Inc.** | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action Number 1:23-cv-00111** |
| **v.** | ) | **DCLC-CHS** |
| | ) | |
| | ) | |
| **Disability Rights Tennessee,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |


# DEFENDANT DISABILITY RIGHTS TENNESSEE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS FOR ALL CLAIMS


Defendant Disability Rights Tennessee ("DRT") files this Motion for Judgment on the

Pleadings under Federal Rules of Civil Procedure 12(c), seeking a determination on all claims in

this case. Plaintiff Linda Norwood seeks declaratory and injunctive relief because Defendant

Disability Rights Tennessee is attempting to fulfill its federal mandate, and in filing this suit

against DRT, Plaintiff Norwood is in violation of federal and state laws. Defendant DRT

requests for this  Court to deny Plaintiff Norwood's request for relief and allow Defendant DRT

to fulfill its mandate as the Protection & Advocacy ("P&A) agency for Tennessee. DRT furthers

requests for this Court to grant its claims seeking declaratory and injunctive relief against

Plaintiff The Orange Grove Center, Inc. (Orange Grove). Even while accepting all factual

1

allegations in Plaintiff Norwood's initial complaint and the Orange Grove's answer to DRT's counter claim as true, DRT is entitled to judgment as a matter of law in all claims in this case.

## LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings is analyzed using the same standards that apply to 12(b)(6) motions for failure to state a claim. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). Thus, on a Rule 12(c) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009. For purposes of this determination, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman v. Pfizer, Inc*., 484 F.3d 855, 859 (6th Cir. 2007). This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

is entitled to relief.' " Id. at 679, 129 S. Ct. 1937 (quoting Fed. R. Civ. P. 8(a)(2)). "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.' " *Tucker,* 539 F.3d at 549.

## I. BACKGROUND AND FACTS

The Court provided an accurate background in its Memorandum Opinion and Order dated March 19th, but in the interest of clarification DRT submits the following brief summary of the facts in this case and a brief history of the P & A System.

Between January and February of 2023, DRT received complaints regarding abuse against a person at the individual's care facility. Plaintiff Linda Norwood is the conservator of John Doe, the person in question. When DRT reached out to her to get her consent for a Release of Information for John Doe's records at Orange Grove (where John was receiving care and where the alleged abuse took place) she refused, stating that other entities had already investigated and that the allegations were unsubstantiated. DRT, as the state P &A agency, has separate access authority to complete an investigation independent of other state and even federal agencies. As such, DRT again requested Norwood's and Orange Grove's assistance in their investigation. Norwood refused to assist, and Orange Grove refused to provide DRT with the records.

Plaintiff Norwood filed the original case in Chancery Court listing both DRT and Orange Grove as defendants. DRT removed the case to Federal Court and filed a crossclaim against then co-defendant Orange Grove. DRT successfully won a motion for realignment of parties and now Orange Grove is a Co-Plaintiff with Plaintiff Norwood and DRT's crossclaim turned into a counterclaim following that realignment. All answers have been filed following that realignment.

3

DRT's current motion is timely because, "A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial...The pleadings are closed after the filing of the complaints, answers, and any replies ordered by the court." *Forest Creek Townhomes, LLC v. Carroll Prop. Mgmt., LLC*, 695 Fed. Appx. 908, 913, 2017 WL 2557716 (6th Cir. 2017) (internal citations omitted).

DRT, under 45 C.F.R. § 1326.25(a)(3), does not need Norwood's assistance, but it does need, and is authorized, to have John Doe's records from Orange Grove to fulfill its federal mandate to investigate alleged incidents of abuse against John Doe, a person with disabilities.

The Protection and Advocacy ("P & A") system is a national network of independent agencies that serve as a safeguard for people with disabilities. The P&A system grew out of Congressional response to national reports uncovering serious abuse and neglect of people with disabilities in segregated facilities.. See generally, 42 U.S.C. § 15041 et seq. (developmental disabilities), 42 U.S.C. § 10801 et seq. (mental illness), 29 U.S.C. § 794e (other physical or mental impairments), collectively, the "P & A statutes." Congress enacted these statutes "after concluding that state systems for protecting the rights of individuals with disabilities varied widely and were in many cases inadequate." *Disability Rights Wisconsin, Inc. v. State of Wisconsin Dep't of Pub. Instruction*, 463 F.3d 719, 722 (7th Cir. 2006); see also *Alabama Disabilities Advocacy Program v. SafetyNet Youthcare*, Inc., 65 F. Supp. 3d 1312, 1317-21 (S.D. Ala. 2014).

