# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

| | | |
|---|---|---|
| LINDA J. NORWOOD, | ) | |
| Plaintiff, | ) ) ) | Case No. 1:23-cv-111 |
| and | ) ) | |
| THE ORANGE GROVE CENTER, INC. | ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | |
| vs. | ) ) | |
| DISABILITY RIGHTS TENNESSEE, | ) ) | |
| Defendant/Counter-Plaintiff. | ) ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS ON ALL CLAIMS

Plaintiffs, Linda J. Norwood ("Ms. Norwood") and The Orange Grove Center, Inc. ("Orange Grove") (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. Rule 12(c) and Local Rule 7.1, through counsel, submit their Response to Defendant Disability Rights Tennessee's ("DRT's") Motion for Judgment on the Pleadings on All Claims ("Motion"), and respectfully request that the Court deny DRT's Motion for the reasons stated herein.

## I.    SUMMARY OF ARGUMENT

The dispute between the parties is limited to the narrow issue of how broad DRT's authority is pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. §§ 15001-15115 (2000). Plaintiffs do not challenge the constitutionality of the DD Act; DRT's authority as Tennessee's Protection and Advocacy agency (hereinafter "P&A"); DRT's authority to investigate, pursuant to the DD Act, complaints of neglect or abuse against

individuals with intellectual developmental disabilities (IDD); nor DRT's authority, generally, to access a service provider's records pursuant to the DD Act to investigate neglect or abuse. Rather, Plaintiffs' claim is limited to whether DRT has acted within its statutory authority, taking into consideration the circumstances and the rights of the relevant parties involved.[1] DRT argues that Plaintiffs are in violation of federal and state law for even challenging DRT's authority, and that administrative regulations grant it expanded authority that is not subject to judicial review. Plaintiffs contend that, although DRT's investigative authority may be informed by administrative interpretation of the DD Act, courts, not agencies, should decide '*all* relevant questions of law' arising on review of agency action, and set aside any such action inconsistent with the law as they interpret it, pursuant to *Loper Bright Enters. v. Raimondo*, Nos. 22-451, 22-1219, 2024 U.S. LEXIS 2882, at \*33 (June 28, 2024) (emphasis in original).

Thus, DRT's request for judgment on the pleadings pursuant to Fed. R. Civ. P. Rule 12(c) should be denied as to all claims because material issues of fact exist regarding (1) whether DRT's unaccompanied and unannounced access to John Doe ("Mr. Doe") is "reasonable" pursuant to the DD Act; (2) whether DRT is authorized to access irrelevant and unnecessary records of Mr. Doe from Orange Grove; (3) whether DRT has the right to access records of other residents from Orange Grove; and (4) whether Orange Grove violated the DD Act when DRT refused its offer of access to Mr. Doe's records. Because material issues of fact exist as to each matter, DRT is unable to demonstrate that it is entitled to judgment as a matter of law, and its Motion should be denied.

---

[1] Plaintiffs filed a Joint Motion for Leave to File Amended Complaint and Stay Motion for Judgment on the Pleadings on All Claims on July 9, 2024. [Doc. No. 55.] This Court has permitted Plaintiffs the opportunity to file a proposed Amended Complaint by July 18, 2024 for the Court's consideration. [Doc. No. 56.]

## II.  FACTS

This case concerns the care and treatment of Mr. Doe, an adult male who is deaf, has IDD, and resides at Orange Grove. [Doc. No. 1-1, Page ID # 14-15.] Orange Grove is a Tennessee nonprofit corporation that serves adults and children with IDD, and includes residential facilities.[2] Mr. Doe's duly appointed conservator is Ms. Norwood, a Tennessee-licensed attorney. [*Id.,* Page ID # 14.] Ms. Norwood has served as Mr. Doe's conservator since she was appointed by the Chancery Court of Hamilton County, Tennessee on July 17, 2017. [*Id.*]

On approximately February 3, 2023, Ms. Norwood was contacted via telephone by an unnamed individual regarding an alleged investigation into Mr. Doe's care at Orange Grove. [Doc. No. 1-1, Page ID # 14.] Upon questioning by Ms. Norwood, the individual identified himself as an investigator with DRT, an organization unknown to Ms. Norwood at the time. The investigator requested that Ms. Norwood consent to the release of Mr. Doe's records from Orange Grove to DRT in furtherance of DRT's investigation. Ms. Norwood refused to consent at that time to a release of Mr. Doe's records, explaining that she believed that any investigation into Mr. Doe's care was being appropriately investigated by the Tennessee Department of Intellectual and Developmental Disabilities (DIDD), Orange Grove, and other entities. [Doc. No. 1-1, Page ID # 15.]

On February 17, 2023, Orange Grove received its first demand for records from DRT related to Mr. Doe. [Doc. No. 13-1, Page ID # 115.] It is important to observe that DRT's demand did not specify any details about an alleged complaint, nor did the demand state that DRT had determined that probable cause existed to believe that Mr. Doe was in serious or immediate jeopardy. *Id.* The demand further stated, arguably inaccurately, that DRT had made a good faith

---

[2] *See* https://www.orangegrovecenter.org/.

effort to reach Mr. Doe's conservator, but that she had failed to act on Mr. Doe's behalf. *Id.* DRT

requested the following records from Orange Grove:

> "[t]he most recent Independent Support Plan (ISP) and any
> Interdisciplinary Team Meeting (IDT) notes that have occurred or
> addendums since the ISP, including all assessments used for the
> purposes of the ISP, such as speech language (SLP), physical
> therapy (PT), occupational therapy (OT), and behavioral therapy
> (BA), etc.; all daily notes by direct support staff for 2022 and 2023;
> all incident reports for 2022 and 2023; and medical records for 2022
> and 2023, including nurse's notes, provider notes, hospital
> discharges, medication administration record sheets (MARS),
> mental health services, etc."

