IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| Linda J. Norwood, ) | |
| The Orange Grove Center, Inc. ) | |
| Plaintiffs, ) | |
| ) | Civil Action Number 1:23-cv-00111 |
| v. ) | DCLC-CHS |
| ) | |
| ) | |
| Disability Rights Tennessee, ) | |
| ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT DISABILITY RIGHTS TENNESSEE'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

Comes now the Defendant, Disability Rights Tennessee (DRT), by counsel, with its reply to Plaintiff Linda J. Norwood and Plaintiff The Orange Grove Center, Inc.'s (collectively "Plaintiffs'") Response to Defendant DRT's Motion for Judgement on the Pleadings.

Plaintiff's Response fails to address many of the arguments set forth by DRT in its Motion, such as the Tennessee state law that requires a provider disclose its records to the P and A agency without the consent of the conservator or guardian[1], and instead their Response reads more as a preamble to a Motion to Amend, which Plaintiffs have filed to file in the time ordered by this Court. DRT will address the legal arguments Plaintiffs provided, while navigating the patented untruths contained in their Response.

I. **Motion For Judgment On The Pleadings**

---

[1] T. C. A. § 33-3-106

The parties agree that in deciding on a Rule 12(c) Motion for Judgment on the Pleadings, the court may only rely on "well-pleaded material allegations in the pleadings." *Coyer v. HSBC Mortg. Servs., Inc.*,70l F.3d 1 104, ll07-08 (6th Cir. 2012) (internal citations omitted); see also *Yajing Liu v. Rock Ridge Ins. Co.*, 662 F. Supp. 3d 793,796 (8.D. Tenn. 2023). Plaintiffs contend that, at a minimum, material issues of fact exist as to whether, as a matter of law, DRT has met the prerequisites of the DD Act, or if it has stepped beyond the bounds of the authority granted pursuant to the DD Act." ECF57, Pg. 474. However, Plaintiffs recitation of allegedly disputed facts go well beyond the pleadings and are often inaccurate.

Plaintiffs further mistakenly state that, "Federal Rules of Civil Procedure Rule 65 requires that a hearing on a motion for preliminary injunction occur." ECF 57 at 9. This is incorrect as an "a hearing is not necessary where no triable issues of fact are involved." See *United States v. McGee*, 714 F.2d 607, 613 (6th Cir.1983). "This court requires '[a] party invoking [Rule 56(f) ] protections [to] do so in good faith by affirmatively demonstrating ... how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *United States v. Miami Univ.*, 294 F.3d 797, 815–16 (6th Cir. 2002) *citing Good v. Ohio Edison Co.*, 149 F.3d 413, 422 (6th Cir.1998) (additional citations omitted)).

II.     Access To John Doe Is Not At Issue In This Case

Plaintiffs argue that "Ms. Norwood seeks judicial review of whether DRT's access to Mr. Doe was being conducted at a reasonable time and within any Court-determined guardrails." Id. continuing onto Pg. 10.  Access to John Doe is not at issue in this case.  Plaintiffs did not raise this issue until Plaintiffs filed their Motion in Opposition to Realignment of Parties on June 20, 2023. ECF 30, Pg. . In fact, Ms. Norwood's initial complaint only requested declaratory

judgment regarding DRT's request for John Doe's records and not DRT's access to John Doe. ECF 1-1, Pg. 12 at Numbers 25 and 26. This Court made that same finding in its Order Granting Motion for Realignment. ECF 45, Pg. 5. Thus, Plaintiffs argument of the reasonableness of DRT's access to John Doe is a red herring argument brought before this Court to create facts in dispute when none exist.

### III. There Are No Material Facts In Dispute Regarding DRT's Access To John Doe's Records

The second assertion regarding facts in dispute stems from DRT's request for John Doe's records. Plaintiffs assert "that Orange Grove denied DRT's first two requests for Mr. Doe's records because DRT's requests did not satisfy the DD Act. The requests did not state that DRT had received a complaint[2] concerning Mr. Doe's care or treatment." ECF 57 Pg. 14. Additionally, Plaintiff's state that, "DRT visited Mr. Doe unannounced and unaccompanied on March 8, 2023, two weeks before it notified Orange Grove on March 22, 2023, that it had complaints or probable cause to believe that an incident of neglect or abuse had occurred." Id. at Pg. 17. This is untrue. The pleadings clearly show that DRT first informed Orange Grove it had received multiple complaints concerning Orange Grove staff's alleged abuse and neglect of John Doe AND requested records in relation to DRT's investigation into these multiple allegations of abuse and neglect on February 17th, 2023. ECF 13-1 Pg. 4.[3]

