**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA DIVISION**

| | | |
|---|---|---|
| **Linda J. Norwood,** | ) | |
| **The Orange Grove Center, Inc.** | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action Number 1:23-cv-00111** |
| **v.** | ) | **DCLC-CHS** |
| | ) | |
| | ) | |
| **Disability Rights Tennessee,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT DISABILITY RIGHTS TENNESSEE'S RESPONSE TO PLAINTIFFS'**
**AMENDED MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT AND TO**
**DENY DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS ON ALL**
**CLAIMS**

Comes now, Defendant Disability Rights Tennessee (DRT) with its Response in

Opposition to Plaintiffs' Amended Motion for Leave to File an Amended Complaint and to Deny

Defendant's Motion for Judgment on the Pleadings on All Claims (hereinafter "Motion" or

"Plaintiffs' Motion"), and in support submits as follows:

## I.    INTRODUCTION

Plaintiffs, in their above Motion, attempt to turn this case from a singular interpretation of

federal law to a complex and overly broad attack on multiple federal laws and regulations which

is not only improper, but would subject DRT to prejudice and undue delay. Therefore, Plaintiffs'

Motion should be denied.

1

## II.    LEGAL STANDARD

Fed. R. Civ. P. 15(a) specifies that "the court should freely give leave [to amend] when justice so requires." However, this relief is not without limits. A Court may deny leave to amend for a variety of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Felts v. Cleveland House Auth.*, 821 F. Supp. 2d 968, 983–84 (E.D. Tenn. 2011) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962)). Because Plaintiffs' proposed Motion is a prejudicial and a futile attempt at delaying justice, the Court should deny it.

## III.    ARGUMENT

### A.  **The Court should deny Plaintiffs' Motion because it would unjustly prejudice DRT and cause undue delay.**

#### 1.  **Plaintiffs' motion is an unfair attempt to expand the narrow focus on this case which would cause undue delay in case progression and prejudice DRT.**

With their Motion, Plaintiffs attempt to expand this case from the narrowly focused issue of DRT's access to John Doe's records under §15043 of The Developmentally Disabled Assistance and Bill of Rights Act (DD Act)[1] to an overly broad, unnecessary attack on the constitutionality of various federal acts and federal regulations. DRT would be prejudiced if Plaintiffs' Motion were granted because it, "would radically alter the scope and nature of the case," "bears no more than a tangential relationship to the original action," and unfairly permits Plaintiffs, "to transform their case into something entirely new." *Daugherty v. Am. Exp. Co.*, No. 3:08-CV-48, 2010 WL

---

[1] 42 U.S.C. § 15001 et seq.

2

2773516, at *3 (W.D. Ky. July 13, 2010); *Caton v. Barry,* 500 F. Supp. 45, 52 (D.C. 1980);

*Mississippi Ass'n of Cooperatives v. Farmers Home Admin.,* 139 F.R.D. 542, 544 (D.C. 1991).

The chart below illustrates the substantial differences between the claims and requested

relief in the original Complaint and the Proposed Amended Complaint (PAC) and how the PAC

would establish entirely new claims and materially change the character of the litigation and the

nature of the trial on the merits.

| Original Complaint Filed in the Chancery Court of Hamilton County | Plaintiffs' PAC in the Eastern District of Tennessee |
|---|---|
| Count I Declaratory Judgment Under State Law<br><br>Count II Injunctive Relief Under State Law | Count I Unconstitutionality of Administrative Procedures Act (APA)<br><br>Count II Unconstitutionality of the DD ACT<br><br>Count III Invalidity of Department of Health and Humans Services (DHHS) Final Rule<br><br>Count IV Violation of the DD ACT by DRT<br><br>Count V Declaratory Judgment Under Federal Law<br><br>Count VI Injunctive Relief Under Federal Law |

Such a complete revision of the original complaint is impermissible and prejudices DRT.