As a condition of receiving federal funding for people with disabilities, the P & A statutes require each state to establish an effective protection and advocacy agency to protect the rights of individuals with disabilities and respond to allegations of abuse and neglect. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 247, 131 S. Ct. 1632, 1633-34, 179 L. Ed. 2d 675

(2011); *Disability Rights Wisconsin*, 463 F.3d at 722-23. There is a P & A agency in "every state and U.S. territory, as well as one serving the Native American population in the four corners region." See National Disability Rights Network, NDRN Member Agencies, available at http://www.ndrn.org/en/ndrn-member-agencies.html (last visited on October 6, 2016). Disability Rights Tennessee  is designated by the Governor of the State of Tennessee as the protection and advocacy system for people with disabilities in Tennessee.

To carry out their responsibilities, "including the authority to 'pursue legal, administrative, and other appropriate remedies' on behalf of individuals with disabilities," P & A agencies have broad authority to access individuals, records, and facilities that provide care or treatment to individuals with disabilities, and authority to conduct investigations of suspected abuse or neglect of individuals with disabilities." 42 U.S.C. § 10805(A)(1)(a).

## II. ARGUMENT

Plaintiff Norwood's requested relief is itself a violation of federal and state law in that it prevents DRT from fulfilling its mandate as the protection and advocacy system for people with disabilities in Tennessee, as does Orange Grove's refusal to provide DRT with copies of John Doe's records. DRT is entitled to Judgment as a Matter of Law because a state appointed conservator's wishes do not outweigh a Federal mandate from Congress.

### A. DRT is entitled to Judgment as a Matter of Law Regarding Plaintiff Norwood's Claims

#### 1. Norwood's Claim For Declaratory Relief Fails Because She Requests Something That Does Not Exist

In her complaint filed in Chancery Court of Hamilton County, Plaintiff Norwood "request(s) that the Court determine whether DRT's requests are "reasonable" as required

pursuant to 45 C.F.R. §§ 1326.21 and 1326.27"[1] R. at Doc. 1-1, Pg. 12. The claim is invalid because there is no reasonableness standard when it comes to a P & A's access to records.

The only time the word "reasonable" even appears in the federal regulation under Protection and Advocacy for Individuals with Developmental Disabilities on a P & A's access to records is when it states that, "A P&A shall be permitted to inspect and copy information and records, subject to a reasonable charge to offset duplicating costs." 45 C.F.R. § 1326.25. Plaintiff Norwood confuses and even conflates separate sections of the federal regulations and as a result, applies an inapplicable reasonable standard to DRT's access to records.

A reasonableness standard does appear in the regulations regarding a P & A's access to a facility and to the people with disabilities that it serves. 45 C.F.R. § 1326.27, titled *Access To Service Providers And Individuals With Developmental Disabilities*, states that, "a P&A system shall have *reasonable* unaccompanied access to service providers for routine circumstances. This includes areas which are used by individuals with developmental disabilities and are accessible to individuals with developmental disabilities at *reasonable* times, which at a minimum shall include normal working hours and visiting hours." Emphasis added.

This is the regulation that Plaintiff Norwood cites in her complaint, R. at Doc. 1-1, Pg. 12. While DRT agrees that it must be reasonable regarding the time and place of meeting with individuals with disabilities, the regulations are quite clear that once a complaint is made, a P & A is entitled "access to *all* records." U.S.C.A. 42 § 15043(i)(emphasis added).

---

[1] The Pleadings DRT is relying on for this MJP under Rule 12 (c) are limited to the Norwood's complaint and respective answers, DRT's Crossclaim and respective answers as well as documents attached to pleadings. "Documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss. Fed. R. Civ. P. 10(c). In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co*., 508 F.3d 327, 335–36 (6th Cir. 2007)

6

To reiterate, there is no "reasonableness" standard when it come to a P & A 's investigation or records access, only its access to a facility and its residents.