[Doc. No. 13-1, Page ID # 115.]

On February 23, 2023, DIDD sent Orange Grove a letter advising that DIDD had issued its

final investigative report and had determined that an allegation of abuse of Mr. Doe was

unsubstantiated. [Doc. No. 1-1, Page ID # 27.] DIDD considered the matter closed. *Id.* On March

3, 2023, Orange Grove's personnel responded to DRT that Orange Grove did not believe that it

was required to send DRT Mr. Doe's documents based upon the demand received, as stated, by

DRT. [Doc. No. 13-1, Page ID # 118.] Further, Orange Grove informed DRT that the DIDD

provided funding for Mr. Doe's care and that he had a court-appointed conservator. *Id.* Orange

Grove encouraged DRT to reach out to the DIDD, the conservator, and/or the Hamilton County

Chancery Court, or in the alternative DRT could reach out to Orange Grove's Chief Executive

Officer, Tera Roberts ("Ms. Roberts") directly. [*Id.*]

On March 6, 2023, Ms. Norwood received a letter from DRT, alleging it received a report

of abuse and/or neglect of Mr. Doe, requested Ms. Norwood sign a release allowing DRT to obtain

"all" of Mr. Doe's Orange Grove records as well as give any and all employees of DRT and Orange

Grove permission to talk to each other about the content of Mr. Doe's records—without the

mention of any time or place limitation—and asserted that it could "get [Mr. Doe's] records

without [Ms. Norwood's] assistance." [Doc. No. 1-1, Page ID ## 16, 31.] On March 8, 2023, while Ms. Norwood was still evaluating her response to DRT's request for access to Mr. Doe's Orange Grove's records, two investigators from DRT visited Mr. Doe at his quarantined home at Orange Grove unannounced, without Ms. Norwood's knowledge and/or consent, and presumably attempted to interview Mr. Doe. [Doc. No. 13-1, Page ID ## 130, 136.] On March 10, 2023, Ms. Norwood copied Orange Grove on a letter to DRT refusing consent to the release of Mr. Doe's records as requested by DRT because the alleged complaint had been investigated and was found to be unsubstantiated. [Doc. No. 24-1, Page ID # 187.] Nonetheless, on March 15, 2023, DRT sent a second records demand to Orange Grove. [Doc. No. 13-1, Page ID # 127.] Similar to the first request, DRT provided no specifics regarding the complaint nor informed Orange Grove that DRT had determined that there was probable cause to believe that Mr. Doe was being or had been neglected or abused, even after visiting Mr. Doe. *Id.* On March 17, 2023, Orange Grove's personnel responded consistently with Orange Grove's March 3, 2023 reply. [*Id.*, Page ID # 127.]

On March 22, 2023, DRT sent a third demand to Orange Grove, this time through DRT's legal counsel, explaining that DRT's records access authority permitted DRT access to records independent of any other agency's determination or a conservator's consent. [*Id.*, Page ID # 130-32.] More importantly, this letter was the first time DRT stated that it had determined that DRT had probable cause to believe that Mr. Doe was or had been subjected to neglect or abuse at Orange Grove, and the first time that DRT provided any details regarding the scope of any alleged complaints. [Doc. No. 13-1, Page ID # 130-32.]

Ms. Roberts replied to DRT's request directly and immediately that same day, providing information about Mr. Doe and his situation, particularly that he did not use American Sign Lanaguage (ASL) to communicate, but had a unique communication system. [*Id.*, Page ID # 136.]

In her email response, Ms. Roberts welcomed additional suggestions and input from DRT on how best to care for Mr. Doe and his needs, and offered access to a visual inspection of Mr. Doe's records at Orange Grove. [*Id.*] Ms. Roberts also invited DRT to attend one of Mr. Doe's team meetings to discuss his care and needs:

> If DRT would like to be a part of a team meeting you would be welcome to participate. With his and his conservator's consent, your staff could talk to him and his supports and hear first hand where we are with our planning and attempts to support his needs. You could also provide any suggestions or input.
>
> I further invite you to schedule a time with me and I will sit with you and [Mr. Doe's] records so you can read them. If you find my offers for a collective team meeting and/or visual review of his record to satisfy your request, please provide a few date/time options and we will schedule the meeting.

*Id.* In a rather callous response to Orange's Grove invitation, DRT responded by email dated March 22, 2023, *affirmatively refusing* Ms. Roberts' offer to inspect the records or meet with Mr. Doe, his conservator, and his care team at Orange Grove. Instead, DRT demanded that Mr. Doe's records, as requested by DRT, be sent to DRT by March 24, 2023. [Doc. No. 13-1, Page ID # 135.] Orange Grove did not send the records.

Thereafter, on March 27, 2023, DRT informed Orange Grove that it would be sending an investigator to copy on the morning of March 29, 2023 all the documents requested, or in the alternative, Orange Grove could provide DRT with a copy. [Doc. No. 13-1, Page ID # 140.] Ms. Roberts promptly informed DRT that she was unavailable on March 29, 2023, and that the records would not be "produced," meaning copied and provided, to DRT. [*Id.*, Page ID # 145.] Contrary to DRT's assumption [Doc. No. 13, Page ID # 54], Orange Grove never rescinded its consent to allow DRT access to Mr. Doe's records at Orange Grove, nor access to Mr. Doe or the staff at Orange Grove to assist in DRT's investigation. Orange Grove did not receive a request from DRT

to reschedule the appointment or to meet with Orange Grove personnel at another time. Instead, on April 21, 2023, DRT sent a response to Ms. Roberts' March 27, 2023 letter attaching a draft complaint naming Ms. Roberts and Orange Grove as defendants in a lawsuit for failure to send copies of Mr. Doe's records to DRT. [Doc. No. 1-1, Page ID # 37-56.] DRT demanded that Mr. Doe's records be produced by April 27, 2023. *Id.* Ms. Norwood was not named as a party. *Id.*