---

[2] DRT does not give out the details of a complaint when making a records request due to the confidentiality provisions in 45 C.F.R. § 1326.28. Additionally, the disclosure of information obtained from complainants and witnesses would undermine the ability of DRT to investigate allegations of abuse and neglect in the future. Without assurances by DRT of confidentiality, residents, service recipients, families or employees often will not speak candidly with investigators from DRT. Witnesses are frequently service recipients or employees that remain in the facilities after our investigation is completed and must rely on the confidentiality of these conversations for their own safety.

[3] In section C of their Response, Plaintiffs go to great lengths to argue that this Court must review DRT's probable cause determination. However, DRT received a complaint, therefore

Plaintiffs then argue that when DRT called Ms. Norwood on February 3, 2023, and requested that she sign a release for DRT to obtain Mr. Doe's records, DRT did not offer Ms. Norwood any assistance in resolving a specific situation or complaint. ECF 57, pg 15. To the contrary, in her initial complaint brought against DRT, Ms. Norwood, by her own admission, states that "On or about February 3, 2023, Conservator received a call on her cell phone after working hours from someone who identified themselves as associated with DRT *with an offer to assist her in the investigation of reports of neglect or abuse of John Doe at Orange Grove Center."* ECF 1-1, Pg, 10. (emphasis added). Plaintiff's statements in their Response are proven incorrect by the record before this Court, and by their own filings.

In another instance of citation to incorrect facts by Plaintiffs in their response, Plaintiffs assert that OG Chief Executive Officer, Ms. Roberts "advised that she was unavailable to meet on the date unilaterally selected by DRT." [Doc. No. 13-1, Page ID # 145.] Based upon this communication, and nothing more, Plaintiffs assert that DRT *assumed* that Ms. Roberts reneged on her offer of allowing DRT to visually inspect John Doe's records. [Doc. No. 13, Page ID# 106-07.]" ECF 57, Pg. 17. However, Plaintiffs fail to mention that in this same correspondence, Ms. Roberts stated **"Pursuant to the court appointed Conservator's letter on March 10, we decline to produce the requested records."** ECF 13-1, Pg. 34, (emphasis added). DRT assumed nothing; it was told directly by Ms. Roberts that pursuant to Ms. Norwood's directive, OG was declining to produce John Doe's records to DRT.

---

any analysis of a probable cause determination is not necessary. "a complaint has been received by the system about the individual with regard to the status *or* treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect; 42 U.S.C.A. § 15043 (I)(iii)(ii). (emphasis added).

Yet, Plaintiffs state that, "DRT's blind insistence on being provided with copies of an expansive set of records from Orange Grove is less about Mr. Doe's well-being and his needs, and more about DRT's desire to bully Ms. Norwood and Orange Grove into submission." ECF 57, Pg, 17. Firstly, DRT's records request of February 17, 2023, is anything but "expansive." DRT requested specific records—Independent Support Plans (ISPs), daily notes, assessments, and medical records—from 2022 and 2023. ECF 13-1, Pg. 4. This records request was in furtherance of DRT's statutory duty to investigate the multiple and disturbing reports of abuse and neglect by OG staff against John Doe— including physical beatings by OG staff and neglect to the point where John Doe was nearly hit by a bus. Plaintiffs' attempt to mark DRT as a "bully" is mere deflection away from the serious allegations against OG and Ms. Norwood's initiation of this lawsuit in the first place. DRT tried in as many ways as it could think of to inform Plaintiffs of DRT's authority and obligations prior to litigation. When DRT Attorney Stacie Price sent Orange Grove a draft of its present counterclaim on April 22, 2023, she stated, "I remain hopeful this matter can be resolved without litigation." ECF 1-1, Pg. 32. That would have been the time for Orange Grove to reach out to DRT and inform them that their offer to visually inspect the records was still on the table. Instead, DRT received no response from Orange Grove and received a fax on April 27th, 2023, informing it that it had been sued by Ms. Norwood. ECF 1-1, Pg. 2.