A court within the Sixth Circuit has explained how courts across the country are consistent in

this approach:

> The law is clear and uniform that denial of a motion to amend is proper where the amended complaint would establish entirely new claims and materially change the character of the litigation and the nature of the trial on the merits. …

[D]enial of a motion to amend was upheld where '[t]he proof required to defend against the new claim would be of an entirely different character than the proof which the defendant had been led to believe would be necessary.'[2]

'Undue prejudice has also been found where the new claims substantially alter the original complaint's claims and where the trial of the case would be delayed.'[3] … and 'where the amendment brings entirely new and separate claims, ... or at least entails more than an alternative claim or a change in the allegations of the complaint; and where the amendment would require expensive and time-consuming new discovery.'[4]"[5]

*Shirk v. Fifth Third Bancorp*, 2008 WL 4153702, No. 1:05-CV-049 at *2 (S.D. Ohio Sept. 4, 2008).

Plaintiffs' PAC fits every requirement for being prejudicial to Defendant DRT. Plaintiffs' PAC adds at least four new constitutional claims challenging, among other things, the validity of established laws - the Administrative Procedures Act (APA), The DD Act, and the Department of Health and Human Services (DHHS) Final Rule implementing the DD Act. This transforms the case from the single issue of DRT's access to discrete records of one individual to a wide-sweeping challenge to federal laws and regulations. These are not just new or alternate claims the Plaintiffs failed to include in their original complaint but represent a complete alteration of the case that would unfairly require DRT to undergo expensive and time-consuming discovery and undoubtedly delay the trial for years. Plaintiffs offer no reason these claims could not have been brought earlier, more than a year after this case was filed originally in state court by Ms. Norwood.

---

[2] *Deasy v. Hill*, 833 F.3d 38, 42 (4th Cir.1987).
[3] *In re Smith*, 204 B.R. 358, 261 (E.D.N.Y.1997).
[4] *Conroy Datsun v. Nissan Motor Corp.*, 506 F. Supp. 1051, 1054 (N.D.Ill.1980).
[5] *Isaac v. Harvard Univ.*, 769 F.2d 817, 829 (1st Cir.1985).

4

This reimagining of the case not only prejudices DRT but John Doe himself, a vulnerable adult who is deaf and has intellectual and developmental disabilities (I/DD), and who still lives in a home run by Orange Grove where he was allegedly physically beaten and neglected. DRT cannot complete its investigation into the alleged abuse and neglect of John Doe without access to his records, which are in the possession of Orange Grove. As such, Plaintiffs PAC should be denied as prejudicial.

**2. The court should deny Plaintiffs' Motion under the Doctrine of Judicial Estoppel as being prejudicial to DRT.**

Plaintiffs are precluded from taking a contrary position in their current PAC due to judicial estoppel. "[U]nder federal law … admissions in the pleadings are generally binding on the parties and the Court*." Ferguson v. Neighborhood Hous. Servs., Inc.,* 780 F.2d 549, 551 (6th Cir.1986) (citation and quotation marks omitted). Moreover, judicial admissions, such as what Ms. Norwood made to the Hamilton County Chancery Court and this Court about DRT offering her assistance, are formal admissions in the pleadings of a present action, "which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Cadle Co. II, Inc. v. Gasbusters Prod. I Ltd. P'ship*, 441 Fed. Appx. 310, 312–13 (6th Cir. 2011) (*quoting In re Fordson Eng' Corp.*, 25 B.R. 506, 509 (E.D. Mich.1982)). By further explanation:

> Courts have observed that several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," [8]Third, court's consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. (judicial estoppel forbids use of "intentional self-contradiction ... as a means of obtaining unfair advantage"); see also 18 Wright § 4477, p. 782. These factors are not meant to be an inflexible standard or exhaustive formula, additional considerations may be evaluated.

*New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (internal cites omitted).