## 2. Plaintiff Norwood's Claim For Injunctive Relief Fails Because It Fails To Establish The Four Requirements For Injunctive Relief.

The second claim within Plaintiff Norwood's original complaint "request(s) that the Court issue a restraining order and a preliminary injunction restraining all Defendants from releasing or acquiring the records of John Doe without Conservator's consent, as John Doe would suffer immediate and irreparable injury, loss or damage if such restraining order and a preliminary injunction is not so ordered." R. at Doc. 1-1, Pg. 13.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." Obama for Am. v. Husted, 697 F.3d 423, 428 (6th Cir. 2012) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008).

Norwood's request for preliminary injunction fails the first prong because not only is she unlikely to succeed on the merits, but her request to prevent DRT from accessing John Doe's records is also itself a violation of Federal and State law.

DRT determined it could use its Congressional records access authority to obtain John Doe's Orange Grove records. DRT made its decision pursuant to 45 C.F.R. § 1326.25(a)(3) which states:

> (a) Pursuant to sections 143(a)(2), (A)(i), (B), (I), and (J) of the Act, and subject to the provisions of this section, a Protection and Advocacy (P&A) System, and all of its authorized agents, **shall have access to the records of individuals with developmental disabilities under the following circumstances:**
> …

7

(3) In the case of an individual, who has a legal guardian, conservator, or other legal representative, about whom **a complaint**[2] has been received by the system **or**, as a result of monitoring or other activities, the system has determined that there is probable cause to believe that the individual with developmental disability has been subject to abuse or neglect, whenever the following conditions exist:
(i) The P&A system has made a good faith effort to contact the legal guardian, conservator, or other legal representative upon prompt receipt (within the timelines set forth in paragraph (c) of this section) of the contact information (which is required to include but not limited to name, address, telephone numbers, and email address) of the legal guardian, conservator, or other legal representative;
(ii) The system has offered assistance to the legal guardian, conservator, or other legal representative to resolve the situation; and
(iii) The legal guardian, conservator, or other legal representative has failed or **refused to provide consent** on behalf of the individual.
(emphasis added).


In a deep analysis of this statute in a case similar to the one before this court, the Court in

*Disability Law Ctr., Inc. v. Riel* found that,

> Reading the statute as a whole, the Court is persuaded by the argument that where there is a complaint or probable cause, § 6042(a)(2)(I)(iii)[3] gives the P & A the right to access those records necessary to "pursue legal, administrative and other appropriate remedies or approaches to ensure the protection of, and advocacy for" individuals with developmental disabilities and "to investigate incidents of abuse and neglect of individual with developmental disabilities" even where the guardian does not give her consent. §§ 6042(a)(2)(A)(i) & (a)(2)(B). These complementary statutory duties to investigate and pursue legal remedies are not contingent on a guardian's consent. Therefore, a construction of § 6042(a)(2)(I)(iii) permitting the guardian to block all access to records necessary to investigate an incident would *effectively give the guardian veto power over the investigation itself, which would thwart the express statutory mandate of the P & A system.*[4]

---

[2] Under the DD Act, "The term "complaint" includes, but is not limited to, any report or communication, whether formal or informal, written or oral, received by the P&A system, including media accounts, newspaper articles, electronic communications, telephone calls (including anonymous calls) from any source alleging abuse or neglect of an individual with a developmental disability."
[3] The DD Act was moved from 42 U.S.C. § 6000 to its current location in October of 2000. Citations have been left unchanged.
[4] The Court in Riel further noted in a footnote that, "In stark contrast, prior to the 1990 Amendments to the Act, a guardian's ability to block a P & A's access to records was unbridled, because the statutory provision regarding access to records contained no qualifying language

*Disability Law Ctr., Inc. v. Riel*, 130 F. Supp. 2d 294, 299 (D. Mass. 2001). Emphasis added.