On April 27, 2023, Ms. Norwood filed a Verified Complaint and Request for Restraining Order and Temporary Injunction ("Complaint") against both DRT and Orange Grove in the Hamilton County Chancery Court, seeking a determination of the relative rights of the parties in a declaratory judgment action. [Doc. No. 1-1, Page ID # 17.] On May 9, 2023, DRT filed a removal Notice pursuant to 28 U.S.C. § 1441(a). On May 18, 2023, DRT filed its crossclaim against Orange Grove on the basis that Orange Grove refused to produce Mr. Doe's records and seeking an injunctive order from this Court requiring Orange Grove to produce such records, as well as ordering Orange Grove to allow DRT access to records of other unidentified individuals residing at Orange Grove. [Doc. No. 13-0.] On May 24, 2023, Orange Grove filed a Motion to Remand. [Doc. No. 19.] In response, DRT filed a Motion to Realign the Parties, arguing that Ms. Norwood and Orange Grove had the same interests. [Doc. No. 23.] On March 18, 2024, DRT filed a supplement to its original crossclaim against Orange Grove, adding additional factual allegations concerning another alleged complaint. [Doc. No. 44.] On March 19, 2024, the Court denied the Motion to Remand and granted the Motion to Realign the Parties. [Doc. No. 45.] Orange Grove filed its Answer to DRT's crossclaim, now considered a counterclaim with the realignment, on April 9, 2024. [Doc. No. 48.] DRT now seeks a judgment on the pleadings on all claims asserted. [Doc. Nos. 53-54.]

III.    LAW & ARGUMENT

**A.    Motion for Judgment on the Pleadings Standard**

DRT brings its Motion pursuant to Fed. R. Civ. P. 12(c), which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The pleadings are "closed" when the defendant has filed an answer. *See Dunn-Mason v. JP Morgan Chase Bank Nat'l Assoc.*, No. 11-cv-13419, 2013 U.S. Dist. LEXIS 113693 *, *2 (E.D. Mich. Aug. 13, 2013). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. A motion brought pursuant to Rule 12(c) is appropriately granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1107-08 (6th Cir. 2012) (internal citations omitted); *see also Yajing Liu v. Rock Ridge Ins. Co.*, 662 F. Supp. 3d 793, 796 (E.D. Tenn. 2023).

A district court reviews a Rule 12(c) motion under the same standard as a motion brought under Fed. R. Civ. P. Rule 12(b)(6), construing the complaint in the light most favorable to the plaintiff, accepting all of the complaint's factual allegations as true, and determining whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle plaintiff to relief. *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). "[T]he purpose of a motion under Rule 12(c) is to test the sufficiency of the complaint, without requiring the parties to engage in expensive and time-consuming discovery and *without reaching the merits of the case*." *Hira v. N.Y. Life Ins. Co.*, No. 3:12-cv-373, 2014 U.S. Dist. LEXIS 70861 *, *17-21 (E.D. Tenn. May 23, 2014) (quoting *Marsilio v. Vigluicci*, 924 F. Supp. 2d 837, 847 (N.D. Ohio 2013)) (emphasis added). To survive a motion for judgment on the pleadings, a plaintiff's "factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and

the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoted by *Stoutamire v. Dep't of Rehab. & Corr.*, No. 2:10-cv-00645, 2010 U.S. Dist. LEXIS 139648, at *4 (S.D. Ohio Jan. 13, 2010)).

Additionally, Ms. Norwood and DRT filed competing requests for injunctive relief—that Orange Grove either be enjoined from producing, or conversely, enjoined from denying, access to Mr. Doe's records as sought by DRT. [Doc. No. 1-1; Doc. No. 13.] DRT analyzes the merits of each request, in its memorandum in support, under the standard four-part test for a preliminary injunction. [Doc. No. 54, Page ID # 441-47; 450-53.] For purposes of DRT's Motion, however, the Court is limited to reviewing the sufficiency of the pleadings to determine if a cognizable claim has been stated, not the full merits of the claim. *Hira*, 2014 U.S. Dist. LEXIS at *17-21 (E.D. Tenn. May 23, 2014). Furthermore, Federal Rule of Civil Procedure Rule 65 requires that a hearing on a motion for a preliminary injunction occur. Fed. R. Civ. P. 65. Consequently, granting either party injunctive relief at this juncture, without the benefit of a hearing, would be inappropriate. *See Univ. of Tex. v. Camenisch*, 415 U.S. 390, 395 (1981).

## B.    A P&A's Authority Pursuant to the DD Act

An agency of the federal government is only empowered to act within the statutory guidelines establishing its power; "any action exceeding its statutory authority is void." *Tenaska Wash. Partners, L.P. v. United States*, 34 Fed. Cl. 434, 440 (1995) (quoting *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990)). It is well-established that a P&A has broad and independent authority, pursuant to the DD Act, to conduct investigations of suspected abuse or neglect of individuals with IDD. 42 U.S.C. §§ 15041 *et seq.*; *Disability Law Ctr. of Alaska, Inc. v. Anchorage Sch. Dist.*, 581 F.3d 936, 938-39 (9th Cir. 2009); *Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229,

241-42 (2d Cir. 2006); *see also Disability Rights Tex. v. Hollis*, 103 F.4th 1058, 2024 U.S. App. LEXIS 13654, *9 (5th Cir. 2024), and *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 497 (11th Cir. 1996). Such broad authority, however, comes with guardrails, and a P&A must act within those guardrails to protect the best interests of the individual(s). Those guardrails are explicit in the DD Act, and in various courts' interpretations of the DD Act, as illustrated below.