**IV.     The Court Should Consider *Riel* Persuasive In This Case.**

Plaintiffs' request that this Court dismiss considering *Riel* outright because it is not binding on the Sixth circuit is misplaced. *Riel*[4] based some of its opinion on a fellow Sixth circuit jurisdiction case which found that consent was not necessary for a Protection and Advocacy system (P&A) to access records in certain circumstances. In *Michigan Prot. & Advocacy Serv., Inc. v. Miller*, 849 F. Supp. 1202, 1208 (W.D. Mich. 1994), the court rejected the defendant's argument that the P&A Acts were analogous to IDEA[5], stating that, "The DD and PAMI Acts, however, clearly mandate that organizations like MPAS have the authority to access DSS facilities and records in specific cases where developmentally disabled and mentally ill individuals are involved."

The legislative history outlined by *Riel* is also helpful to understand why Congress amended the DD Act to not allow a guardian or conservator to block a P&A's access to records, but a closer look at the history shows exactly why Congress amended the Act.

Prior to this 1990 Amendment, the DD Act did not allow for a P&A to access records without a conservator's consent. The relevant section read as follows[6]:

(G) have access to all records of —
"(i) any person with developmental disabilities who is a client of the system if such person, or the legal guardian, conservator, or other legal representative of such person, has authorized the system to have such access; and
(ii) any person with developmental disabilities —
"(I) who, by reason of the mental or physical condition of such person, is unable to authorize the system to have such access;
"(II) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and

---

[4] Michigan Protection & Advocacy Service, Inc. v. Miller, 849 F.Supp. 1202, 1208 (W.D.Mich.1994) (holding that the Act does not require parental consent to access records and that the Act "clearly mandate[s] that [P & A organizations] have the authority to access ... records in specific cases where developmentally disabled and mentally ill individuals are involved."); *Disability Law Ctr., Inc. v. Riel*, 130 F. Supp. 2d 294, 298 (D. Mass. 2001)
[5] Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1232g(b), which permits the release of student records only when authorized by the parents.
[6] PL 100–146 (S 1417), PL 100–146, October 29, 1987, 101 Stat 840

"(III) with respect to whom a complaint has been received by the system or with respect to whom there is probable cause to believe that such person has been subject to abuse or neglect;".

A Senate Report discussing this version of the statute states "Another issue raised was with regard to the difficulty experienced by some systems in reaching clients for whom the system has reason to believe that abuse or neglect may be occurring and that the health and safety of the individual is in serious jeopardy. In cases where the individual has a guardian, existing law requires that the P&A System not become involved if the guardian refuses the assistance offered. Clarification of the conditions under which the P&A System can intervene in these extraordinary circumstances is necessary." S. REP. 101-376, S. Rep. No. 376, 101ST Cong., 2ND Sess. 1990, 1990 WL 258995. Congress chose to remedy this in its 1990 amendment to the DD Act, which is how the statue reads today.[7] However, Congress choose not to include any provision that there must be a finding that the health and safety of an individual is in serious jeopardy for the P & A to request records without the conservator's consent.

Another court went through a similar analysis of this section of the DD Act and found that, "this provision…provides that a P&A, is entitled to obtain access to the records

---

[7] The entire section below was added under the 1990 Amendment: Such system shall have-
access to all the records of-
(iii) any individual with a developmental disability, in a situation in which--
(I) the individual has a legal guardian, conservator, or other legal representative;
(II) a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect;
(III) such representative has been contacted by such system, upon receipt of the name and address of such representative;
(IV) such system has offered assistance to such representative to resolve the situation; and
(V) such representative has failed or refused to act on behalf of the individual; 42 U.S.C. § 15043 (I)

and patients necessary for its investigation, so long as other statutory prerequisites are met, regardless of the wishes of the guardian*." Iowa Prot. & Advocacy Servs., Inc. v. Gerard Treatment Programs*, L.L.C., 152 F. Supp. 2d 1150, 1167 (N.D. Iowa 2001). DRT was unable to find any case, anywhere that found a conservator could block a P&A's access to records after the 1990 amendment.

V. **This Court should also rely on the regulations in determining whether Orange Grove violated federal law.**

In Plaintiff's Response, they rely heavily on the recent Supreme Court case of *Loper* to state that DRT's reliance on DHHS regulations regarding the DD Act is misplaced, but instead of applying the actual ruling of *Loper*, Plaintiff's simply state that DRT is wrong because it cited regulations rather than the statute.