The first factor is clearly present in this case. Plaintiffs stated one thing in their initial complaint, then stated the exact opposite in two later filings. In her initial, verified complaint brought against DRT in the Chancery Court of Hamilton County, Ms. Norwood attests: "On or about February 3, 2023, Conservator received a call on her cell phone after working hours from someone who identified themselves as associated ***with DRT with an offer to assist her in the investigation of reports of neglect or abuse of John Doe at Orange Grove Center***." [ECF 1-1, at 10] (emphasis added). Yet in the Response to DRT's Motion for Judgment on the Pleadings (MJP) Plaintiffs state, "while DRT had called Ms. Norwood and requested that she consent to disclosure of Mr. Doe's records, ***it did not offer Ms. Norwood any assistance*** in resolving a specific situation or complaint." In the PAC, Plaintiffs describe the same February 3, 2023, phone call by stating, "The caller stated that DRT wanted to execute an investigation and asked for Ms. Norwood's consent for DRT to 'access' Mr. Doe's Orange Grove records…The ***caller did not ask to assist Ms. Norwood*** in resolving the situation." ECF 57 at 15 and ECF 65-4 at 4 (emphasis added). This is a clear contradiction between the original complaint and Plaintiff's later assertions, and Plaintiffs have no reason for making it other than to prolong this case and avoid an adverse ruling on DRT's MJP.

As to the second factor, while *New Hampshire* states that the prior inconsistent statement must have been made in a prior proceeding, the Sixth Circuit holds that the doctrine can be applied within the same proceeding. See *Mackey v. Rising*, 106 F.4th 552 at 567 (6th Cir. 2024) (*quoting Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000). Federal courts within Tennessee have applied this approach because they seek to not only preserve judicial integrity between proceedings, but also uphold public policy and the sanctity of an oath.

"It is based solely upon that public policy which upholds the sanctity of an oath and precludes a party who has made a sworn statement— even in another litigation— from repudiating the same when he thinks it to his advantage to do so…It might well be termed 'estoppel by oath." *United States v. Certain Land & Interests in Prop. in Rutherford Cnty., State of Tenn.*, 225 F. Supp. 338, 340 (M.D. Tenn. 1964) (*quoting Sartian* at 317).

The third factor that *New Hampshire* outlines is whether the party seeking to assert an inconsistent statement would derive an unfair advantage if not estopped. By contradicting themselves Plaintiffs would undoubtedly derive an unfair advantage because the material fact regarding DRT offering Ms. Norwood assistance would now be in question. Whether DRT offered assistance to Norwood is a material fact that has bearing on this case because it is one of the statutory condition precedents required before DRT can request John Doe's records from Orange Grove. Altering a material fact while a Motion for Judgment on the Pleadings is pending before this Court with no justification for why the fact was changed is clearly an attempt to derive an unfair advantage. Therefore, should the court allow the PAC in whole or in part, Plaintiffs should be estopped in asserting in the PAC that DRT did not offer Ms. Norwood assistance as required under 42 U.S.C. § 15043(a)(2)(I)(iii).

## **B. The Court should deny Plaintiffs' Motion because filing the PAC would be futile.**

In *Foman*, the Supreme Court held that, "justice does not require the Court to grant leave to amend if the amendment would be futile." 371 U.S. at 182 (1962). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Dunfee v. Finchum*, 132 F. Supp. 3d 968, 973, 2015 WL 5564557 (E.D. Tenn. 2015) *(citing Miller v. Calhoun Cnty.*, 408 F.3d 803, 807 (6th Cir.2005)).

Plaintiffs' PAC would not survive a motion to dismiss on several grounds, as discussed below, and is, thus, futile.

## 1. **Plaintiffs Fail To Satisfy The Standing Requirements Of Article III Of The Constitution.**

The "case or controversy" clause of Article III of the Constitution imposes a minimal constitutional standing requirement on all litigants attempting to bring suit in federal court. To invoke standing, a plaintiff must demonstrate, at an "irreducible minimum," that: (1) they have suffered a distinct and palpable injury in fact as a result of the putatively illegal conduct of the defendant; (2) the injury is fairly traceable to the challenged conduct; and (3) it is likely to be redressed if the requested relief is granted. See *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc*., 454 U.S. 464, 472 (1982) (internal citations omitted); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979). In this case, Plaintiffs' PAC claims fail every element of the standing test as discussed below.