   *Riel* concerned a guardian who refused to give permission to the State P & A agency to investigate alleged abuse against her ward at a facility because she was satisfied that the matter "was handled in the best way by staff considering [ward]'s condition and behaviors.' The guardian has concluded that "the investigation of the incident was adequately conducted and that [ward]a's rights to be free from abuse and illegal restraint are not at risk.... Because [she] did not believe that further investigation was necessary and because [she] feel[s] that further investigation would be disturbing and harmful to [ward], [guardian] chose not to sign the Release." Id. at 296. The Commissioner in charge of the Ward argued that without the consent of the guardian, they could not provide the requested records to the State P&A agency. Id. at 298. The Commissioner argued that the guardian here did not fail or refuse to act, but instead proactively investigated the incident and decided in good faith not to pursue further action based on what she believed to be in her ward's best interests. "Essentially, the Commissioner urges the Court to read a subjective good faith component into the statute: that is, if the guardian refuses in good faith to act, the P & A is barred from access to the ward's records." Id. at 300.

   The Court held that, the "problem with the Commissioner's statutory interpretation is that the rights of the P & A are governed by federal law…Congress did not limit the words "failed or refused to act" with any modifier like "unreasonably," "in bad faith," or "in an abuse of trust." In light of the unambiguous mandate to the P & A to investigate incidents of abuse and pursue appropriate remedies, the Court concludes that the better interpretation of § 6042(a)(2)(I )(iii) is

---

allowing a P & A to access records in certain circumstances, despite a guardian's refusal to grant permission."

that the *P & A is entitled to obtain access to the records necessary for investigation so long as the other statutory prerequisites are met, regardless of the wishes of the guardian.*" Id. 300-01. Emphasis added.

DRT has met the criteria set forth in 45 C.F.R. § 1326.25(a)(3) to use records access authority to obtain John Doe's Orange Grove records because John Doe is a person with disabilities who has a conservator, Linda Norwood. DRT received multiple complaints that John Doe was being subjected to abuse and/or neglect by Orange Grove. These complaints are the key that unlock the door to DRT's access to John Doe's records. These are the "statutory prerequisites" that the *Riel* Court said are necessary.

DRT Investigator William Moore contacted Linda Norwood by phone on February 3, 2023, and offered her DRT's services, and attempted to explain the abuse and neglect allegations, and requested that she sign an ROI to obtain John Doe's Orange Grove records. Ms. Norwood refused all offers of DRT's assistance and refused to sign an ROI. The reasons for her refusal do not matter one iota. After her refusal, DRT attempted to obtain John Doe's records from Orange Grove to investigate the complaints of abuse and neglect concerning John Doe, but Orange Grove refused to provide DRT with copies of his records or to allow DRT to make copies. The same fact pattern happened in early 2024, while motions were pending in this current case, when DRT received new complaints regarding John Doe's care and when DRT reached out for Plaintiff Norwood's assistance through her attorneys, no response of any kind was given.

This is the exact fact pattern as *Riel* and that Court found that the P&A was entitled to the records.

In addition to DRT's access authority under the federal P & A statutes, DRT also has clear authority under Tennessee Law to access the requested records without a conservator's

10

consent. Tenn. Code Ann. § 33-3-106[5] grants DRT access to records without client or guardian's consent. "(a) If a federally mandated protection and advocacy agency… requests disclosure of information protected by § 33-3-103 and specifies the personally identifiable service recipient information sought and the federally mandated function for which it is required, the information may be disclosed to the agency without consent… The disclosures are subject to federal confidentiality laws... All public and private service providers shall cooperate with the agency in responding to requests, including, but not limited to, those made under the [P and A Acts].

Stated differently, Tennessee's statutory scheme for confidentiality of mental health records contains an explicit exception for DRT to access records without the consent of the conservator. It is a carve out designed especially for situations like the present case.

Norwood's request is not only unlikely to succeed on the merits under Federal and State law, but it also cannot possibly be successful and therefore fails the first prong of the analysis for a preliminary injunction. The second prong is the likelihood of suffering irreparable harm in the absence of preliminary relief and here Norwood also fails.