    1.   <u>Purpose & Prerequisites of the DD Act</u>

In enacting the DD Act and establishing "watchdogs" for historically vulnerable individuals, Congress intended that a person with IDD would be treated individually and that "any assistance to such individuals should be provided in an *individualized manner*, consistent with the unique strengths, resources, priorities, concerns abilities, and capabilities of such individuals." 42 U.S.C. § 15001(c)(2) (emphasis added). Congress also recognized that "individuals with developmental disabilities and their families are the primary decisionmakers regarding the services and supports such individuals and their families receive, ... and *play decisionmaking roles* in policies and programs that affect the lives of such individuals and their families[.]" 42 U.S.C. § 15001(c)(3) (emphasis added). Congress sought to implement a system that created greater oversight, protections and advocacy for individuals with disabilities, while also encouraging the individual's "self-determination, independence, productivity, and integration and inclusion in all facets of community life[.]" 42 U.S.C. § 15001(b)(1). In balancing these interests, Congress established prerequisites that must be satisfied, and that constrain, a P&A's investigative authority and conduct.

The primary sections of the DD Act that are at issue in this matter are 42 U.S.C. § 15043(a)(2)(H), (I), and (J), which state:

(a) System required. In order for a State to receive an allotment under subtitle B or this subtitle [42 USCS §§ 15021 *et seq.* or 15041 *et seq.*]—

(2) such system shall—

(H) have access *at reasonable times* to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual, in order to carry out the purpose of this subtitle [42 USCS §§ 15041 *et seq.*];

(I) have access to all records of—

(iii) any individual with a developmental disability, in a situation in which—

(I) the individual has a legal guardian, conservator, or other legal representative;

(II) a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect;

(III) such representative has been contacted by such system, upon receipt of the name and address of such representative;

(IV) such system *has offered assistance to such representative to resolve the situation*; and

(V) such representative has *failed or refused to act* on behalf of the individual;

(J)

(i) have access to the records of individuals described in subparagraphs (B) and (I), *and other records that are relevant to conducting an investigation*, under the circumstances described in those subparagraphs, not later than 3 business days after the system makes a written request for the records involved[.]

42 U.S.C.S. § 15043 (LexisNexis, Lexis Advance through Public Law 118-66, approved July 2, 2024, with a gap of Public Law 118-63) (emphasis added).

2.    <u>Material Issues of Fact Exist as to whether DRT Satisfied the DD Act or Exceeded its Statutory Authority</u>

DRT asserts that it has the right to investigate alleged neglect or abuse of Mr. Doe at Orange Grove, and more importantly, to access Mr. Doe and his records, with virtually no limitations on its authority. DRT also asserts, in its counterclaim against Orange Grove, that it has rights to other records of unidentified individuals at Orange Grove beyond its investigation related to Mr. Doe (this claim is addressed in subsection E below). Plaintiffs contend that, at a minimum, material issues of fact exist as to whether, as a matter of law, DRT has met the prerequisites of the DD Act, or if it has stepped beyond the bounds of the authority granted pursuant to the DD Act.

*a.    Reasonableness of DRT's Access to Mr. Doe*

The DD Act permits a P&A "access *at reasonable times* to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual[.]" 42 U.S.C. § 15043(a)(2)(H). There is no explicit requirement in the DD Act that a P&A request or acquire consent from a legal representative before it gains "access" to an individual. *See Conn. Office of Prot. & Advocacy for Persons with Disabilities,* 464 F.3d at 243 (2nd Cir. 2006). There is also no explicit requirement that access be unannounced or unscheduled. *Equip for Equal., Inc. v. Ingalls Mem. Hosp.,* 292 F. Supp. 2d 1086, 1099 (N.D. Ill. 2003). The DD Act only requires that such access be at a reasonable time in a location where services, supports, and other assistance are provided to the individual. *Id.*

Other federal courts reviewing the issue of access to individuals under the DD Act have found, based on the facts of those cases, that certain parameters were necessary when balancing the interests of the parties. *See Equip for Equal., Inc.,* 292 F Supp.2d at 1100 ("It is appropriate to

require more strict requirements for access to individual patients than to the facilities themselves."); *Miss. Prot. & Advocacy Sys., Inc. v. Cotten*, 929 F.2d 1054, 1057 (5th Cir. 1991) (affirming time and place restrictions on access as a means to minimize interference with programs); *Penn. Prot. & Advocacy, Inc. v. Royer-Greaves Sch. for Blind*, No. 98-3995, 1999 U.S. Dist. LEXIS 4609, *25-26 (E.D. Penn. Mar. 24, 1999) (advance notice for access to patients was reasonable); *Mich. Prot. & Advocacy Service, Inc. v. Miller*, 849 F. Supp. 1202, 1204, 1209 (W.D. Mich. 1994) (referring determination of parameters of reasonable access to facilities to two special masters); and *Robbins v. Budke*, 739 F. Supp. 1479, 1487 (D.N.M. 1990) (finding that twenty-four notice to speak with a patient is reasonable).