*Loper* states that, "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires… when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous. *Loper Bright Enterprises v. Raimondo,* 144 S. Ct. 2244, 2273 (2024)

The current version of the DD Act expressly authorizes DHHS to create regulations implementing the Act. "Except as otherwise expressly provided in this subchapter, the Secretary… shall promulgate such regulations as may be required for the implementation of this subchapter. 42 U.S.C.A. § 15004 (4)(b). This language means that the agency has the required authority to set out regulations to clarify the interpretation of the statute where there is ambiguity.

45 C.F.R. § 1326.25(a)(3), which is at issue in this case, is a perfect example of how the agency clarifies meaning of the DD Act. 42 U.S.C.A. § 15043(I)(iii)(v) states that after other requirements are met that the P & A shall have all the records when "such representative has failed or refused to act on behalf of the individual." But what does "act" actually mean in this context? This is where the agency's regulations step in because the ambiguity of "act" can have very real-life consequences, as this case illustrates. After a notice and comment period, the agency released new final rules[8] in 2015, in compliance with the procedures required under 5 U.S.C.A. § 553, which clarify the meaning. It found that:

> Regarding § 1386.25(a)(3)(iii), commenters suggested replacing "act" with "provide consent" and AIDD[9] made this change to clarify the intent of the provision, in accordance with judicial interpretation and the intent of the law. AIDD finds the DD Act encourages the broad applicability of access authority to records when there is a complaint or probable cause of abuse and neglect. For example, a P&A may need to access records in a situation where the guardian is allegedly abusing or neglecting his/her ward. A majority of courts have recognized that P&As should be permitted to access records in these situations when a guardian has refused to consent to their release, AIDD had included this change in language to reflect an interpretation weighted toward the protection of individuals with developmental disabilities.[10]

---

[8] SUMMARY: This rule implements the Developmental Disabilities Assistance and Bill of Rights Act of 2000. The previous regulations were completed in 1997 before the current law was passed. The rule will align the regulations and current statute and will provide guidance to AIDD grantees.
DATES: These final regulations are effective August 26, 2015.
A Notice of Proposed Rule Making (NPRM) to address the requirements of the DD Act of 2000 was published on April 10, 2008 (73 FR 19708) and a subsequent document published on July 29, 2008 (73 FR 43904) reopened the comment period through September 29, 2008. This rule finalizes many of the policies that were included in the NPRM, as well as reorganizes some provisions based on court rulings and to provide clarity." Developmental Disabilities Program, 80 FR 44796-01

[9] Administration on Intellectual and Developmental Disabilities. Housed within the Department of Health and Human Services, which is the agency charged with implementing the Developmental Disabilities Assistance and Bill of Rights Act

[10] Developmental Disabilities Program, 80 FR 44796-01

DRT does not quote this excerpt to insinuate in any way that Ms. Norwood is abusing or neglecting John Doe, but to illustrate that the regulations implementing the DD Act are authorized by Congress, and that the DHHS is acting within that authorization by adhering to the proper standards of rulemaking while applying court rulings, such as *Riel*, so that there is consistency and clarity regarding this particular issue.

Under this proper analysis of *Loper,* this Court should defer to the DD Act regulations because it would not be relying on the regulations only because the statue is ambiguous, but because Congress delegated the agency to make these regulations, and the agency has provided specific reasonable reasons for their interpretation of the statute along with following the procedure required by the Administrative Procedure Act at 5 U.S.C.A. § 553.

Additionally, DRT is not relying on these regulations alone which Plaintiff's state expand a P & A's access authority for its authority to access John Doe's records. See ECF 57, Pg. 17. The federal statute itself is quite clear and nearly mirrors the regulations which clarify it. The authority DRT cited in the opening paragraph of its claim was 42 U.S.C.A. § 15043 (ECF 13, Pg. 1) and has repeatedly invoked that statute throughout all these proceedings. Whether this Court defers to the DD Act regulations or limits its findings to the Act itself, the result is the same. DRT is authorized to John Doe's records without Ms. Norwood's consent.