### i. **Injury in Fact**

An injury in fact is one that is "real, not abstract, actual, not theoretical, concrete, not amorphous." *Thomas v. TOMS King* (Ohio), LLC, 997 F.3d 629, 634 (6th Cir. 2021) (*citing Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019)); (*citing Spokeo v. Robins*, 578 U.S. 330, 340 (2016)). Additionally, a party must demonstrate a "causal connection between the injury and the conduct complained of—the injury must be "fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992) (*citing Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42 (1976).

8

In their PAC, Plaintiffs fail to identify any specific injury or specific harm that ***they*** have suffered. Plaintiffs allege in the PAC that only Mr. Doe and persons supported by Orange Grove "will suffer immediate and irreparable harm," without alleging how Orange Grove and Ms. Norwood will be harmed. The only potential injury to Orange Grove that the PAC offers is that "Orange Grove's policies would be violated," but it fails to state in what way those policies will be violated and how that injury is traceable to DRT or any potential third parties, nor how a violation of their policies would grant them a right of action in court. ECF 65-4 at 31. Orange Grove's alleged injury in fact is illusory. Orange Grove alleges no injury in this case aside from having to abide by existing federal law, the DD Act.

Plaintiffs also state in the PAC that they "fear that DRT may seek access to Mr. Doe or other individuals at Orange Grove to encourage them to engage in potentially 'emotionally-taxing' 'legal, administrative, [or] other... [unknown] remedies' not in Mr. Doe's best interests." ECF 65-4 at 13. This alleged "injury" is no injury at all. The allegation can only be interpreted to mean that Plaintiffs ***themselves*** fear DRT will receive other reports of abuse and neglect related to John Doe or other persons supported by Orange Grove and will need to investigate such instances. This is not harm or injury in fact to Plaintiffs. DRT's authority to investigate abuse and neglect is at the core of Congress's mandate to for DRT to protect people with I/DD from abuse and neglect. Moreover, courts have found that P&As have a "protected First Amendment right to communicate and consult with the population it was created to serve." *Robbins v. Budke,* 739 F. Supp. 1479, 1485 (D. N.M. 1990); *see also Advocacy Center v. Stadler,* 128 F.Supp.2d 358, 365 (M.D. La. 1999).

Additionally, Ms. Norwood, Mr. Doe's court-appointed, paid conservator, argues that she is acting in his best interest by keeping DRT from investigating the alleged abuse and neglect of Mr. Doe by Orange Grove staff. As a conservator, Ms. Norwood has a duty to act in the best interest of her ward, Mr. Doe, which would include, at a minimum, consulting with him as to his wishes regarding DRT investigating these instances of abuse and neglect. *See* U*nited States v. Sanders,* 314 F.3d 236, 240 (6th Cir. 2002) ("A conservator occupies a fiduciary position of trust of the highest and most sacred character"). Tennessee law dictates that state courts decide the best interest of the ward and "have an affirmative duty to ascertain and impose the least restrictive alternatives upon the disabled person that are consistent with adequate protection of the disabled person and the disabled person's property"[6] and Tennessee "public policy also favors allowing incapacitated persons to retain as much autonomy as possible and selecting alternatives that restrict incapacitated persons' autonomy as little as possible." *Harris v. Metro. Gov't of Nashville,* No. 3:08-0859, 2010 WL 883811 *3 (M.D. Tenn. Mar. 11, 2010) (*citing In re Conservatorship of Groves*, 109 S.W.3d 317 (Tenn.Ct.App.2003)).

In the PAC, Ms. Norwood claims Mr. Doe does not communicate in American Sign Language (ASL) but, rather, in gestures and by writing in English.[7] ECF 65-4 at 3. This is incorrect. Mr. Doe communicates in ASL as his primary language. Mr. Doe visits Partnership for Families, Children, and Adult (PFCA), a non-profit agency in Chattanooga that provides sign language interpreting services, at least four or five times a week. Additionally, Mr. Doe has ASL

---

[6] Given the lack of authentic, meaningful communication with John Doe, the fact that Ms. Norwood is using John Doe's funds to pay for her legal expenses in this case illustrates that whether this suit was brought in "his best interest" is questionable. See ECF 65-2 at 2.
[7] ASL is a wholly different language than written and spoke English with its own word order and syntax. – ASL, unlike written and spoken English, relies on hand movements, body movement, and facial expressions to convey words and meaning.

interpreters at the Brainard Hills Baptist Church in Chattanooga, TN where he attends weekly services and various other church events.