_____

[5] Tenn. Code Ann. § 33-3-106 (a) If the head of the federally mandated protection and advocacy agency for persons with mental illness, serious emotional disturbance, or developmental disability, or the designated representative of the agency head, requests disclosure of information protected by § 33-3-103 and specifies the personally identifiable service recipient information sought and the federally mandated function for which it is required, the information may be disclosed to the agency without consent. The disclosure of information shall be made solely for use in connection with the federally mandated function. The disclosures are subject to federal confidentiality laws, including the requirement that there be no further disclosure of the personally identifiable information by the agency without consent of the service recipient or conservator or of the parent's or legal guardian's consent in the case of a child. The service provider shall notify the service recipient, a child service recipient's parent or legal guardian, and the service recipient's conservator, if any, of the disclosure. All public and private service providers shall cooperate with the agency in responding to requests, including, but not limited to, those made under the Developmental Disabilities Assistance and Bill of Rights Act of 1975 (42 U.S.C. § 6000 et seq.); the Protection and Advocacy for Mentally Ill Individuals (PAMII) Act of 1986 (42 U.S.C. § 10801 et seq.); and the Protection and Advocacy for Individual Rights Act (29 U.S.C. § 794e).

The cause for this injury, Norwood states in her claim[6], is that John Doe's individual privacy rights would be violated if his personal records were released to DRT. However, "P & A systems, because of their 'special function.... to serve individuals with disabilities or mental illness," are "under an especially significant duty of confidentiality.' *Wis. Coalition for Advocacy v. Czaplewski*, 131 F. Supp. 2d 1039, 1052 (E.D. Wis. 2001) (noting that nursing home patients would suffer no privacy harm because "federal law requires that WCA, as the Protection & Advocacy system, keep such records confidential"). In reversing the district court's finding that the P & A was not entitled to records based upon privacy concerns, the Disability Rights Wisconsin court explained in detail this duty of confidentiality, stating first that "[s]specific provisions of the federal P & A statutes ... bar P & A agencies from disclosing information obtained from client records to unauthorized parties." *Disability Rights Wisconsin, Inc. v. State of Wisconsin Dep't of Pub. Instruction,* 463 F.3d 719, 728 (7th Cir. 2006) . The court highlighted that P & A systems "specialize in the protection of persons with disabilities and mental illness, and confidentiality is a key aspect of protection." Id.

The Sixth Circuit court analyzed *Disability Rights Wisconsin* and found, "[t]his Court too, finds the reasoning underlying these cases persuasive and likewise concludes that Disability Rights Ohio is subject to the same strictures of confidentiality as [facility]. Given the duty of confidentiality common to both organizations, [DRO]'s possession of the information seems no more troubling as a privacy matter than [facility's] possession. *Disability Rights Ohio v. Buckeye Ranch, Inc*., 375 F. Supp. 3d 873, 888–89 (S.D. Ohio 2019).

---

[6]SEE R. at Doc. 1-1, Pg. 13

DRT **must** maintain the same level of confidentiality as Orange Grove and therefore these privacy concerns are not enough to establish irreparable harm as the preliminary injunction analysis requires.

The final steps in the analysis can be combined in this case and are quite straightforward. The balance of the equities clearly tips in DRT's favor as it is unable to fulfill its Federal Mandate to investigate complaints of abuse and neglect against persons with disabilities unless the Court finds against Norwood, and Norwood simply cannot interfere with DRT's mandate. Additionally, Courts in the Sixth Circuit have found that, "It is in the public's interest to have agencies such as [defendant] to access the necessary records to ensure individuals with disabilities are not suffering from abuse or neglect." *Michigan Prot. & Advoc. Serv., Inc. v. Evans*, No. 09-12224, 2010 WL 3906259, at *5 (E.D. Mich. Sept. 30, 2010).

Another way to say this is that it is not in the public interest to reward a conservator who files a lawsuit to prohibit the agency mandated by Congress to investigate claims of abuse and neglect from investigating alleged abuse and neglect against her ward.

Based on the above case law and arguments, Disability Rights Tennessee respectfully requests this Court to not grant Plaintiff Norwood any relief on her claims and find that DRT is entitled to judgment as a matter of law.