Ms. Norwood seeks similar judicial review based on the particular circumstances of this case and Mr. Doe's unique communication abilities. On March 8, 2023, at least two male DRT investigators and possibly more came to Mr. Doe's home at Orange Grove—unannounced, unscheduled, and seeking access to him—and subsequently entered his residence. At the time, Mr. Doe was in a quarantined residential home with other residents due to the threat posed by COVID-19 to vulnerable individuals. [Doc. No. 13-1, Page ID # 136.] Unfortunately, DRT has not provided this Court with an account of what occurred during its visit with Mr. Doe. Nonetheless, with DRT's investigation ongoing, there is every reason for Ms. Norwood to believe that DRT may seek access to Mr. Doe again in order to encourage him to engage in potentially emotionally-taxing *"legal, administrative, [or] other… [unknown] remedies."* 42 U.S.C. § 15043(a)(2)(A)(i) (emphasis added). For this reason, Ms. Norwood seeks judicial review of whether DRT's access to Mr. Doe was being conducted at a reasonable time and within any Court-

determined guardrails.[3] DRT recognizes that the DD Act, in its grant of access to an individual, requires that access be sought at a reasonable time and place. [Doc. No. 54, Page ID # 440.] DRT does not address, however, whether its actions in how and when it approached Mr. Doe were reasonable, although the reasonableness of DRT's conduct is the main concern of Ms. Norwood's Complaint.

       *b.*    *DRT's Access to Mr. Doe's Records*

In order to access Mr. Doe's records, DRT is required to show that it has complied with the prerequisites of the DD Act. In this instance, DRT must show the following: (1) Mr. Doe has a conservator; (2) DRT received complaints about Mr. Doe's care at Orange Grove, or it has probable cause to believe he has been abused or neglected; (3) DRT contacted Ms. Norwood; (4) DRT has offered assistance to Ms. Norwood to resolve the situation; and (5) Ms. Norwood has failed or refused to act on behalf of the individual. See 42 U.S.C. § 15043(a)(2)(I). Plaintiffs admit, for purposes of this Motion, that DRT has satisfied the first three requirements; they challenge, however, that DRT either offered assistance to Ms. Norwood to resolve the situation, or that Ms. Norwood failed or refused to act on behalf of Mr. Doe. Moreover, even if DRT has shown that it has satisfied all five requirements, DRT's access to Mr. Doe's records is limited by subsection J of the DD Act, which only allows for records that "are relevant to conducting an investigation." 42 U.S.C. § 15043(a)(2)(J).

Orange Grove denied DRT's first two requests for Mr. Doe's records because DRT's requests did not satisfy the DD Act. The requests did not state that DRT had received a complaint concerning Mr. Doe's care or treatment, nor did they inform Orange Grove that DRT believed it

---

[3] If permitted to file one, Plaintiffs' Amended Complaint will state allegations specific to DRT's access to Mr. Doe on March 8, 2023, or any other time that may have occurred.

had probable cause to believe that Mr. Doe was in serious jeopardy. Moreover, while DRT had called Ms. Norwood and requested that she consent to disclosure of Mr. Doe's records, it did not offer Ms. Norwood any assistance in resolving a specific situation or complaint. In fact, Ms. Norwood was aware that DIDD was investigating the matter and did not see, at that time, that DRT could offer her any assistance in resolving an unsubstantiated allegation of abuse. Lastly, as will be addressed in Section D below, neither Orange Grove nor Ms. Norwood considered Ms. Norwood's lack of consent to the unauthorized and expansive records request of DRT to be a failure or refusal to act on Mr. Doe's behalf.

It was not until Ms. Roberts received correspondence from DRT dated March 22, 2023, that DRT arguably satisfied the first three requirements of the DD Act. The very day that Ms. Roberts received this request from DRT, she offered DRT access to certain records of Mr. Doe and much more. As detailed herein, DRT rejected Orange Grove's offer of access and assistance in its investigation. Consequently, DRT, not Orange Grove, impeded the federal mandate to investigate alleged abuse, and further failed the DD Act's overarching directive that DRT "pursue legal, administrative, and *other appropriate remedies or approaches* to ensure the protection of, and advocacy for, the rights of such individuals. 42 U.S.C. § 15043(2)(a)(i) (emphasis added).

## C.   Plaintiffs' Request for Judicial Review of DRT's Authority and Conduct is Permitted and Appropriate

In her Complaint, Ms. Norwood stated a declaratory judgment action seeking judicial review regarding the relative rights of the parties, as detailed above.[4] [Doc. No. 1-1.] DRT

---

[4] Since the filing of Ms. Norwood's Complaint, DRT has removed this matter to this Court; achieved realignment of the parties; filed a counterclaim against Orange Grove; and supplemented that counterclaim. During the parties' Rule 26(f) planning meeting, Plaintiffs advised that they intended to seek leave to file an Amended Complaint in light of the removal, realignment of the parties, and DRT's additional claims. If permitted to amend their complaint, Plaintiffs will cure deficiencies in the Complaint, state additional factual allegations concerning the relief requested, and potentially add one or more causes of action.

contends in its Motion that Ms. Norwood's requested relief *itself* violates federal and state law because it impedes DRT's investigation and because the relief she requests does not exist. [Doc. No. 54, Page ID ## 439, 441.] DRT generally cites the DD Act as authority for its argument, but provides no specific provision or any case authority in support of this legal conclusion.

Various federal district and circuit courts have determined that judicial review of a P&A's determination of probable cause and the scope of its investigative conduct may be warranted, and that crafting equitable relief is within the court's purview. Ms. Norwood has already cited above several federal cases providing judicial review and equitable relief related to reasonable access to individuals. More generally, in *Disability Rights Tex.*, 103 F.4th at *9 (5th Cir. 2024), the dispute between the parties hinged precisely on a determination of how broad the grant of authority to a P&A is under the DD Act related to access to records. Likewise, in *Disability Law Ctr. of Alaska, Inc., supra*, the circuit court reviewed whether general complaints about school conditions created probable cause that every student has suffered abuse. *Id.*, 581 F.3d at 938. In *Conn. Office of Prot. & Advocacy for Persons with Disabilities,* 464 F.3d at 243 (2nd Cir. 2006), the circuit court reviewed a P&A's authority to review an individual's records in comparison to their access to individuals. Additionally, in *Disability Rights Ohio v. Buckeye Ranch, Inc.*, 375 F.Supp.3d 873, 891 (S.D. Ohio 2019), the district court assessed whether there was sufficient evidence to support a P&A's probable cause determination of neglect and abuse. Lastly, even the case of *Disability Law Ctr. v. Riel* cited by DRT in its memorandum, concerns judicial review of whether the DD Act allows a P&A to obtain an

individual's records over the objection of the legal representative of the individual. *Disability Law Ctr. v. Riel*, 130 F. Supp. 2d 294 (D. Mass. 2001).