**VI.    DRT Is Empowered To Access All Of John Doe's Records At Orange Grove Under The DD Act**.

Plaintiffs argue that "records" in the PADD Act are limited to those enumerated at 42 U.S.C. § 15043(c) and "are defined as follows: (1) a report prepared or received by any staff at any location at which services, supports, or other assistance is provided to individuals

10
Case 1:23-cv-00111-DCLC-CHS   Document 59   Filed 07/19/24   Page 10 of 14   PageID #: 500

with developmental disabilities; (2) a report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at such location, that describes such incidents and the steps taken to investigate such incidents; and (3) a discharge planning record." ECF 57, pg. 17. That is not what the DD Act says. The section does not "define" records, but states, "[i]n this section, the term "record" includes." The word "includes" is not exhaustive in this instance. If a statute is unambiguous, then its plain meaning will be applied. "When we find the terms of a statute unambiguous, judicial inquiry is complete, except "in 'rare and exceptional circumstances.'" *Rubin v. U. S.,* 449 U.S. 424, 430 (1981), *quoting TVA v. Hill,* 437 U.S. 153, 187, n. 33, 98 S.Ct. 2279, 2298, n. 33, 57 L.Ed.2d 117 (1978) (additional citations omitted).

The DD Act states, "such system shall… (I) have access to all records of…" 42 U.S.C.A. § 15043(2)(I). "[i]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253–54 (1992). Access to "all" records is not ambiguous, and Congress was clear in its wording. "If the statutory language is plain, we must enforce it according to its terms." *Verble v. Morgan Stanley Smith Barney, LLC*, 148 F. Supp. 3d 644, 652, 2015 WL 8328561 (E.D. Tenn. 2015), aff'd, 676 Fed. Appx. 421, 2017 WL 129040 (6th Cir. 2017) *quoting King v. Burwell*, 135 S.Ct. 2480, 2489, 192 L.Ed.2d 483 (2015).

This section is merely illustrative of the types of records the P&A is entitled to. "Reading the word "include" as introducing a non-exhaustive list of examples is consistent with Sixth Circuit precedent. Even where a contract contains more mandatory language,

such as "shall include," the Sixth Circuit finds that the phrase "demonstrates that the list ... is not exhaustive." *Cyrus v. Univ. of Toledo,* No. 20-3913, 2022 WL 985819, at *8 (6th Cir. Apr. 1, 2022). quoting *United States ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 434 (6th Cir. 2021) (*citing Samantar v. Yousuf*, 560 U.S. 305, 317 (2010) ("It is true that use of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive.")

Plaintiff's interpretation that the list is exclusive would render the earlier provision of "all records" null and void and so the proper approach is to read the statute as a whole. "We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act, and that in fulfilling our responsibility in interpreting legislation, 'we must not be guided by a single sentence or member of a sentence, but (should) look to the provisions of the whole law, and to its object and policy." *Richards v. United States*, 369 U.S. 1, 11 (1962).

The object and policy of the DD Act "is to provide for allotments to support a protection and advocacy system in each State to protect the legal and human rights of individuals with developmental disabilities in accordance with this part." 42 U.S.C.A. § 15041.

### VII. Conclusion

This case is not about Ms. Norwood's rights as a conservator, nor is it about DRT claiming it has a right to all records of any residents of Orange Grove. DRT requested a permanent injunction so that it will not be forced to litigate every time it receives a complaint or makes a probable cause finding of abuse or neglect at Orange Grove. DRT requests this Court to see that, and for it to narrowly tailor any injunctive relief it deems

proper to that end. DRT only wants to get John Doe's records so that it can investigate their treatment to ensure their legal and human rights are protected, and that DRT's rights to protect and advocate for them are not hampered by Plaintiffs.

DRT respectfully requests that this Court grant its pending Motion for Judgment on the Pleadings.

Respectfully submitted   DATE: July 19, 2024


/*s/ Jeremiah Jones*
Jeremiah Jones, (BPR #040551)
Disability Rights Tennessee
9050 Executive Park Drive, Suite B-101
Knoxville, TN 37923 (865) 670-2944
jeremiahj@disabilityrightstn.org

*/s/ Stacie Price*
Stacie L. Price (BPR #030625)
Disability Rights Tennessee
2 International Plaza, Suite 825
Nashville, TN 37217
staciep@disabilityrightstn.org
(615) 298-1080

 /*s/ Jack Derryberry*
Jack W. Derryberry, Jr. pro hac vice (BPR #003870)
Disability Rights Tennessee
2 International Plaza, Suite 825
Nashville, TN 37217
jackd@disabilityrightstn.org
(615) 298-1080

/*s/ Sherry Wilds*
Sherry A. Wilds (BPR #024756)
Disability Rights Tennessee
2 International Plaza, Suite 825
Nashville, TN 37217
sherryw@disabilityrightstn.org
(615) 298-1080

## Certificate of Service

I hereby certify that on 19th day of July 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*/s/ Jeremiah Jones*