Six ASL fluent individuals, including two deaf people, confirm he communicates with them in ASL. [see Attached Exhibits P - U, Declarations of Lisa Crawford, Matt Calkins, Mary Yates, Kris Davis, Amanda Yeggy, and Belinda Echols]. If Ms. Norwood has failed to communicate with Mr. Doe through an ASL qualified interpreter in the entire seven years she has been his conservator, her knowledge about Mr. Doe and his wishes must be in serious doubt. Ms. Norwood has made no assertion about Mr. Doe's wishes in the PAC specific to him, nor have any facts been plead that either Plaintiffs ever consulted Mr. Doe regarding his wishes regarding DRT's investigation. The PAC lacks any information regarding whether Ms. Norwood made any attempts to discuss this litigation with Mr. Doe prior to filing her initial complaint in Chancery Court, nor have Plaintiffs offered any facts that Mr. Doe was consulted in any way prior to Ms. Norwood seeking, and being granted, a court order to use *his* assets to fund this lawsuit against DRT. See ECF 65-2 at 2. The real injury to Mr. Doe is Plaintiffs successful delay of DRT's investigation of physical harm against him by one of the Plaintiffs, first by refusing to supply DRT with records, second by the filing of Ms. Norwood's initial suit with his funds, and third by prolonging this case with a motion to file a futile amended complaint. Ms. Norwood claims on behalf of Mr. Doe is speculation on her part and fails to meet her burden to establish injury to herself or Mr. Doe.

ii. **Fairly Traceable**

The second prong of the standing test mandates the injury Plaintiffs claim must be fairly traceable to DRT's challenged conduct. The conduct Plaintiffs seek to challenge involves the

actions of Congress and the DHHS. Congress created the DD Act and the APA and DHHS implemented the regulations to enforce the Acts.

If Plaintiffs are mounting a constitutional attack on these federal laws and their promulgated regulations and seeking relief thereunder, the United States and DHHS are the necessary and appropriate parties against which to direct and defend against such claims. DRT merely follows the directives of the DD Act and its regulations, as it is Congressionally mandated to do. The Sixth Circuit has repeatedly held that "federal plaintiffs must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction; in other words, the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."

*See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–43 (1976) (*citing Linda R. S. v. Richard D.*22 410 U.S. 614 at 617 (1973); *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344–45 (6th Cir. 2016); *Ammex, Inc. v. United States*, 367 F.3d 530, 533–34 (6th Cir. 2004). DRT did not trigger any deficiencies that Plaintiffs are arguing can be found in the DD Act, APA, and DHHS final rule. DRT did not draft these laws but merely follows the mandates set forth therein. Therefore, Plaintiffs have no traceable injury that flows from DRT to themselves.

### iii. Redressability

While Plaintiffs have failed to satisfy the first two prongs of the standing test, DRT will discuss Plaintiffs' failure of the third prong of the test as well. The third and final prong is whether Plaintiffs' PAC has established that the harm alleged is likely to be redressed if the requested relief is granted. The Supreme Court recently upheld a hundred-year-old case when it

12

stated that, "it is a bedrock principle that a federal court cannot redress an 'injury that results from the independent action of some third party not before the court.'" *Murthy v. Missouri,* 144 S. Ct. 1972, 1986 (2024) (*quoting Simon* 426 U.S. at 41-42. Since Plaintiffs' PAC has failed to bring their constitutional and regulatory claims against the appropriate parties, any perceived injury regarding those claims has no avenue for relief. [8]

Additionally, "To obtain forward-looking relief [injunctions], the plaintiffs must establish a substantial risk of future injury that is traceable to the defendants and likely to be redressed by an injunction against them. To carry that burden, the plaintiffs must proffer evidence that the defendants "'allegedly wrongful behavior would likely occur or continue.'" *Murthy* at 1993 (2024) (*quoting Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC),* Inc., 528 U.S. 167, 190 (2000)).