## B. DISABILITY RIGHTS TENNESSEE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW REGARDING ITS CLAIMS AGAINST THE ORANGE GROVE CENTER

### 3. DRT's Request For Declaratory Relief Against Orange Grove Succeeds Because Orange Grove's Withholding Of John Doe's Records Is A Violation Of Federal And State Law

"Before the Court may proceed to consider plaintiffs' request for injunctive and declaratory relief, the facts must establish that an actual case and controversy exists between parties with adverse legal interests." *Golden v. Zwickler*, 394 U.S. 103, March 4, 1969. "Basically, the question is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Smith v. Univ. of Tenn.*, 300 F. Supp. 777, 780 (E.D. Tenn. 1969) quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826.

DRT had asked for declaratory and injunctive relief in its Crossclaim against Defendant Orange Grove. R. at Doc. 13, Pg. 108-109. Its claims for declaratory relief were for the Court to declare that Orange Grove has violated DRT's rights under the DD act by denying it copies of John Doe's records and interfering with DRT's duty to investigate allegations of abuse. There is no doubt that there is a substantially legally adverse position between DRT and Orange Grove concerning DRT's authority to receive copies, or make copies, of John Does records. The law stated in *Riel* previously noted in the argument against Plaintiff Norwood's claims are equally strong here. A P & A is entitled to obtain access to the records necessary for investigation so long as the other statutory prerequisites are met, regardless of the wishes of the guardian. Orange Grove has stated previously that it has complied and offered a visual inspection of John Doe's records. R. at Doc. 32, Pg. 268 and R. at Doc. 32-1, Pg. 282.

However, a visual inspection is not enough to be in compliance. 45 C.F.R. § 1326.25 states that "A P&A shall be permitted to inspect and copy information and records." The other major P & A statute, PAIMI states the same, "A P&A system shall be permitted to inspect and copy records. 42 C.F.R. § 51.41. In the Final Rule of Requirements Applicable to the Protection

and Advocacy of Individuals with Mental Illness, the Federal Department of Health and Human Services stated answered a "request that the regulations clarify that the system has the right to obtain and copy the actual records and not only to "inspect" records on site at the facility... The Department agrees that these regulations do authorize the P&A system to have access to the actual records and to make copies*; simply allowing a system to "view" or "inspect" records is not sufficient.*" Substance Abuse and Mental Health Services Administration; Requirements Applicable to Protection and Advocacy of Individuals with Mental Illness; Final Rule, 62 FR 53548-01. Emphasis added.

In 2015, The Department of Health and Human Services issued a final rule on the PADD regulations and stated that Section 1386.25(d) addresses the remaining provisions regarding sharing and copying of records, consistent with the corresponding PAIMI regulation, (42 C.F.R. 51.41). The Department clarified that "when records are kept or maintained electronically, they shall be provided electronically to the P&A," but otherwise left the regulation as it was. Developmental Disabilities Program, 80 FR 44796-01. If there had been any desire to interpret a P & A's access to actual copies of records differently between PADD and PAIMI, that would have been the time to do so. Since both statutes are meant to be read consistently, it makes sense that if visual inspection alone is not sufficient for PAIMI, then visual inspection alone is not sufficient for PADD--the statute applicable to this case.

More importantly, while Orange Grove did once offer for DRT to come and inspect the records visually, that offer was withdrawn. See R. at Doc13-1, Pg. 142-145  and Doc. 45, Pg. 385. DRT has still never seen any of John Doe's records, receiving copies or otherwise. This is why DRT is requesting this Court to declare that Orange Grove has violated DRT's rights under the DD act by denying it copies of John Doe's records and interfering with DRT's duty to

15

investigate allegations of abuse. This is also why DRT also requested preliminary and permanent injunctions enjoining Orange Grove from denying DRT copies of John Doe's records.

### 4. DRT's Request For Injunctive Relief Against Orange Grove Succeeds Because It Can Successfully Demonstrate The Four Factors Necessary For Relief

For a party to obtain a permanent injunction, they must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Knox Trailers, Inc. v. Maples*, No. 3:20-CV-137, 2023 WL 2570970, at *6 (E.D. Tenn. Feb. 14, 2023) (*citing Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010).