Thus, there is ample case authority to support the legal conclusion that it is permissible for Plaintiffs to seek judicial review of DRT's determination of probable cause, whether DRT has met the prerequisites of the DD Act, the reasonableness of DRT's conduct in interviewing Mr. Doe without a request to and/or notice to his conservator or Orange Grove, and whether DRT's expansive request for Mr. Doe's records—not to mention the records of all Orange Grove clients—are necessary for DRT to appropriately conduct its investigation. DRT has not shown a willingness to consider input from Mr. Doe's conservator, care facility, care providers, other monitoring agencies, or even the Court that administers Mr. Doe's conservatorship. DRT's blind insistence on being provided with copies of an expansive set of records from Orange Grove is less about Mr. Doe's well-being and his needs, and more about DRT's desire to bully Ms. Norwood and Orange Grove into submission. A determination of the parties' rights, as well as the opportunity for the Court to craft equitable relief that protects Mr. Doe, is warranted.

**D.  The Court Should Exercise its Independent Judgment in Deciding Whether DRT has Acted Within its Statutory Authority**

DRT claims that it derives its broad authority, in addition to the DD Act, from administrative regulations promulgated by the Department of Health and Human Services (DHHS). [Doc. No. 54, Page ID # 441.] These regulations, published in the Code of Federal Regulations at 45 C.F.R. §§ 1386.25-1386.27, expand a P&A's authority to access an individual, access to records, and even the definition of what constitutes a record.

DHHS' interpretation of the DD Act through its regulations, while informative, is not dispositive of DRT's rights. This is necessarily so after the United States Supreme Court's

ruling last month in *Loper Bright Enters. v. Raimondo*, Nos. 22-451, 22-1219, 2024 U.S. LEXIS 2882 * (June 28, 2024). In *Loper*, the Supreme Court held that the Administrative Procedure Act (APA) requires courts to exercise their independent judgment in deciding whether an agency has acted within its statutory authority, and further held, in overturning *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837 (1984), that courts must not defer to an agency's interpretation of the law "even if some judges might (or might not) consider the statute ambiguous," because "[i]n the business of statutory interpretation, if it is not the best, it is not permissible," and the best interpretation is the "'reading the court would have reached' if no were agency involved." *Loper Bright Enters.*, 2024 U.S. LEXIS, at *45 (June 28, 2024). Courts, not agencies, should decide "*all* relevant questions of law" arising on review of agency action, and set aside any such action inconsistent with the law as they interpret it. *Id.* at 33. Furthermore, the Supreme Court noted that the APA prescribes no deferential standard for courts to employ in answering those legal questions. *Id.*

In this case, DRT relies almost entirely upon DHHS's interpretation of the DD Act to justify its conduct in interviewing Mr. Doe without a request or notice to his conservator or Orange Grove, its access to Mr. Doe's records, the expansiveness of its requests for records that are not limited in scope or time to the alleged complaints of neglect and/or abuse at Orange Grove, for copies of these records rather than visual inspection, and for the permanent injunctive relief sought against Orange Grove.

DRT relies upon 45 C.F.R. § 1326.27(b) for the proposition that it has a right to "reasonable unaccompanied access to individuals with developmental disabilities at all times necessary to conduct a full investigation of an incident of abuse or neglect." Interestingly, subsection 27(b)(1) provides that "[s]uch access shall be afforded *upon request*, by the P&A system when: (i) [a]n

incident is reported or a complaint is made to the P&A system; (ii) the P&A system determines that there is probable cause to believe that an incident has or may have occurred, or (iii) the P&A system determines that there is or may be imminent danger of serious abuse or neglect of an individual with a development disability." 45 C.F.R. § 1326.27(b). DRT never requested, from Orange Grove, access to Mr. Doe on the basis of a complaint or probable cause. DRT visited Mr. Doe unannounced and unaccompanied on March 8, 2023, two weeks before it notified Orange Grove on March 22, 2023, that it had complaints or probable cause to believe that an incident of neglect or abuse had occurred. Apparently, DRT believes that it can also create its own rules. This is exactly why Ms. Norwood requested judicial review of DRT's authority.

DRT attempts to reframe the present case as simply an issue of guardian consent, relying upon 45 C.F.R §§ 1326.25(a)(3) for its contention that Ms. Norwood has failed or refused to act on Mr. Doe's behalf because she refused to consent to a release of Mr. Doe's information when requested by DRT. [Doc. No. 54, Page ID # 441-42.] 45 C.F.R §§ 1326.25(a)(3)(iii) expands the DD Act by permitting access to records where the conservator "has failed or refused *to provide consent on behalf of the individual*." (Emphasis added). DHHS' expansion of the DD Act to equate withholding consent with failure or refusal to act is not based on congressional intent or legislative history. Only in one instance does the word "consent" appear in Section 15043 of the DD Act, and that provision allows a P&A to obtain access to records without consent from another party *only* in the instance where the P&A determines there is probable cause to believe that the health or safety of the individual is in serious and immediate jeopardy, or in any case of death of an individual with a developmental disability. 42 U.S.C. § 15043(a)(2)(J)(ii). Neither of those circumstances is applicable to this case.