Plaintiffs fail to carry this burden. DRT has requested the same records for one individual involving two complaints of abuse and neglect at his Orange Grove home. Unless Plaintiffs are insinuating that there will be further complaints of alleged abuse and neglect involving Mr. Doe at Orange Grove, of which DRT is unaware, Plaintiffs have no evidence that DRT's alleged wrongful behavior will continue to occur. Likewise, Plaintiffs describe one instance in which DRT met with John Doe on March 8, 2023. ECF 65-4 at 8. DRT has not requested access to John Doe himself since this date. This is not enough to show that this alleged wrongful behavior will likely occur, and that the alleged injury is pending, thus Plaintiffs have failed to establish the prerequisites for injunctive relief.

---

[8] This Court should also apply the Constitutional Avoidance Doctrine to this motion to amend because it is "a well-established principle" that a court "will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Bond v. United States*, 572 U.S. 844, 855 (2014). Since the Court can dispose of this case ruling on DRT's right to access John Doe's records under the DD Act, the Constitutional Avoidance Doctrine should be applied.

## 2. **Plaintiffs' Motion is futile because the claims regarding the DHHS regulations fail to state a claim under 12(b)(6).**

Fed. R. Civ. P. Rules 8(a) and 12(b)(6) work together. Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. at 8(a). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Twombly*, 550 U.S. at 555; *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (*quoting Twombly*, 550 U.S. at 555). This requires the plaintiff to plead more than "a formulaic recitation" of the elements of her causes of action, more than simple legal conclusions which are not entitled to an assumption of truth, and more than the possibility the defendant is liable. *Iqbal,* 556 U.S. at 678-80. Rather, a plaintiff's complaint must contain well-pleaded factual allegations that move her claim "across the line from conceivable to plausible." *Id.* (*quoting Twombly,* 550 U.S. at 570).

Notwithstanding that Plaintiffs failed to include necessary parties in the PAC, Plaintiffs' claims under the PAC's Count III against the DHHS are facially insufficient because they state the simple legal conclusion "that DHHS' expansion of its authority through its Final Rule is arbitrary, capricious, an abuse of discretion or otherwise unlawful, and extends well beyond the authority delegated to DHHS pursuant to the DD Act." ECF 65-4 at 23. Yet the only fact they present expressly states, "that Congress commanded that the DHHS Secretary, 'shall promulgate such regulations as may be required for the implementation of this title [42 USCS §§ 15001 et seq.]' no later than one year from enactment. 42 U.S.C. § 15004(b)." ECF 65-4 at 21.

Plaintiffs then go on to list a variety of sections of the DHHS regulations and identify three potential issues: the regulations stating a P&A shall have unaccompanied reasonable access to an individual, the regulation regarding if a P&A is able to get records when a conservator

14

refuses to provide consent, and the regulation stating what constitutes a record. While Plaintiffs have stated the differences between the regulations and the DD Act within the PAC, they state no facts that would establish that the DHHS "regulations are arbitrary, capricious, an abuse of discretion or otherwise unlawful, and extends well beyond the authority delegated to DHHS pursuant to the DD Act." ECF 65-4 at 23. Plaintiffs fail to establish a cause of action, nor even establish enough grounds for DRT to suspect or defend against a cause of action as the PAC's section on the DHHS final rule is simply an impermissible "formulaic recitation of the elements of a cause of action." *Iqbal*, at 681.

Moreover, adding unaccompanied to the reasonable access of an individual is not an expansion, it is a clarification. 45 C.F.R. § 1326.27(b) (2) at ECF 65-4, at 17. Specifically, the clarification of what qualifies as "a representative has failed or refused to act on behalf of the individual" found at 45 C.F.R. § 1326.25(a)(3)(iii) went through the proper notice and comment period, as noted in DRT's thorough examination of the history of the DHHS regulations in its Reply to Plaintiff's Opposition to DRT's Motion for Judgment on the Pleadings. ECF 59 at 8-10.