DRT can prove all these four factors as demonstrated below.

### A. DRT Has Suffered Irreparable Injury Or Harm

DRT meets this prong of the injunction test, because courts have concluded that "[t]here is no dispute that a protection and advocacy agency's inability to meet its federal statutory mandate to protect and advocate the rights of disabled people constitutes irreparable harm." *Buckeye Ranch*, at 883. "Further, there is no dispute that the only adequate relief would be to require the [facility] to provide [P & A system] with access to the relevant records." Id. See also *Prot. & Advoc. For Persons With Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 311 (D. Conn. 2003); *Iowa Prot. & Advocacy Services, Inc. v. Rasmussen*, 206 F.R.D. 630, 635 (S.D. Iowa 2001); *Iowa Prot. & Advoc. Servs., Inc. v. Gerard Treatment Programs*, L.L.C., 152 F. Supp. 2d 1150, 1173 (N.D. Iowa 2001); *Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358 (M.D.La.1999).

16

Orange Grove's refusal to provide access to all relevant records interferes with DRT's ability to conduct a thorough investigation. The denial of access to records "does, in a very real and readily identifiable way, pose a threat to the DRT's being able to discharge its obligations" and "no amount of damages will remedy that sustained harm". *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039, 1051 (E.D. Wis. 2001). This threat is irreparable because of the possibility for ongoing abuses that cannot be investigated and therefore cannot be stopped.

**B. Remedies Available At Law, Such As Monetary Damages, Are Inadequate To Compensate For That Injury**

Every court to examine the issue has held that a P&A suffers irreparable harm, and is thus entitled to preliminary and permanent injunctions, when it is denied access to persons and records that it needs to conduct a complete investigation. In *Wisconsin Coalition*, the court cited a variety of specific harms to its ability to conduct a timely investigation. *Id.* For example, loss of memory inevitably occurs with the passage of time and witnesses may become inaccessible because of relocation or death. Also, as a direct result of the defendant's refusal to provide access to records, potential claims may be lost. *Id.* at 1050-51. "Perhaps most importantly, the residents on whose behalf it must act bear the risk of injury or death." *Id*. at 1051. That court was persuaded that, the defendant's refusal to provide [the P&A] with records that it is entitled to review (indeed, charged to review as a part of its responsibilities) does, in a very real and readily identifiable way, pose a threat to the [P&A's] being able to discharge its obligation. *Id.*

Congress intended that Tennessee, like other states, have an "effective" P&A system, not simply a pro forma organization which has the theoretical power to investigate cases of possible abuse and neglect, but no effective way to carry out those investigations. See *Mississippi Prot. &*

*Advoc. Sys., Inc. v. Cotten,* 929 F.2d 1054, 1059 (5th Cir. 1991). If this Court denies DRT's request for an injunction, DRT **will** be further irreparably harmed in ways reaching far beyond this case, as its ability to carry out future investigations and ferret out abuse and neglect would be severely compromised. Without an injunction, DRT would remain unable to fulfill its mandate to protect and advocate for the rights of John Doe through investigating complaints of abuse and neglect. This irreparable harm cannot be addressed through monetary damages later, so injunctive relief is necessary.

**C. The Balance Of Equities Tips In Disability Rights Tennessee's Favor**.

The balance of equities tips in DRT's favor because DRT's access authority and ability to carry out its federally mandated duties is severely compromised absent injunctive relief from this Court, Orange Grove would not suffer any harm. "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 376, 172 L. Ed. 2d 249 (2008) (internal quotation marks and citation omitted).

If DRT's request for an injunction is granted, Orange Grove will merely be required to do what the law requires. See *Western Coalition*, 131 F. Supp. 2d at 1052; *Gerard Treatment Programs*, 152 F. Supp. 2d at 1174*; Stadler*, 128 F. Supp. 2d 358 at 368. The balance of the equities in this case plainly weighs in favor of the issuance of an injunction, which would restore DRT's mandated obligation to investigate abuse and neglect.