In support of its extension of authority, DRT directs the Court to *Disability Law Ctr. v. Riel*, 130 F. Supp. 2d 294 (D. Mass. 2001), wherein the district court concluded that "the better interpretation of [§15043](a)(2)(I)(iii) is that the P&A is entitled to obtain access to the records necessary for investigation so long as the other statutory prerequisites are met, regardless of the wishes of the guardian." *Riel*, 130 F. Supp. 2d at 301. DRT argues that the present case and *Riel* are analogous, and that this Court should adopt the reasoning of *Riel* that a legal guardian cannot block a P&A's access to records. Plaintiffs, on the other hand, argue that the Court should use its own judgment in reviewing whether DRT's actions are consistent with the DD Act, and set aside any such action inconsistent with the law as this Court interprets it.

*Riel* is not binding upon this Court, has never been cited with approval by any court within the Sixth Circuit, and no federal appellate circuit court has ever addressed the specific question presented in *Riel* regarding whether the DD Act—not interpretive administrative regulations—authorizes a P&A to obtain records over the objection of the individual's legal representative. *Cf. Conn. Office of Prot. & Advocacy for Persons with Disabilities, supra*, at 243 (distinguishing between the DD Act's records access provisions and access to individuals provision, and declining to read a parental-consent provision into the access to individuals statutory section as is provided in the records access provision).

Nevertheless, for purposes of this motion, the Court need not go as far as the analysis of statutory interpretation in *Riel*, but merely look to whether DRT met the other statutory prerequisites. For the reasons explained above, DRT has not met the other statutory prerequisites—it did not offer to assist Ms. Norwood with the specific situation related to the complaint DRT received, and Ms. Norwood has not refused or failed to act. In fact, Ms. Norwood took an affirmative action on behalf of Mr. Doe by filing the present lawsuit and seeking judicial

review of DRT's actions. Moreover, DRT did not provide Orange Grove with the information related to complaints or probable cause until March 22, 2023, and when it did, Ms. Roberts immediately responded to DRT with a compromise on how best to meet all the parties' respective needs and concerns consistent with Congress' intent in enacting the DD Act.

**E.      DRT is Not Entitled to Judgment as a Matter of Law Because DRT Refused Orange Grove's Offer of Access**

DRT's counterclaim that Orange Grove refused DRT access to Mr. Doe's records and, therefore, has violated federal law is meritless. Orange Grove denies that it refused DRT access to Mr. Doe's records in violation of the DD Act. [Doc. No. 48.] Orange Grove has sought to protect the competing interests of its resident, its resident's conservator, DRT, and its own policies, in assisting DRT with its investigation. DRT, however, has frustrated the process by refusing to act reasonably and cooperatively with Orange Grove during DRT's investigation, [Doc No. 13-1, Page ID # 130-36.], and by seeking records that are not necessary to its investigation.

District courts in the Sixth Circuit recognize a P&A's authority to access records. However, those same courts have indicated that there are limits to that authority. Again, a P&A must meet the prerequisites of the DD Act before it may access an individual's records.

DRT's initial requests for records to Orange Grove were not in compliance with the DD Act. These requests did not provide a single detail about any complaint received about Mr. Doe, did not indicate that there was probable cause to believe that Mr. Doe was being or had been subjected to neglect or abuse, or that Mr. Doe was in any serious or immediate danger. [Doc. No. 13-1.] In response, Orange Grove advised DRT to address the matter with Mr. Doe's conservator, the Hamilton County Chancery Court, or the DIDD. [Doc. No. 13-1].

Not until March 22, 2023, did DRT advise Orange Grove that it had determined that it had probable cause to believe that Mr. Doe was being or had been subjected to neglect and abuse at Orange Grove. [Doc. No. 13-1, PageID #130.] In that correspondence, DRT advised that two DRT investigators had already unilaterally met with Mr. Doe—without notice to DRT or Ms. Norwood—and had also received all the investigative records from the DIDD's investigation of the alleged incidents. *Id.*

Ms. Roberts responded that same day, inviting DRT to arrange a meeting with Orange Grove to meet with Mr. Doe, his conservator, his care team, and visually inspect his records that were relevant to his ongoing care needs at Orange Grove. [Doc. No. 13-1, Page ID # 135.] DRT acknowledges that Orange Grove responded in this manner. [Doc. No. 54, Page ID # 449.] What DRT fails to acknowledge, however, is that in response to Ms. Roberts, DRT rejected Orange Grove's assistance to help DRT investigate the complaints and even provide input and suggestions on Mr. Doe's care and treatment. [Doc. No. 13-1, Page ID # 130.]

Orange Grove's offer, contrary to what DRT alleges in its counterclaim, was never rescinded. Instead of accepting Ms. Roberts' offer, DRT demanded copies of the records be provided to it. [Doc. No. 13-1, Page ID # 135.] Subsequently, DRT demanded that Orange Grove allow DRT to copy the records with less than 48 hours' notice. [Doc. No. 13-1, Page ID # 140.] Ms. Roberts advised that she was unavailable to meet on the date unilaterally selected by DRT. [Doc. No. 13-1, Page ID # 145.] Based upon this communication, and nothing more, DRT states that it *assumed* that Ms. Roberts reneged on her offer of even allowing DRT to visually inspect John Doe's records. [Doc. No. 13, Page ID # 106-07.] Thereafter, DRT sent Ms. Roberts a copy of a lawsuit naming Orange Grove. [Doc. No. 1-1, Page ID #37-56.] Ms. Norwood's declaratory judgment and injunctive relief action seeking the

judicial review of the Court that governs Mr. Doe's conservatorship, followed on the same day that DRT demanded Orange Grove produce Mr. Doe's records.