While Plaintiff's quote the recent Supreme Court decision in *Loper* to throw out all regulations, they fail to articulate the actual holding of *Loper* as applied to the issues in this case, which is antithetical to their argument. *Loper* states, "[W]e do not call into question prior cases that relied on the Chevron framework. The holdings of those cases that specific agency actions are lawful…are still subject to statutory stare decisis despite our change in interpretive methodology. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). In 2019, a fellow Sixth Circuit District Court found that "the DHHS's interpretation is based on a permissible construction of the statute; it is rational and consistent with the statute. DHHS did not broaden the P&A Acts through the regulatory process. The case law without variance relies

15

upon this regulation to require facilities to permit P&A systems unaccompanied access to individuals who are protected by PAIMI and the other statutes that combine to make the P&A Acts, finding ample support in the statutes to support their reliance." *Disability Rights Ohio v. Buckeye Ranch, Inc.,* 375 F. Supp. 3d 873, 893 (S.D. Ohio 2019). In short, courts have found that DHHS acted within its permissible authority when implementing the regulations for the P&A Acts and while *Loper* does diminish deference to agency actions, a plaintiff cannot claim that the regulations are impermissible simply because an agency, not Congress, implemented them.[9]

By providing no facts to establish that this Court could find that the DHHS acted arbitrarily or capriciously, or that the regulations expanded beyond the authority delegated by Congress, Count III of the PAC regarding the DHHS Final Rule is facially insufficient and would not withstand a motion to dismiss.

### 3. <u>Plaintiffs' Motion is futile because the DD Act does not create a private right of action against DRT.</u>

Plaintiffs' claim alleging that DRT violated the DD Act also fails to state a claim because in the Sixth Circuit, the DD Act does not create a private right of action under which a party can sue any entity. The Supreme Court has held that the DD Act is a federal-state grant funding program that does not create substantive rights for a plaintiff to sue. *See Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 28 (1981). Some circuits have amended this and allowed suits against state actors for failing to implement the requirements of the DD Act under a 1983 claim[10], but the Sixth Circuit has followed the Supreme Court and held that, "the DD Act… does

---

[9] Furthermore, in *Loper* the Supreme Court relied on the APA to justify overturning the *Chevron* deference analysis in future cases. It is folly to argue the APA is unconstitutional when the Supreme Court so recently and heavily cited the APA to justify its decision in *Loper*. *See Loper*, 14 See *Karaahmetoglu v. Res–Care, Inc.,* 480 F.Supp.2d 183, 188 (D.D.C.2007*); Asselin v. Shawnee Mission Medical Center, Inc.*, 894 F.Supp. 1479 (D.Kan.1995); *Garrity v. Gallen,* 522 F.Supp. 171, 201 (D.N.H.1981)4 S. Ct. at 2262.
[10]

not confer privately enforceable substantive rights." *Duncan v. Johnson-Mathers Health Care, Inc.,* No. 5:09-CV-00417-KKC, 2010 WL 3000718 at *11 (E.D. Ky. July 28, 2010).[11]

Even if this Court went against Sixth Circuit precedent and determined that a private entity could sue under the DD Act, it could only be against a state actor. DRT is a private, not a government, entity, and Plaintiffs' claims for violation of the Constitution apply only to government action. "[A] private party is not considered a [government] actor unless one of the [government]-action tests outlined in [Sixth Circuit] precedent applies." *Snodgrass-KingPediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co., Inc.,* 780 F. App'x 197, 198 (6th Cir. 2019), cert. denied, 140 S. Ct. 898 (2020). Those tests are the "public function test, the state compulsion test, and the nexus test." *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995) (the public function test "requires that the private entity exercise powers which are traditionally exclusively reserved to the state, the state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state, and the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.").