**D. The Public Interest Will Only Be Served If This Court Grants An Injunction Requiring Orange Grove To Provide DRT With The Requested Records.**

The public interest is served by having a functioning protection and advocacy organization that can effectively serve individuals with disabilities. The fulfillment of DRT's

mandate as the protection and advocacy agency is in the public interest, as evidenced by Congress's findings regarding the need for the P & A system. In determining the public interests that are relevant to injunction, this Court may consider Congress's statements about the public interest. See 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.4 (2d ed.1995) ("The public interest may be declared in the form of a statute."); see also, NACCO Materials Handling Group, Inc. v. Toyota Materials Handling USA, Inc., 246 F. App'x. 929, 944 (6th Cir. 2007), citing Wright. By passing the P & A statutes, Congress made an explicit finding that "[s]tate systems for monitoring compliance with respect to the rights of individuals with mental illness vary widely and are frequently inadequate." 42 U.S.C. § 10801. Congress created the P & A system, funded it, and granted it broad access authority because individuals with disabilities are "vulnerable to abuse, injury, and neglect." *Pennsylvania Prot. & Advocacy, Inc. v. Houstoun*, 228 F. 3d 423, 425 (3rd Cir. 2000). By the very passage of the P & A statutes, Congress has expressed that it is in the public interest's that states have an independent entity to investigate the treatment of its most vulnerable citizens, and investigation requires access to the records of those citizens.

Other courts have agreed that the public interest is served by granting P & A systems injunctive relief under similar circumstances. See, e.g., *Michigan Prot. & Advoc. Serv., Inc. v. Evans,* No. 09-12224, 2010 WL 3906259, at *5 (E.D. Mich. Sept. 30, 2010) ("It is in the public's interest to have agencies such as plaintiff able to access the necessary records to ensure individuals with disabilities are not suffering from abuse or neglect.") (issuing permanent injunction and awarding attorney's fees); *Advocacy Inc. v. Tarrant Cty. Hosp*. Dist., No. 4:01-CV-062-BE, 2001 WL 1297688, at *6 (N.D. Tex. Oct. 11, 2001) ("Nor is the public interest done a disservice by the timely investigation and resolution of concerns about the treatment of

the more vulnerable members of society."). Thus, congressional findings and purpose, as well as federal courts' interpretation of the P & A statutes, demonstrate that the issuance of an injunction requiring Orange Grove to give DRT the requested records would be in the public interest, indeed "Congress has expressed that the public interest is satisfied by allowing P & A systems, like DR[T], access to the records and individuals it seeks…"*Buckeye Ranch*, 375 F. Supp. at 897

## IV. CONCLUSION

For the foregoing reasons, DRT respectfully requests for this Court to grant DRT's Motion for Judgment on the Pleadings and asks that this Court deny Plaintiff Norwood's claims for declaratory and injunctive relief and grant DRT's requests for declaratory and injunctive relief, and any other such award such and further relief, at law or equity, to which DRT is justly entitled. To fail to do so would be to find that a state appointed conservator's wishes outweigh a federal mandate from Congress.

Respectfully submitted,                    DATE: June 24th, 2024

/s/ Jeremiah Jones
Jeremiah Jones, (BPR #040551)
Disability Rights Tennessee
9050 Executive Park Drive, Suite B-101
Knoxville, TN 37923 (865) 670-2944
jeremiahj@disabilityrightstn.org

/s/ Stacie Price
Stacie L. Price (BPR #030625)
Disability Rights Tennessee
2 International Plaza, Suite 825
Nashville, TN 37217
staciep@disabilityrightstn.org
(615) 298-1080

/s/ Jack Derryberry
Jack W. Derryberry, Jr. pro hac vice (BPR #003870)
Disability Rights Tennessee

20

2 International Plaza, Suite 825
Nashville, TN 37217
jackd@disabilityrightstn.org
(615) 298-1080

/s/ Sherry Wilds
Sherry A. Wilds (BPR #024756)
Disability Rights Tennessee
2 International Plaza, Suite 825
Nashville, TN 37217
sherryw@disabilityrightstn.org
(615) 298-1080

## <u>Certificate of Service</u>

I hereby certify that on 24th day of June 2024, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt. Parties may access this filing through the Court's

electronic filing system.


*/s/ Jeremiah Jones*