The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Yajing Liu*, 662 F. Supp. 3d at 796 (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). DRT has presented no evidence that Orange Grove refused to provide access to necessary records that would enable DRT to conduct its investigation. Instead, DRT makes an unfounded assumption that Orange Grove refused to cooperate because Ms. Roberts immediately notified DRT that she was unavailable at a date and time set unilaterally by DRT. This assumption should not be the basis for a ruling, as a matter of law, that Orange Grove violated the DD Act.

Moreover, DRT is not entitled to all of the records that it has requested pursuant to the DD Act. In the DD Act, a "record" is defined as follows:

> (1) a report prepared or received by any staff at any location at which services, supports, or other assistance is provided to individuals with developmental disabilities;
>
> (2) a report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at such location, that describes such incidents and the steps taken to investigate such incidents; and
>
> (3) a discharge planning record.

42 U.S.C. § 15043(c). DRT, however, has requested documents that fall outside of this definition. [Doc. No. 13-1, Page ID # 115.] It has also requested copies of documents already produced by DIDD, and unnecessary and irrelevant to its investigation. For these reasons, a material issue of fact exists concerning whether Orange Grove's conduct warrants dispositive relief.

In *Michigan Prot. & Advoc. Serv., Inc. v. Evans*, No. 09-12224, 2010 U.S. Dist. Ct. 103622 * (E.D. Mich. Sept. 30, 2016), the district court stated that it is in the public interest

that P&As have access to the "*necessary* records to ensure individuals with disabilities are not suffering from abuse or neglect." *Id.* at \*5 (emphasis added). Similarly, in *Disability Rights Ohio v. Buckeye Ranch, Inc.*, *supra*, the district court, although allowing the P&A access to records as part of an expanded investigation, limited the records sought "to a reasonable time period." *Disability Rights Ohio*, 375 F.Supp.3d at 891. This approach is consistent with other cases outside the Sixth Circuit where district courts have crafted equitable relief that meets the intent of the DD Act and provides a P&A access to records needed for its investigation. *See e.g., Conn. Office of Prot. & Advocacy for Persons with Disabilities, supra.*

## F. DRT is Not Authorized to Access Other Records of Orange Grove Residents Without a Complaint or Probable Cause

In its counterclaim against Orange Grove, DRT requests that this Court grant preliminary and *permanent* injunctive relief that enjoins Orange Grove from denying DRT access to "other records of individuals with disabilities served by Orange Grove." [Doc. No. 13, Page ID #109.] As discussed above, the DD Act requires, at a minimum, that a P&A receive a complaint or determine that it has probable cause before it can access an individual's records. 42 U.S.C. § 15043(a)(2)(I); *Conn. Office of Prot. & Advocacy for Persons with Disabilities, supra* at 244. The DD Act does not authorize a P & A access to every resident's records in a facility on the basis of a complaint received about one specific individual. *See Penn. Prot. & Advocacy, Inc., supra*, at \*25-28 (finding that the P&A had not demonstrated any basis entitling them to access to the records of all of the students); *see also Disability Rights Ohio, supra*, at \*890 (concluding that "when seeking records that relate to a facility or other individuals in the facility who were not the initial subjects of the report of abuse or neglect, a P & A is required to articulate to the facility the bases of its finding of probable

cause to believe there is a systemic problem or other specific individuals have been subjected to abuse of neglect.").

Here, DRT has neither alleged nor shown that it has received a complaint or has probable cause to believe that any other individual residing at Orange Grove has been subjected to neglect and/or abuse, or that the health and safety of other residents of Orange Grove are in serious jeopardy. [Doc. No. 13; Doc. No. 44.] Rather, DRT alleges that the complaints received have been specific to Mr. Doe. [*Id.*] DRT's request is an inappropriate expansion of its original investigation of complaints against Mr. Doe. Additionally, DRT fails to offer any legal authority that supports its contention that it is entitled to a permanent injunction requiring Orange Grove to give it access to other records of unidentified individuals at Orange Grove. [Doc. No. 54.] Because DRT has failed to meet the prerequisites of the DD Act in order to access records of other individuals, DRT's request for preliminary and permanent injunctive relief as to "other records of individuals" should be denied.

## IV.   CONCLUSION

Material issues of fact exist regarding whether DRT has acted within the statutory authority of the DD Act in its access of Mr. Doe, in demanding copies of Mr. Doe's records from Orange Grove, and in seeking access to other records of individuals at Orange Grove beyond Mr. Doe. For the reasons stated herein, Plaintiffs respectfully request that the Court deny DRT's Motion for Judgment on the Pleadings on All Claims.

Respectfully submitted,

McKOON WILLIAMS ATCHLEY & STULCHE PLLC

By:   /s/ Zachary L. Atchley
Fielding H. Atchley, Jr., (TN BPR #001310)
Zachary L. Atchley, (TN BPR #040892)
*Counsel for Conservator Linda J. Norwood*

633 Chestnut Street, Ste. 1500
Chattanooga, TN 37450
Telephone 423-756-6400
fatchley@mwalawfirm.com
zatchley@mwalawfirm.com


GRANT, KONVALINKA & HARRISON, P.C.

By: ___/s/April H. Sawhill_____
John P. Konvalinka (TN BPR #001780)
April H. Sawhill (TN BPR #039906)
*Counsel for The Orange Grove Center, Inc.*
633 Chestnut Street., Suite 900
Chattanooga, TN 37450-0900
Telephone 423-756-8400
jkonvalinka@gkhpc.com
asawhill@gkhpc.com


## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served as indicated below. Parties may access this filing through the Court's electronic filing system.


This 15th day of July, 2024.


___/s/April H. Sawhill_____
April H. Sawhill