Plaintiffs fail to allege facts that would meet any of those tests, nor have they even argued that DRT is a state actor. But even if Plaintiffs had successfully established that DRT is a state actor, "[in] order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal right, not merely a violation of federal law." *Blessing v. Freestone*, 520 U.S. 329, 340

---

[11] Although Plaintiffs cannot sue DRT under the DD Act, DRT can file a cause of action to enforce its access to records under the DD Act. 42 U.S.C.A. § 15044(b)(1). *See also*, *Doe v. Stincer*, 175 F.3d 879, 883 (11th Cir. 1999) ("We implicitly recognized a protection and advocacy system's standing to redress injuries to itself in Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr., 97 F.3d 492 (11th Cir.1996)").

(1997). Plaintiffs have identified no such right because one does not exist in the Sixth Circuit. Since current Supreme Court and Sixth Circuit law does not allow Plaintiffs to sue DRT, a private entity, for a violation of the DD Act, that claim is futile.

**4. Ms. Norwood's requested relief for an injunction to prevent DRT from accessing John Doe is futile because it is impermissible per state statute.**

Ms. Norwood's appointment of conservatorship did not remove all of John Doe's decision-making rights. ECF 1-1 at 19. His right to "to communication, visitation, or interaction with other persons, including the right to receive visitors, telephone calls, or personal mail" is still very much his own. T.C.A. § 34-3-107. T.C.A. § 34–3–107 "requires that the conservatorship order to '[e]numerate the powers removed from the respondent and vested in the conservator' and '[t]o the extent not specifically removed, the respondent retains and shall exercise all powers of a person who has not been found to be a disabled person.'" *Harris v. Metro. Gov't of Nashville*, No. 3:08-0859, 2010 WL 883811, at *3 (M.D. Tenn. Mar. 11, 2010) (internal citations omitted). Plaintiffs even include the oath Linda Norwood took that expressly states, "I PROMISE I WILL NOT... Limit the respondent's communication with others or access to visitors unless specifically authorized to do so by the court." ECF 65-4 at 13. Linda Norwood has the right to file a suit on behalf of John Doe, but she does not have the right to request to amend his visitation rights without an order from the Chancery Court, including those with DRT should he wish to have them and, therefore, the claim requesting such injunctive relief is futile.

**5. CONCLUSION**

Plaintiffs, who are the conservator of John Doe, a deaf man with a developmental disability who has had this court appointed conservator for seven years, and the facility charged with his care, neither of which knows he uses ASL, seek to delay resolution of this simple case

18

with unfounded constitutional claims so as to prevent the DRT from investigating alleged abuse at the hands of Plaintiff's Orange Grove staff as mandated by the well-established DD Act.

For the foregoing reasons, DRT respectfully requests that this Court deny Plaintiffs' Amended Motion for Leave to file an Amended Complaint and to Deny Defendant's Motion for Judgment on the Pleadings on All claims, and that this Court move forward with DRT's pending Motion for Judgment on the Pleadings so that this case can be disposed of in an inexpensive, speedy, and just manner that promotes judicial economy.

Respectfully submitted.

DATE: August 30, 2024

/s/ Jeremiah Jones
Jeremiah Jones, (BPR #040551)
Disability Rights Tennessee
9050 Executive Park Drive, Suite B-101
Knoxville, TN 37923 (865) 670-2944
jeremiahj@disabilityrightstn.org

/s/ Stacie Price
Stacie L. Price (BPR #030625)
Disability Rights Tennessee
2 International Plaza, Suite 825
Nashville, TN 37217
staciep@disabilityrightstn.org
(615) 298-1080

/s/ Jack Derryberry
Jack W. Derryberry, Jr. pro hac vice (BPR #003870)
Disability Rights Tennessee
2 International Plaza, Suite 825
Nashville, TN 37217
jackd@disabilityrightstn.org
(615) 298-1080

/s/ Sherry Wilds
Sherry A. Wilds (BPR #021756)
Disability Rights Tennessee
2 International Plaza, Suite 825

Nashville, TN 37217
sherryw@disabilityrightstn.org
(615) 298-1080

## **Certificate of Service**

I hereby certify that on 30th day of August 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*/s/ Jeremiah Jones*